Richard E. Morton (Bar No. 54188)
*rmorton@hbblaw.com*
Yvette Davis (Bar No. 165777)
*ydavis@hbblaw.com*
HAIGHT BROWN & BONESTEEL LLP
2050 Main Street, Suite 600
Irvine, California 92614
Telephone: 714.426.4600
Facsimile: 714.754.0826

Attorneys for Defendant
LOS ANGELES COMMUNITY COLLEGE DISTRICT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ROY PAYAN; PORTIA MASON; THE NATIONAL FEDERATION; OF THE BLIND, INC.; and THE NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, INC.,

Plaintiffs,

v.

LOS ANGELES COMMUNITY COLLEGE DISTRICT; DR. FRANCISCO C. RODRIGUEZ in his official capacity as chancellor of the Los Angeles Community College District; and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:17-cv-01697 SVW(SKx)
**[Civil Rights]**

**LOS ANGELES COMMUNITY COLLEGE DISTRICT'S MOTION *IN LIMINE* NO. 3 REGARDING CERTAIN EXPERT TESTIMONY OF JON GUNDERSON; MEMORANDUM OF POINTS AND AUTHORITIES**

Filed Concurrently with:

(1) Declaration of Yvette Davis in Support;
(2) Declaration of Bruce Cleeland;
(3) [Proposed] Order

Trial Date: February 20, 2018

Pursuant to Federal Rules of Evidence, Rules 103, 402, 702, and 703, and *Palmerin v. City of Riverside*, 794 F2d. 1409, 1413 (9th Cir. 1986), Defendant Los Angeles Community College District (the "District") hereby moves this Court for an Order *In Limine* excluding Plaintiffs' designated expert, Jon Gunderson, from opining on the following matters during trial:

(1) that the Kurzweil 3000, JAWS, ZoomText and OpenBook technologies must be employed by the Los Angeles City College and/or the District in order to reasonably

accommodate sight-impaired persons (including Plaintiffs, Roy Payan and Portia Mason ["Plaintiffs"]);

(2) that "audio description" accommodations must be employed by the Los Angeles City College and/or the District in order to reasonably accommodate sight-impaired persons (including Plaintiffs);

(3) that the Los Angeles City College and/or the District failed to make textbooks accessible to Mr. Payan which resulted in a failure to reasonably accommodate Mr. Payan;

(4) that Mr. Payan's grades in his Math 124A and Math 124B courses did not properly assess his abilities in algebra;

(5) that the Los Angeles City College and/or the District failed to reasonably accommodate Plaintiffs by failing to permit them to make audio recordings of classes;

(6) that the Los Angeles City College and/or the District failed to reasonably accommodate Plaintiffs by Los Angeles City College instructors not describing information they were writing on the board;

(7) that the Los Angeles City College and/or the District failed to reasonably accommodate Plaintiffs by failing to train instructors to describe information they were writing on the board;

(8) that the District failed to meet the industry standard for accommodations making textbooks available sufficiently before classes begin to permit sight impaired students to have them converted to Braille.

(9) that the Los Angeles City College and/or the District failed to reasonably accommodate Plaintiffs by not making class materials available to Plaintiffs ahead of time;

(10) that the Los Angeles City College and/or the District failed to reasonably accommodate Plaintiffs by not making all of its electronic databases accessible to sight impaired students (including Plaintiffs);

(11) that sight-impaired students (including Plaintiffs) of the Los Angeles City College and/or the District have access to lower quality electronic databases than their sighted peers;

(12) that the Los Angeles City College and/or the District failed to reasonably accommodate Plaintiffs by not making educated individuals available to assist sight-impaired students;

(13) that the Los Angeles City College and/or the District failed to reasonably accommodate Plaintiffs by not ensuring their libraries convert articles or other resources to an accessible format for sight-impaired students (including Plaintiffs) when requested.

The District also requests that the Court instruct Plaintiffs and their counsel to instruct Mr. Jon Gunderson of the Court's Order in this regard.

This Motion is based on this Notice, the below Memorandum of Points and Authorities in support, the concurrently filed Declarations of Yvette Davis and Bruce Cleeland, the pleadings and documents which already comprise the Court's file, upon any such matters as the Court may take Judicial Notice, and upon arguments made by counsel at the time of the hearing on this Motion.

