Richard E. Morton (Bar No. 54188)
*rmorton@hbblaw.com*
Yvette Davis (Bar No. 165777)
*ydavis@hbblaw.com*
HAIGHT BROWN & BONESTEEL LLP
2050 Main Street, Suite 600
Irvine, California 92614
Telephone: 714.426.4600
Facsimile: 714.754.0826

Attorneys for Defendant
LOS ANGELES COMMUNITY COLLEGE DISTRICT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ROY PAYAN; PORTIA MASON; THE NATIONAL FEDERATION; OF THE BLIND, INC.; and THE NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, INC.,

Plaintiffs,

v.

LOS ANGELES COMMUNITY COLLEGE DISTRICT; DR. FRANCISCO C. RODRIGUEZ in his official capacity as chancellor of the Los Angeles Community College District; and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:17-cv-01697 SVW(SKx)
**[Civil Rights]**

**LOS ANGELES COMMUNITY COLLEGE DISTRICT'S MOTION *IN LIMINE* NO. 4 REGARDING CERTAIN EXPERT TESTIMONY OF PETER BOSSLEY; MEMORANDUM OF POINTS AND AUTHORITIES**

Filed Concurrently with:

(1) Declaration of Yvette Davis in Support;
(2) Declaration of Bruce Cleeland;
(2) [Proposed] Order

Trial Date: February 20, 2018

Pursuant to Federal Rules of Evidence, Rules 103, 402, 702, and 703, and *Palmerin v. City of Riverside*, 794 F2d. 1409, 1413 (9th Cir. 1986), Defendant Los Angeles Community College District (the "District") hereby moves this Court for an Order *In Limine* excluding Plaintiffs' designated expert, Peter Bossley, from opining on the following matters during trial:

(1) that the Los Angeles City College and/or the District failed to evaluate whether the MyMathLab software was accessible to sight-impaired students;

(2) that the Los Angeles Community College and/or the District failed to reasonably accommodate Plaintiffs as a result of utilizing "PeopleSoft Campus Solutions" software;

(3) that the Canvas Learning Management System is not fully accessible to sight-impaired students;

(4) that the Los Angeles City College and/or the District failed to adopt policies requiring that technology be equally accessible, or that an equally effective alternative be provided, to sight-impaired students.;

(5) that the Los Angeles City College website "in general lacks a robust heading and landmark structure," that "logical semantic structuring of contents is not used," and/or any other remarks about the purported *general* accessibility of the website;

(6) that the "Etudes" software was not accessible to Mr. Payan; and

(7) that the Los Angeles City College and/or the District failed to meet their obligation to provide equally effective alternative access to education technologies despite having notice of inaccessibility of such technology ***as to Ms. Mason***;

The District also requests that the Court instruct Plaintiffs and their counsel to instruct Mr. Peter Bossley of the Court's Order in this regard.

/ / /

This Motion is based on this Notice, the below Memorandum of Points and Authorities in support, the concurrently filed Declarations of Yvette Davis and Bruce Cleeland, the pleadings and documents which already comprise the Court's file, upon any such matters as the Court may take Judicial Notice, and upon arguments made by counsel at the time of the hearing on this Motion.

Dated: January 11, 2018 HAIGHT BROWN & BONESTEEL LLP

By: */s/ Yvette Davis*
Richard E. Morton
Yvette Davis
Attorneys for Defendant
LOS ANGELES COMMUNITY COLLEGE DISTRICT

Haight

## TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

II. STATEMENT OF FACTS .......... 1

- A. Plaintiffs' Designation of Peter Bossley and Rule 26(a)(2)(B) Report .......... 1
- B. Deposition of Peter Bossley .......... 1

III. MANY OF MR. BOSSLEY'S OPINIONS DO NOT SATISFY THE PREREQUISITES OF FEDERAL RULES OF EVIDENCE, RULE 702 AND 703 .......... 2

IV. MANY OF MR. BOSSLEY'S OPINIONS ARE NOT PREMISED ON THE NECESSARY INTELLECTUAL RIGOR AND METHODOLOGIES THAT AN EXPERT IN THIS AREA MUST EXERCISE IN ORDER TO REACH A COGENT AND KNOWLEDGEABLE CONCLUSION .......... 3