Dated: January 11, 2018 HAIGHT BROWN & BONESTEEL LLP

By: *\/s/ Yvette Davis*
Richard E. Morton
Yvette Davis
Attorneys for Defendant
LOS ANGELES COMMUNITY COLLEGE DISTRICT

## TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. STATEMENT OF FACTS ..... 1

A. Plaintiffs' Designation of Jon Gunderson and Rule 26(a)(2)(B) Report ..... 1

B. Deposition of Jon Gunderson ..... 2

III. MANY OF MR. GUNDERSON'S OPINIONS DO NOT SATISFY THE PREREQUISITES OF FEDERAL RULES OF EVIDENCE, RULE 702 AND 703 ..... 6

A. Mr. Gunderson's opinion that the District failed to make textbooks accessible to Mr. Payan is without foundation based on his own admissions ..... 7

B. Mr. Gunderson offered no opinion during deposition regarding whether Mr. Payan's grades in his Math 124A and Math 124B classes accurately assessed his abilities in algebra. ..... 10

C. Mr. Gunderson lacks foundation to opine that the District did not meet the industry standard for accommodations by failing to permit plaintiffs to make audio recordings. ..... 10

D. Mr. Gunderson lacks foundation to opine that the District did not meet the industry standard for accommodations by the Los Angeles City College Instructors failing to describe information they were writing on the board, or to be trained to do that. ..... 10

E. Mr. Gunderson lacks foundation to opine that the District failed to meet the industry standard for accommodations making textbooks available sufficiently before classes begin to permit sight impaired students to have them converted to Braille. ..... 11

F. Mr. Gunderson lacks foundation to opine that the District did not meet the industry standard for accommodations by not making materials available to plaintiffs ahead of time. ..... 12

G. Mr. Gunderson lacks foundation to opine on the accessibility of Los Angeles City College's electronic databases. ..... 12

H. Mr. Gunderson lacks foundation to opine that sight-impaired students of Los Angeles City College have access to lower quality electronic databases that their sighted peers. ..... 13

I. Mr. Gunderson lacks foundation to opine that the District did not meet the industry standard for accommodations by failing to make educated individuals available to assist sight-impaired students. ..... 13

J. Mr. Gunderson lacks foundation to opine that the District did not meet the industry standard for accommodations by not ensuring their libraries convert articles or other resources to an accessible format for sight-impaired students when requested. ..... 14

IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases**

*Bogacki v. American Machine & Foundry Co.*,
417 F.2d 400 (3rd Cir. 1969) .......... 7
*Tyger Const. Co., Inc. v. Pensacola Const. Co.*,
29 F.3d 137 (4th Cir. 1994) .......... 7
*United States v. Honolulu Plantation Co.*,
182 F.2d 172 (9th Cir. 1950) .......... 7
*Viterbo v. Dow Chemical Co.*,
826 F.2d 420 (5th Cir. 1987) .......... 7

*

29 U.S.C. § 794 .......... 1
42 U.S.C. § 12131 .......... 1
Fed. R. Civ. P. 26(a)(2)(B) .......... 1
Federal Rules of Evidence 702 .......... 6
Federal Rules of Evidence 703 .......... 6, 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This action was filed by Plaintiffs Roy Payan, Portia Mason, the National Federation of the Blind, Inc. and the National Federation of the Blind of California, Inc. (jointly "Plaintiffs") alleging violations of the Americans with Disabilities Act against the Los Angeles Community College District (the "District"). Namely, Plaintiffs allege that the District failed to accommodate Mr. Payan and Ms. Mason's needs as blind students of Los Angeles City College in violation of 42 U.S.C. § 12131, *et seq.,* and 29 U.S.C. § 794, *et seq.*

Throughout the deposition of Jon Gunderson, he admittedly offered opinions based on assumptions about what certain deposition testimony would have been had questions been asked of the deponents. He also admitted having no knowledge about certain instances of alleged non-accommodations *as to the Plaintiffs in this case*, but seeks to opine that the District failed to perform their duties of accommodation nonetheless. These opinions lack foundation, are often not relevant because they are not based on obstacles faced by the Plaintiffs in *this* case, and fail to satisfy the requirements of Federal Rules of Evidence, Rule 702 and 703. For these reasons, the listed testimony should be excluded.