V. MR. BOSSLEY MUST BE PRECLUDED FROM OPINING ON THE FOLLOWING MATTERS .......... 5

- A. Mr. Bossley lacks foundation to opine that the Los Angeles City College and/or the District failed to evaluate whether the MyMathLab software was accessible to sight-impaired students. .......... 5
- B. Mr. Bossley may not opine that the Los Angeles Community College and/or the District failed to reasonably accommodate Plaintiffs as a result of utilizing "PeopleSoft Campus Solutions" software. .......... 8
- C. Mr. Bossley may not testify that the Canvas Learning Management System is not fully accessible to sight-impaired students. .......... 8
- D. Mr. Bossley may not opine that the Los Angeles City College or the District failed to adopt policies requiring that technology be equally accessible, or that an equally effective alternative be provided, to sight-impaired students. .......... 9
- E. Mr. Bossley may not opine that the Los Angeles City College website "in general lacks a robust heading and landmark structure," that "logical semantic structuring of contents is not used," or make any other general remarks about the purported inaccessibility of the website. .......... 10
- F. Mr. Bossley may not opine that the "Etudes" software was not accessible to Mr. Payan .......... 11
- G. Mr. Bossley may not opine that the Los Angeles City College failed to meet its obligation to provide equally effective alternative access to education technologies despite having notice of inaccessibility of such technology *as to Ms. Mason,* because he is not aware of any instance where Ms. Mason notified the Los Angeles City College of an inaccessibility issue. .......... 11

VI. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Cases**

*Bogacki v. American Machine & Foundry Co.*, 417 F.2d 400 (3rd Cir. 1969) ........ 3
*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........ 3
*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ........ 3, 4
*Tyger Const. Co., Inc. v. Pensacola Const. Co.*, 29 F.3d 137 (4th Cir. 1994) ........ 3
*United States v. Honolulu Plantation Co.*, 182 F.2d 172 (9th Cir. 1950) ........ 3
*Viterbo v. Dow Chemical Co.*, 826 F.2d 420 (5th Cir. 1987) ........ 3

*

29 U.S.C. § 794 ........ 1
42 U.S.C. § 12131 ........ 1
Fed. R. Civ. P. 26(a)(2)(B) ........ 1
Federal Rules of Evidence 702 ........ 2
Federal Rules of Evidence 703 ........ 2

Haight

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This action was filed by Plaintiffs Roy Payan, Portia Mason, the National Federation of the Blind, Inc. and the National Federation of the Blind of California, Inc. (jointly "Plaintiffs") alleging violations of the Americans with Disabilities Act against the Los Angeles Community College District (the "District"). Namely, Plaintiffs allege that the District failed to accommodate Mr. Payan and Ms. Mason's needs as blind students of Los Angeles City College in violation of 42 U.S.C. § 12131, *et seq.,* and 29 U.S.C. § 794, *et seq.*

## II. STATEMENT OF FACTS

### A. Plaintiffs' Designation of Peter Bossley and Rule 26(a)(2)(B) Report

On October 2, 2017, Plaintiffs served reports of their retained experts pursuant to Federal Rules of Civil Procedure, Rule 26(a)(2)(B). (See **Exhibit "1"** to the Declaration of Yvette Davis ["Davis Decl."] ¶ 3.) Within the designation, Plaintiffs' retained expert, Peter Bossley, provided a 26-page report dated October 2, 2017, wherein he purported to offer certain expert opinions. (*Id.* beginning at page 7 of **Exhibit "1"** to the Davis Decl. ¶ 3.)

### B. Deposition of Peter Bossley

On October 27, 2017, counsel for the District served an Amended Notice of Taking deposition of Peter Bossley, listing 17 categories of documents to be produced. (See **Exhibit "2"** to the Davis Decl. ¶ 4.)

#### 1. General foundational gaps in Mr. Bossley's Testimony

Mr. Bossley has not spoken with Mr. Payan, Ms. Mason, or any of the instructors of the Los Angeles City College who interacted with the Plaintiffs. (See **page 41, line 20 through page 42:16** of the deposition transcript of Peter Bossley, dated November 7, 2017, attached as **Exhibit "1"** to the Declaration of Bruce Cleeland ["Cleeland Decl."] ¶ 3.)



Haight

Mr. Bossley was asked whether a "complaint driven component" for accessibility of library materials is a viable means of overseeing accessibility issues at a university – he responded in the affirmative. (*Id.* at 52:6 – 19.)

Mr. Bossley did not review any of Mr. Payan or Ms. Mason's Request for Accommodation letters they provided to the Los Angeles City College. (*Id.* at 93:6 – 19.)