## II. STATEMENT OF FACTS

### A. Plaintiffs' Designation of Jon Gunderson and Rule 26(a)(2)(B) Report

On October 2, 2017, Plaintiffs served reports of their retained experts pursuant to Federal Rules of Civil Procedure, Rule 26(a)(2)(B). (See **Exhibit "1"** to the Declaration of Yvette Davis ["Davis Decl."] ¶ 3.) Within the designation, Plaintiffs' retained expert, Jon Gunderson, provided a 12-page report dated October 2, 2017, wherein he purported to offer certain expert opinions. (*Id.* beginning at page 41 of **Exhibit "1"** to the Davis Decl. ¶ 3.)

/ / /

**B. Deposition of Jon Gunderson**

On October 27, 2017, counsel for the District served an Amended Notice of Taking deposition of Jon Gunderson, listing 17 categories of documents to be produced. (See **Exhibit "2"** to the Davis Decl. ¶ 4.)

1. General foundational gaps in Mr. Gunderson's Testimony

According to the report prepared by Mr. Gunderson he intends to offer opinions about whether Los Angeles City College and the District employed the requisite policies, procedures, and training necessary "to ensure that blind students are provided equally effective and timely communication of print and electronic materials and online administrative resources." (See p. 41 of **Exhibit "1"** to the Davis Decl. ¶ 3.)

During deposition, Mr. Gunderson was asked what he is referring to in his report when he states "I'm responsible for providing information technology accommodations." (See page 14, lines 6-18 of the Deposition Transcript of Jon Gunderson, dated November 6, 2017, attached as **Exhibit "1"** to the Declaration of Bruce Cleeland ["Cleeland Decl."] ¶ 3.) Mr. Gunderson testified:

> Probably the most pervasive thing we do is we make sure assistive technology is available in computer labs across campus, so we have network licenses for Kurzweil 3000, JAWS, ZoomText, and in the library we use a technology called OpenBook which is a way for people to scan books in and have them read to them, so those four technologies are available in all the instructional labs and in the resident halls, and we help -- but we don't put them on. We make the software available and help people know when there's updates available, and we maintain the license server for JAWS in our building.

(*Id.* at 44:10 – 45:1.) In follow-up, counsel for the District asked whether these four technologies are utilized at every four-year university in the United States – to which Mr. Gunderson responded "I have no idea." (*Id.* at 45:2 – 5.) This led to the following exchange:

> Q. Do you know how many universities those four technologies are utilized at any universities in the United States?
>
> A. Well, JAWS is probably the most dominant in the country, so I assume JAWS is probably in almost every university.

> The Kurzweil 3000 is also very popular. I would assume that it's at a large majority of universities.
>
> The ZoomText is also the dominant screen magnifier for Windows that's available, so I assume many universities probably provide it.
>
> I think most Big Ten universities, which are the ones I'm familiar with, use that, and OpenBook probably more related to assistive technology labs and things like that. It's not...
>
> Q. This suite of four technologies that you referred to, are you aware of any other university that utilizes all four of them in their services?
>
> A. Not off the top of my head, no.

(*Id.* at 45:6 – 46:2.)

Mr. Gunderson was then asked about his knowledge of the number of two-year, four-year, and post-doctoral universities exist in the United States – he responded to each question "I don't know." (*Id.* at 58:24 – 59:4.)

Mr. Gunderson was asked whether he spoke with anybody else about what their beliefs were about the actions and policies of the Los Angeles Community College – he responded in the negative. (*Id.* at 74:1-4.)

Mr. Gunderson also testified that he has not personally conducted any studies to determine the capacity of blind students to accept information in different formats. (*Id.* at 243:16-19.)

He also testified that there does not presently exist a program or software that can be purchased by the head of a university that will be fully and universally accessible to all sight impaired persons. (*Id.* at 269:10 – 271:15.)

2. <u>Mr. Gunderson's opinions about the District's shortcomings are not based on failures to meet the then standard of care but, rather, on what he believes *should* be the industry standard.</u>

Mr. Gunderson was asked whether he believes there is a need to improve information technology access in higher education – to which he responded in the affirmative, noting that "there is a huge gap between the capability of technology being accessible and where it's currently at." (*Id.* at 64:4-14.) When asked about what his report

captures, his response indicates a fundamental misunderstanding of his role as an expert witness:

> A. Well, this report is my -- what I see needs to happen in higher education if we really want to provide equal access to information technology.
>
> If that's what the goal is, I'm a technocrat. I'm not a lawyer, so what I'm trying to do in this report is from what my experience and what I've seen is effective for actually making that happen is to -- so I'm not sure what the difference between best practice and being an effective way to make something happen.
>
> I don't see a difference in those terms, so we need to -- the things I put in the report are the things -- the actions that I think need to happen if you actually want to achieve those goals.