## III. MANY OF MR. BOSSLEY'S OPINIONS DO NOT SATISFY THE PREREQUISITES OF FEDERAL RULES OF EVIDENCE, RULE 702 AND 703

Federal Rules of Evidence, Rule 702[1] and 703 preclude introduction of many of Mr. Bossley's opinions and described "standards." Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Under Rule 703, the Court acts as a gatekeeper to determine *before admitting expert testimony*, whether the expert's opinion rests upon foundation so unreliable that it should

---

[1] All references to a "Rule" or "Rules" shall pertain to the Federal Rules of Evidence throughout this Memorandum unless indicated otherwise.



Haight

be excluded from consideration. See *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987). Generally, an expert's opinion should be excluded when it is premised on assumptions by the expert that are not based in facts known to the expert. See *Tyger Const. Co., Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 144 (4th Cir. 1994)(excluding expert opinions premised on assumptions made by the expert that were unsupported by any evidence or testimony in the record.) In *United States v. Honolulu Plantation Co.*, 182 F.2d 172, 178 (9th Cir. 1950), the United States Court of Appeals for the Ninth Circuit held that where the opinion of an expert is based on erroneous assumptions of fact or law, the evidence is incompetent and insufficient to support a verdict.

Moreover, in order for an expert to base his opinion on a study it is necessary that he be able to testify of his own knowledge as to the nature and extent of the source from which statistics were gathered. See *Bogacki v. American Machine & Foundry Co.*, 417 F.2d 400 (3rd Cir. 1969).

## IV. MANY OF MR. BOSSLEY'S OPINIONS ARE NOT PREMISED ON THE NECESSARY INTELLECTUAL RIGOR AND METHODOLOGIES THAT AN EXPERT IN THIS AREA MUST EXERCISE IN ORDER TO REACH A COGENT AND KNOWLEDGEABLE CONCLUSION.

In the landmark decisions of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert*") and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ("*Kumho Tire*") the United States Supreme Court held that that the trial court's gatekeeping function (with respect to all expert testimony) requires the court to ensure the reliability and relevancy of expert testimony by making sure the expert employs the same level of intellectual rigor that characterizes the practice of an expert in the pertinent field. The decision to exclude expert testimony rests in the trial court's discretion. (See generally *Kumho Tire* and *Daubert*.)

In *Kumho Tire* the expert opinions at issue were those of a purported tire failure analyst. (*Id.* at 1176-1177.) The Supreme Court affirmed the trial court's exclusion of the testimony because the expert's methodology for reaching his opinion (about the cause of separation of tire tread) seemingly ignored evidence that the witness testified would

support a different opinion. *Id.* at 1177. After expressly holding that the pertinent inquiry was whether the expert could reliably determine the cause of *the subject tire's separation*, the Supreme Court noted:

> For another thing, the transcripts of Carlson's [the expert] depositions support both the trial court's initial uncertainty and its final conclusion. Those transcripts cast considerable doubt upon the reliability of both the explicit theory (about the need for two signs of abuse) and the implicit proposition (about the significance of visual inspection in this case). Among other things, the expert could not say whether the tire had traveled more than 10, or 20, or 30, or 40, or 50 thousand miles, adding that 6,000 miles was "about how far" he could "say with any certainty." [Citation omitted.] The court could reasonably have wondered about the reliability of a method of visual and tactile inspection sufficiently precise to ascertain with some certainty the abuse-related significance of minute shoulder/center relative tread wear differences, but insufficiently precise to tell "with any certainty" from the tread wear whether a tire had traveled less than 10,000 or more than 50,000 miles. And these concerns might have been augmented by Carlson's repeated reliance on the "subjective[ness]" of his mode of analysis in response to questions seeking specific information regarding how he could differentiate between a tire that actually had been overdeflected and a tire that merely looked as though it had been. Citation omitted.] They would have been further augmented by the fact that Carlson said he had inspected the tire itself for the first time the morning of his first deposition, and then only for a few hours. (His initial conclusions were based on photographs.)