(*Id.* at 54:1 – 55:22.)[1]

This misunderstanding about his role is further exemplified when Mr. Gunderson attempted to explain his opinion in his report that "I believe to a reasonable degree of professional certainty that LACC and the Los Angeles Community College District (LACDD) lack sufficient policies, procedures, and training to ensure that blind students are provided equally effective and timely communication of print and electronic instructional materials and online administrative resources" – the following exchange occurred:

> Q. Okay. Next it says, degree of professional certainty. What do you mean by professional certainty?
>
> A. Professional, I've been doing this work for a long time. I've worked in higher education and technology, and so I feel I'm a professional in this field and that my experience and knowledge in this area I feel I understand ***what needs to happen to make information technologies more accessible***, and I didn't see those features at LA Community College.
>
> So I say professional certainty. That means this is the way I feel. This is the way I think and what I see at other places, so I don't think my views would be out of line with other people that do this work.
>
> Q. Have you attempted to determine that?

---

[1] Mr. Gunderson understands that he is opining on what the standard of care ***should be*** – not what the standard of care was at the time of the plaintiffs' participation as students of Los Angeles City College.

A. No.

(*Id.* at 74:5-22.)

He admittedly testified he does not know, nor has he attempted to find out, whether his opinions in this regard are standards for the industry.

He later testified that the goal is to provide equal access to electronic resources so that students can independently use them just like other students. (*Id.* at 190:5-15.) But he testified that this goal has not been achieved in the higher education industry. (*Id.*) Notwithstanding, he is in essence seeking to opine that the District fell below the standard of care by not meeting a standard which has not been achieved by the entire industry as a whole.

He additionally stated that in his experience, *all* software has accessibility issues, which has remained predominantly the case through the date of his deposition in November, 2017. (*Id.* at 218:11 – 221:2.)

3. <u>Mr. Gunderson is admittedly *not* a specialist regarding "audio description" accommodations for sight-impaired students</u>

During deposition, Mr. Gunderson was asked about "audio description" accommodations purportedly used at his institution which he believes should be used by the District, but admitted he was not "the visually impaired specialist":

Q. When you say we're starting to do audio description for videos, when did that start?

A. Just starting this year so...

Q. What did you do before that at the university?

A. For audio description?

Q. Yes.

A. There would have to be other types of accommodations made, and I'm not the visually impaired specialist. The visually impaired specialist would deal with those accommodations.

Q. But you're the expert today, so I'm trying to find out what you know. Okay?

So your reference to audio description starting this year, that being 2017. Correct?

> A. Uh-huh.
>
> Q. Is that a yes?
>
> A. Yes.
>
> Q. What is it that your university did for audio descriptions on video materials prior to this 2017 year, if you know?
>
> A. I don't know….
>
> …
>
> Q. No [sic], you were also involved with what the university did. Do you know what the university did with respect to audio description for video presentations prior to 2017?
>
> A. No, I don't.

(*Id.* at 49:12 – 50:9 and 51:14-18.)

## III. MANY OF MR. GUNDERSON'S OPINIONS DO NOT SATISFY THE PREREQUISITES OF FEDERAL RULES OF EVIDENCE, RULE 702 AND 703

Federal Rules of Evidence, Rule 702[2] and 703 preclude introduction of many of Mr. Gunderson's opinions and described "standards." Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If

[2] All references to a "Rule" or "Rules" shall pertain to the Federal Rules of Evidence throughout this Memorandum unless indicated otherwise.

> experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Under Rule 703, the Court acts as a gatekeeper to determine *before admitting expert testimony*, whether the expert's opinion rests upon foundation so unreliable that it should be excluded from consideration. See *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987). Generally, an expert's opinion should be excluded when it is premised on assumptions by the expert that are not based in facts known to the expert. See *Tyger Const. Co., Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 144 (4th Cir. 1994)(excluding expert opinions premised on assumptions made by the expert that were unsupported by any evidence or testimony in the record). In *United States v. Honolulu Plantation Co.*, 182 F.2d 172, 178 (9th Cir. 1950), the United States Court of Appeals for the Ninth Circuit held that where the opinion of an expert is based on erroneous assumptions of fact or law, the evidence is incompetent and insufficient to support a verdict.