*Id.*

Similarly here, Many of Mr. Bossley's opinions are premised on unreliable methodologies. For example, Mr. Bossley intends to opine that the Los Angeles City College website "in general lacks a robust heading and landmark structure," and that "logical semantic structuring of contents is not used" on the website. Yet when asked how many individual web pages on the Los Angeles City College website he reviewed, Mr. Bossley identified "half a dozen" as his "rough guess." (See **Exhibit "1"** to the Cleeland Decl. ¶ 3 at 189:3 – 189:24.) He then admitted that he does not know how many total pages exist on the Los Angeles City College website, and he did not attempt to find out. (*Id.* at 190:1-4.) When asked how many web pages exist on *his* university's website (the



Haight

Ohio State University), he agreed it was likely there were *more than one million pages*. (*Id.* at 190:5-9.)[2]

Yet another example is Mr. Bossley's opinion that the "Etudes" software at the Los Angeles City College was not reasonably accessible to Plaintiff, Roy Payan. While Mr. Bossley reviewed the Etudes software, he never sought to determine (and ultimately testified he does not know) whether Mr. Payan's difficulties in accessing the software were the result of operator error by Mr. Payan. (*Id.* at 83:17 – 84:21.) He also admitted that he is aware of times in which a student's inability to access software was caused by user error, ***but he never inquired with Mr. Payan and, did not otherwise make any effort to determine whether user error was the cause of the reported difficulties Mr. Payan allegedly encountered***. (*Id.*)[3]

In sum, the methodology employed by Mr. Bossley in reaching several of his opinions cannot reasonably be said to demonstrate the same intellectual rigor as experts would employ in Mr. Bossley's field when trying to ascertain the accuracy of the information he is opining upon.

## V. <u>MR. BOSSLEY MUST BE PRECLUDED FROM OPINING ON THE FOLLOWING MATTERS</u>

### A. Mr. Bossley lacks foundation to opine that the Los Angeles City College and/or the District failed to evaluate whether the MyMathLab software was accessible to sight-impaired students.

It is anticipated that Mr. Bossley will attempt to opine that the Los Angeles City College and/or the District did not implement a review or evaluation of the software "MyMathLab" to determine its accessibility to sight-impaired students like the Plaintiffs. However, during deposition, he testified that he does not know whether the software was

[2] The inadmissibility of this specific opinion is discussed further in subsection V.E of this Memorandum.

[3] The inadmissibility of this specific opinion is discussed further in subsection V.F of this Memorandum.

or was not tested for accessibility. (*Id.* at 71:14 – 72:8.) Further, Mr. Bossley testified that he relied on deposition testimony from Randy Anderson in reaching his conclusion that evaluations of software for accessibility for were not being performed and/or were insufficient. the following exchange occurred:

> Q. Okay. I'm just asking if there's any information in the deposition testimony of Mr. Anderson, his testimony, that you relied upon in reaching any opinions or conclusions in your capacity as an expert witness in this matter?
>
> A. There were.
>
> Q. What?
>
> A. His -- his testimony regarding how accessibility evaluations were conducted or were not conducted speaks to the institution's process around accessibility evaluations.
>
> Q. When?
>
> MS. KREVOR-WEISBAUM: Objection.
>
> THE WITNESS: What do you mean when?
>
> By Mr. Cleeland: Q. You said the school's policies. When? What time frame for those policies? A year ago? Five years ago? 20 years ago? A week ago?
>
> A. His testimony seemed to be about more recent.
>
> Q. How more recent?
>
> A. I don't recall specifically.
>
> Q. Wouldn't that be important to know what he was talking about as to support any opinions or conclusions you had regarding the propriety of the school's work regarding testing accessibility?
>
> A. Well, let's say that his testimony seemed to be about more recent events, things within the last five years.
>
> Q. Okay. So within the five years, right?
>
> A. Yes.
>
> Q. And have the policies at The Ohio State University Digital Accessibility Center changed over the last five years regarding testing for accessibility?
>
> A. They have.

Q. How many times?

A. More recently, within the last year, we have begun policy revision.

Q. So would it be important for you to know when Mr. Anderson was talking about, what time frame, and what policies were in effect at that time to assess his actions or the school's actions regarding testing of accessibility?

A. Yes.

Q. And you didn't bother to check on that, correct?

MS. KREVOR-WEISBAUM: Objection.

THE WITNESS: I don't recall the specifics.

By Mr. Cleeland: Q. You didn't check on that, did you?

A. I don't recall the specifics at this time.

Q. Did you check on it at any time?

MS. KREVOR-WEISBAUM: Objection.

THE WITNESS: I read the transcript.

By Mr. Cleeland: Q. Did you check on the school's policies, their time frame, as compared to the testimony of Mr. Anderson, so you knew what policy you were talking about?

A. Other than what I read in the policy, I did not check any time frames.

(*Id.* at 75:1 – 77:16.)