Moreover, in order for an expert to base his opinion on a study it is necessary that he be able to testify of his own knowledge as to the nature and extent of the source from which statistics were gathered. See *Bogacki v. American Machine & Foundry Co.*, 417 F.2d 400 (3rd Cir. 1969).

### A. Mr. Gunderson's opinion that the District failed to make textbooks accessible to Mr. Payan is without foundation based on his own admissions

During deposition, Mr. Gunderson confirmed that he held an opinion, cited in his report, that the District did not make course-related books accessible to Plaintiff, Roy Payan, and that such practice is required for blind students to be on equal footing with their sighted peers. (*Id.* at 100:20-24.) In this regard, the following exchange occurred:

> Q. Are you aware of any example where that was deprived of a non-sighted student, Mr. Payan or Ms. Mason?

A. According to the deposition, Mr. Payan did not have the accessible versions of the chapters of the book that they were talking about the time he was in the math course.

Q. What book?

A. Book for 124.

Q. Okay. Did he have the book?

A. I assume he had the book.

Q. So he had the book, and at least some was accessible but some was not? Is that what you're saying?

A. My understanding from the deposition that it was delayed. He was not getting the chapters at the same time students -- of what they were talking about in that particular class, so he had to wait to get the chapters that they had already talked about.

He wasn't being given those books at the same time the other students had access to those chapters.

Q. Do you mean the students were not given the actual text as the sighted students, or they were not given the assignment?

MS. KREVOR-WEISBAUM: Objection.

THE WITNESS: Basically my – the other sighted students had access to all the chapters all the time, if they bought the book.

BY MR. CLEELAND:

Q. That's my confusion.

A. Okay. So in Mr. Payan's case the book -- and typically if it takes a long time to convert a book, people don't get the book right away.

***I don't know the exact procedures that they use at LACC for providing the book***, but from the depositions it sounded like they did it chapters at a time.

He didn't get the whole accessible book, and that when he did get chapters, they were after the time they had talked about those chapters, so he didn't have a chance to read those chapters before they actually talked to them about them in the class is my understanding.

....

Q. Okay. What is the source of information you relied upon in reaching that conclusion?

A. Mr. Payan's deposition.

Q. Have you ever spoken with Mr. Payan?

A. No.

Q. Is there anything that prevented you from talking to Mr. Payan?

A. No.

Q. Have you ever spoken with Ms. Mason?

A. No.

Q. Is there anything that prevented you from talking with Ms. Mason?

A. No.

Q. Now, the chapters, do you know what Mr. Payan did to convert his textbook for his use?

A. My understanding was that he took it to the OSS office for conversion.

Q. And did he ask for conversion of the book?

A. I believe so.

Q. Is there any indication the book was not converted?

A. No.

Q. Okay. So you have no information that the book was not converted in totality. Is that correct?

MS. KREVOR-WEISBAUM: Objection.

THE WITNESS: ***No, I don't know whether the book was converted in totality or not.***

[Emphasis added. *Id.* at 100:12 - 104:6.]

By his own testimony, Mr. Gunderson lacks knowledge of facts that provide the basis for opining that the District did not make textbooks accessible to Mr. Payan. He never spoke with Mr. Payan, and does not know whether Mr. Payan's textbook was or was not converted in totality or not.

/ / /

**B. Mr. Gunderson offered no opinion during deposition regarding whether Mr. Payan's grades in his Math 124A and Math 124B classes accurately assessed his abilities in algebra.**

Mr. Gunderson could not recall whether Mr. Payan had taken an algebra class before the two subject algebra classes implicated by Mr. Payan's Complaint. (*Id.* at 108:16 – 109:8.) He then admitted that he does not know whether the Math 124A and Math 124B courses properly assessed Mr. Payan's abilities in algebra. (*Id.* at 109:21 – 110:1.)

Having no knowledge to support an opinion in this regard, Mr. Gunderson should be precluded from offering such an opinion at the time of trial.

**C. Mr. Gunderson lacks foundation to opine that the District did not meet the industry standard for accommodations by failing to permit plaintiffs to make audio recordings.**

In discussing audio recordings as an accommodation for sight-impaired students, Mr. Gunderson admitted he could not recall *any* class that Mr. Payan took in which he was prevented from taking audio recordings. (*Id.* at 110:2 – 6.) He was also unable to identify a class in which Ms. Mason was prevented from taking audio recordings. (*Id.* at 111:7-14.)