Because Mr. Bossley doesn't have any foundation for opining that the evaluation or testing of the "MyMathLab" software was insufficient or not done prior to or during Mr. Payan or Ms. Mason's enrollment period, he must be precluded from offering an opinion in this regard. His opinion is admittedly not based on any facts of which he has personal knowledge sufficient to form the basis of his conclusion – he is guessing that Mr. Randy Anderson was referring to a period of time without any foundation for that guess. He then uses that speculation to form the basis of this opinion.

/ / /

**B. Mr. Bossley may not opine that the Los Angeles Community College and/or the District failed to reasonably accommodate Plaintiffs as a result of utilizing "PeopleSoft Campus Solutions" software.**

It is expected that Mr. Bossley will attempt to testify that the mere selection of the software "PeopleSoft Campus Solutions" resulted in Los Angeles City College and/or the District discriminating against Mr. Payan and Ms. Mason. Such opinion should not be admitted because Mr. Bossley admitted, during deposition, that the PeopleSoft Campus Solutions" software is "in wide usage in the higher education space" and because he has never personally performed testing to make himself aware of alternative products which are more accessible. (*Id.* at 140:11 – 143:5.) He also testified that his own university, Ohio State University, employs the PeopleSoft Campus Solutions software. (*Id.*) He further admitted that he has no personal knowledge if there is indeed any product on the market which is more effective or provides more effective navigation by screen reader users than PeopleSoft. (*Id.*)

Based upon his lack of having performed any research of available alternative products, and the fact that the "PeopleSoft Campus Solutions" software is admittedly in wide usage in higher education, Mr. Bossley should be precluded from opining that the utilization of this software at the Los Angeles City College by the Defendant was discriminatory to Plaintiffs (or that it resulted in unequal access).

**C. Mr. Bossley may not testify that the Canvas Learning Management System is not fully accessible to sight-impaired students.**

It is anticipated that Mr. Bossley will attempt to opine that the Canvas Learning Management System software is not reasonably accessible to sight-impaired students at the Los Angeles City College. This testimony should be precluded because Mr. Bossley lacks the requisite foundation.

First, Mr. Bossley testified that he is not aware of *any* examples at the Los Angeles Community College, or relative to the District, in which the Canvas Learning Management System is not fully accessible. (*Id.* at 184:19 – 185:13.)

Second, Mr. Bossley admitted that he has no knowledge whether the Canvas Learning Management System was properly implemented by the Los Angeles City College. (*Id.*)

Finally, Mr. Bossley admitted he performed no testing to determine whether the Canvas Learning Management System was properly implemented by the Los Angeles City College or the District. He closed by noting "I have no opinion about their implementation of Canvas." (*Id.* at 185:19 – 186:1.)

### D. Mr. Bossley may not opine that the Los Angeles City College or the District failed to adopt policies requiring that technology be equally accessible, or that an equally effective alternative be provided, to sight-impaired students.

During deposition, Mr. Bossley was questioned about an opinion in his report where he concluded that "colleges and universities should adopt policies requiring that technology, including that used in the classroom, must either be accessible, or an equally effective alternative must be provided to students with disabilities and they must receive equal treatment as their nondisabled peers in the use of that alternative." (*Id.* at 208:20 – 209:20.) The following exchange occurred in this regard:

> Q. Then there's a reference to the letter again. And below that nonblocked, it starts, "In response to this letter, and in compliance with ADA Title II..." Again, is this your language?
>
> A. It is.
>
> Q. "In response to this letter, and in compliance with ADA Title II and Section 504, colleges and universities should adopt policies requiring that technology, including that used in the classroom, must either be accessible, or an equally effective alternative must be provided to students with disabilities and they must receive equal treatment as their nondisabled peers in the use of that alternative." Did L.A. City College do that?
>
> A. I don't believe so.
>
> Q. Did LACCD do that?
>
> A. I don't believe so.
>
> Q. Okay. It states in the section, and in your own sentence, colleges and universities should adopt policies requiring that

technology be accessible. Doesn't LACC have a policy that the technology be accessible?

A. They do.

Q. Doesn't LACCD have a policy that the programs be accessible?

A. They do.

Q. You state later, "In addition to written policy requirements..." So you draw the distinction between policies and implementation, correct?

A. I do.

(*Id.* at 208:15 – 209:20.)