Accordingly, he should not be permitted to opine that the District failed to make reasonable accommodations in this regard.

**D. Mr. Gunderson lacks foundation to opine that the District did not meet the industry standard for accommodations by the Los Angeles City College Instructors failing to describe information they were writing on the board, or to be trained to do that.**

When asked whether Mr. Gunderson knew of any times when Plaintiff Mason's instructors did not properly describe what they were writing on the board during class, he responded that he did not recall any specific examples. (*Id.* at 114:25 – 115:4.) When asked the same question with respect to Mr. Payan, he did not indicate having any knowledge of a time where a professor did *not* explain something verbally that was written on the board – he instead indicated that he recalled Mr. Payan "reported several times" that he had to remind the instructor. (*Id.* at 113:2 – 114:21.)

When asked the basis for his opinion that the Los Angeles City College instructors were not properly trained or encouraged to describe matters that they write on the board, Mr. Gunderson testified it was based on the information provided to him. (*Id.* at 146:7-18.) He admitted that *none* of the deposition testimony he reviewed included a question to *any* of the plaintiffs' instructors about what they do when they write things on the board. (*Id.*)

Here, Mr. Gunderson's opinions are without any factual support specific to the two plaintiffs at issue in this case. Further, his opinion that the instructors *generally* do not describe what they write on the board is based solely on his review of several instructor's depositions *in which the question was never asked of them*. This opinion is inadmissible.

**E. Mr. Gunderson lacks foundation to opine that the District failed to meet the industry standard for accommodations making textbooks available sufficiently before classes begin to permit sight impaired students to have them converted to Braille.**

Mr. Gunderson was critical of the Los Angeles City College for purportedly not making textbooks available to Mr. Payan and Ms. Mason sufficiently before classes began so that they had time to get them converted to Braille by the Office of Special Services. However, he was asked how far before each semester it was that textbooks for the next semester's courses were displayed by Los Angeles City College – Mr. Gunderson responded that he did not know. (*Id.* at 121:18 – 122:3.) He also admitted he did not know when the textbooks for a following semester's courses are displayed at *any* Los Angeles Community College District schools. (*Id.* at 121:18 – 121:6.)

He admitted he is not aware of anything that prevented Mr. Payan or Ms. Mason from buying their books sufficiently before courses started to have them converted by the Office of Special Services in time for day one of course study. (*Id.* at 122:25 – 123:7.) He testified that he did not know when Mr. Payan or Ms. Mason bought their textbooks for their courses. (*Id.* at 123:8-13.)

The lack of any knowledge about when textbooks became available to the plaintiffs, and when the plaintiffs purchased their books demonstrates that his opinion lacks *any* factual support. The Court should preclude Mr. Gunderson from so testifying.

**F. Mr. Gunderson lacks foundation to opine that the District did not meet the industry standard for accommodations by not making materials available to plaintiffs ahead of time.**

Mr. Gunderson's report intimated that the District did not meet the industry standard for accommodating Plaintiffs because "it may be difficult for a blind person to find the part [of written materials] referred to." (*Id.* at 131:3-16.) When asked whether he was aware of Ms. Mason or Mr. Payan ever experiencing such difficulty, he responded that he was not aware of any such instances. (*Id.)*

As Mr. Gunderson is not aware of any indicia that the District failed to accommodate Mr. Payan or Ms. Mason in this regard, his opinion is without foundation and not relevant in this case pursuant to the Rule 401 (i.e. the opinion does not have a tendency to make any fact of consequence more or less probable).

**G. Mr. Gunderson lacks foundation to opine on the accessibility of Los Angeles City College's electronic databases.**

It is anticipated Mr. Gunderson will attempt to testify that because he perceives *some* of Los Angeles City College's electronic databases were not accessible to sight-impaired students, they are not meeting the industry standard for making reasonable accommodations. However, Mr. Gunderson admitted that not all electronic databases at his own university, the University of Illinois, are accessible. (*Id.* at 171:8 – 22.) In fact, Mr. Gunderson testified that *he is not aware of a single institution of higher learning in the entire United States that has made every one of its electronic databases accessible to disabled students.* (*Id.* at 171:23 – 172:6.)