After initially indicating that the Los Angeles City College does not meet the requirement of having a policy in this regard, he admits such policy exists – his opinion is that it was not *implemented.* Accordingly, while he may be able to properly opine upon whether the policy was implemented properly, he admittedly *cannot* opine that the Los Angeles City College did not adopt a policy regarding accessibility of technology. Such an opinion would lack foundation as it would be based on a fundamentally false prerequisite fact – i.e. that there did *not* exist a policy that had been *adopted.*

**E. Mr. Bossley may not opine that the Los Angeles City College website "in general lacks a robust heading and landmark structure," that "logical semantic structuring of contents is not used," or make any other general remarks about the purported inaccessibility of the website.**

It is expected that Mr. Bossley will attempt to opine that the Los Angeles City College website generally lacks what he described as "robust heading and landmarks structure[s]." It is also expected that he will make general comments about the purported inaccessibility of the website. However, the basis for opinions in this regard is insufficient.

When asked how individual web pages on the Los Angeles City College website he reviewed, Mr. Bossley identified "half a dozen" as his "rough guess." (*Id.* at 189:3 – 189:24.) He then admitted that he does not know how many pages exist on the Los Angeles City College website, and he did not attempt to find out. (*Id.* at 190:1-4.) When asked how many web pages exist on his university's website (the Ohio State University),



Haight

he agreed it was likely there were more than one million pages. (*Id.* at 190:5-9.) He also testified that that some of the websites were sufficiently accessible to a sight-impaired person. (*Id.* at 191:12 – 192:1.) Finally, he stated that he did not perform any comparison between the approximately seven pages that he reviewed and the remainder of the Los Angeles City College website pages to ascertain the ratio of accessible to inaccessible website pages. (*Id.* at 189:3 – 196:7)

For these reasons, Mr. Bossley must be precluded from testifying about the general nature of the Los Angeles City College. His testimony must be limited to individual web pages which he *actually* determined were not accessible to sight-impaired persons.

**F. Mr. Bossley may not opine that the "Etudes" software was not accessible to Mr. Payan**

It is evident that Mr. Bossley intends to opine that the "Etudes" software at the Los Angeles City College was not reasonably accessible to Plaintiff, Roy Payan. While Mr. Bossley reviewed the Etudes software, he never sought to determine (and ultimately testified he does not know) whether Mr. Payan's difficulties in accessing the software were the result of operator error by Mr. Payan. (*Id.* at 83:17 – 84:21.) He also admitted that he is aware of times in which a student's inability to access software was caused by user error. (*Id.*) He never inquired or determined whether user error was the cause of the reported difficulties Mr. Payan allegedly encountered. (*Id.*)

Mr. Bossley has not employed the requisite intellectual rigor and methodology that an expert in this area must employ to reach such a conclusion. The opinion should be excluded accordingly.

**G. Mr. Bossley may not opine that the Los Angeles City College failed to meet its obligation to provide equally effective alternative access to education technologies despite having notice of inaccessibility of such technology *as to Ms. Mason,* because he is not aware of any instance where Ms. Mason notified the Los Angeles City College of an inaccessibility issue.**

During deposition, Mr. Bossley was questioned about an opinion appearing in his report where he opined that "LACCD has failed to meet its obligation to provide equally

effective alternative access to inaccessible education technologies in order for students with disabilities, including blind students, to have an equal opportunity to obtain the educational benefits of the technology, even when the institution is notified of the inaccessibility of such technology." (*Id.* at 274:10 – 275:18.) Mr. Bossley admitted that he is aware of only one student having notified the Los Angeles City College of having experienced an accessibility issues, and that student was Plaintiff, Roy Payan. (*Id.*) He admits that his entire opinion about failing to act with notice of inaccessibility is premised solely on the notification by Mr. Payan. (*Id.*)

Accordingly, Mr. Bossley may not opine that the Los Angeles City College or the District failed in this regard, as to Ms. Mason, as he admits he is not aware of Ms. Mason having notified the District or anyone at Los Angeles City College of having accessibility issues – this opinion lacks foundation as it relates to Ms. Mason.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, the District respectfully requests the Court issue an Order, *In Limine*, precluding Mr. Bossley from opining upon the seven matters identified in the Notice of this Motion.

Dated: January 11, 2018 HAIGHT BROWN & BONESTEEL LLP

By: */s/ Yvette Davis*
Richard E. Morton
Yvette Davis
Attorneys for Defendant
LOS ANGELES COMMUNITY COLLEGE DISTRICT



Haight