Moreover, he admitted that he did not personally review *any* of the Los Angeles City College Libraries electronic databases to determine their levels of accessibility. (*Id.* at 197:9 – 20.)

As to this opinion, Mr. Gunderson's misunderstanding of his role as an expert is readily apparent. He is purporting to hold the District and the Los Angeles City College to a standard that he believes *should* be the goal of higher education in an ideal world – a

standard which he is unaware of being satisfied by any University of "higher learning" in the entire United States. This opinion lacks foundation and is *admittedly* not the accepted industry standard.

### H. Mr. Gunderson lacks foundation to opine that sight-impaired students of Los Angeles City College have access to lower quality electronic databases that their sighted peers.

Mr. Gunderson's report and testimony intimated that he plans to testify at trial that the plaintiffs, and students of Los Angeles City College in general, have access to lower quality electronic database material than their sighted peers. (*Id.* at 197:12 – 199:14.) He bases this opinion on the testimony of Ryan Kushner who testified that he directs sight-impaired students to use more accessible databases rather than other databases that are less accessible to sight impaired persons. (*Id.* at 198:15 – 22.)

But he admits he is not aware of *any* specific examples of *any* "blind students having lower quality materials than their sighted peers for learning about a topic, writing papers, and completing homework assignments." (*Id.* at 199:15-24.)

As Mr. Gunderson is not aware of any instance of a sight-impaired student having lower quality materials than their sighted peers, his opinion is without foundation and not relevant in this case pursuant to the Rule 401 (i.e. the opinion does not have a tendency to make any fact of consequence more or less probable).

### I. Mr. Gunderson lacks foundation to opine that the District did not meet the industry standard for accommodations by failing to make educated individuals available to assist sight-impaired students.

It is anticipated that Mr. Gunderson will attempt to testify at trial that the Los Angeles City College, and the District, did not have qualified personnel present and available to assist them in accessing accommodation technology. But after reading the deposition transcript of Ryan Kushner, Mr. Gunderson testified that Ryan Kushner was "a smart guy" and that Mr. Kushner is the primary person that can help blind students with technology accessibility problems. (*Id.* at 182:23 – 183:12.) Mr. Kushner testified that there is no problem with the District designating Mr. Kushner as the person by which

sight-impaired students can seek assistance but that his concern was "how often is he [Mr. Kushner] available to help the student?" (*Id.*) But when asked, Mr. Gunderson admitted that he had *no understanding* of how often Mr. Kushner was available to assist students. (*Id.*) Further, Mr. Gunderson was asked whether such information would be important in reaching a conclusion as to whether or not Mr. Kushner is available at ***reasonable*** times – Mr. Kushner responded in the affirmative. (*Id.* at 183:13-16.)

By his own admission, Mr. Gunderson lacks the requisite information to offer a admissible opinion about whether the District or Los Angeles City College reasonably accommodated Plaintiffs by making educated individuals available to assist sight-impaired students. This opinion must be excluded.

**J. Mr. Gunderson lacks foundation to opine that the District did not meet the industry standard for accommodations by not ensuring their libraries convert articles or other resources to an accessible format for sight-impaired students when requested.**

Mr. Gunderson further intends to opine that the District did not meet the industry standard for accommodations by not ensuring their libraries convert articles or other resources to an accessible format for sight-impaired students when requested. (*Id.* at 257:21 – 258:12.) Upon inquiry, he testified that he is not aware of Mr. Payan, Ms. Mason, or *any other student* of Los Angeles City College *ever* requesting conversion of material and it not being provided. (*Id.* at 258:1 – 12.) He instead bases his opinion on assumptions he draws based on questions that were *not* asked and, therefore not answered, during depositions of District personnel. (*Id.* at 258:13 – 259:6.)

Again, Mr. Gunderson is attempting to offer an opinion that he, by his own admission, has no factual support for. He admittedly bases the opinion on his assumption of what the answers to deposition questions ***would have been***, had they been asked during the depositions of witnesses for the District.

/ / /

## IV. CONCLUSION

For the foregoing reasons, the District respectfully requests the Court issue an Order, *In Limine*, precluding Mr. Gunderson from opining upon these 13 matters.

Dated: January 11, 2018

HAIGHT BROWN & BONESTEEL LLP

By: */s/ Yvette Davis*
Richard E. Morton
Yvette Davis
Attorneys for Defendant
LOS ANGELES COMMUNITY COLLEGE DISTRICT