1  Patricia Barbosa (SBN 125685)
   pbarbosa@barbosagrp.com
2  **BARBOSA GROUP**
   8092 Warner Avenue
3  Huntington Beach, California  92647
   Phone: (714) 465-9486
4
   Sharon Krevor-Weisbaum
5  skw@browngold.com
   Joseph B. Espo
6  jbe@browngold.com
   Jean M. Zachariasiewicz
7  jmz@browngold.com
   **BROWN, GOLDSTEIN & LEVY LLP**
8  120 East Baltimore Street, Suite 1700
   Baltimore, Maryland  21202
9  Phone: (410) 962-1030

10 *Attorneys for Plaintiffs*

11         **IN THE UNITED STATES DISTRICT COURT**

12        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13 ROY PAYAN, PORTIA MASON, THE       ) Case No.: 2:17-cv-01697-SVW(SKx)
   NATIONAL FEDERATION OF THE         )
14 BLIND, INC., and THE NATIONAL      ) **Civil Rights**
   FEDERATION OF THE BLIND OF         )
15 CALIFORNIA, INC.,                  ) **PLAINTIFFS' TRIAL BRIEF**
                                      ) **[LOCAL RULE 16-10]**
16                Plaintiffs,         )
                                      )
17 vs.                                )
                                      ) **Trial Date: Feb. 20, 2018**
18 LOS ANGELES COMMUNITY             )
   COLLEGE DISTRICT,                  )
19                                    )
                   Defendant.         )
20                                    )
                                      )
21                                    )
                                      )
22                                    )
                                      )
23                                    )
                                      )
24                                    )
25

26

27

28

Plaintiffs ROY PAYAN, PORTIA MASON, THE NATIONAL FEDERATION OF THE BLIND, INC., and THE NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, INC. ("Plaintiffs") hereby submit their Trial Brief in compliance with the Court's Minute Order (Dkt. 133).

After hearing argument during the pretrial conference held February 12, 2018, the Court granted Plaintiffs' Motion for Partial Summary Judgment (Dkt. 48), finding that LACCD failed to take steps to ensure Plaintiffs full and equal access to its programs and services, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.  In its Minute Order dated February 13, 2018 (Dkt. 133), the Court ordered the Parties to file trial briefs identifying the witnesses each side intends to rely upon in arguing intentional discrimination, and a summary of each witness's testimony.

## I.    PLAINTIFFS ARE ENTITLED TO SEEK DAMAGES BECAUSE LACCD COMMITTED INTENTIONAL DISCRIMINATION THROUGH ITS DELIBERATE INDIFFERENCE TO PLAINTIFFS' RIGHT TO EQUAL ACCESS TO ITS PROGRAMS, SERVICES, AND ACTIVITIES.

To recover damages under Title II or Section 504, a plaintiff must prove intentional discrimination.  *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998)).  As the Court noted during the pretrial conference, Plaintiffs do not need to show discriminatory animus to obtain damages under Title II or Section 504.  Instead, the Ninth Circuit has held that a plaintiff proves intentional discrimination by demonstrating that a public entity showed "deliberate indifference" to a plaintiff's right to equal access to the public entity's programs and services.  *Duvall v. County of Kitsap*, 260 F. 3d 1124, 1138 (9th Cir. 2001).  "Deliberate indifference requires both

1  knowledge that a harm to a federally protected right is substantially likely, and a
2  failure to act upon that the likelihood." *Id.* at 1139.

3      **A.**    **Plaintiffs can satisfy the first element of deliberate indifference**
4      **through evidence showing LACCD's failure to follow known**
5      **guidance and its own policies regarding equal access and equally**
6      **effective communication.**

7      Plaintiffs will introduce evidence showing that LACCD has been on notice of
8  its obligation to provide equal access and equally effective communication to blind
9  students since at least 2000.  *See City of Canton v. Harris*, 489 U.S. 378, 389 (1988)
10  (O'Connor, J., concurring) (stating that deliberate indifference requires both "some
11  form of notice…and the opportunity to conform to [statutory] dictates." (cited with
12  approval in *Duvall*, 260 F.3d at 1139)).  Plaintiffs' evidence includes the Guidelines
13  for Producing Instructional and Other Printed Materials in Alternate Media for
14  Persons with Disabilities issued by the Chancellor's Office of the California
15  Community Colleges in 2000 ("Chancellor's Guidelines"); the 2010 "Dear
16  Colleague" letter from the U.S. Departments of Justice and Education to college and
17  university presidents informing them that the requirements of Title II and Section 504
18  reach equipment and technological devices used in education, including technology
19  in the classroom; LACCD's Administrative Regulation B-33, "Web Accessibility
20  Standards and Guidelines," which requires all LACCD websites to provide equal
21  access to individuals with disabilities; LACCD Administrative Regulation B-34,
22  "ADA Self-Evaluation and Transition Plan 2015," which requires that all employees
23  be trained in ADA policies applicable to their departments and positions; and
24  LACC's "Alternate Media Production Policy," which provides procedures for
25  ensuring that all instructional equipment purchases and contracts be reviewed to
26  ensure compliance with federal regulations.

27
28

Plaintiffs and their witnesses will offer testimony to demonstrate that LACCD has written policies intended to ensure equal access and equally effective communication to blind students, but that it does not take steps to implement those policies with concrete procedures and training.  Instead, LACCD addresses accessibility on a complaint-driven, post-hoc accommodations basis.  Relying on individual accommodations in this manner cannot remediate many of the technological barriers blind students encounter, and it fails to provide them with equal access on a timely basis, as federal law requires.

**B.    Plaintiffs can also satisfy the first element of deliberate indifference through evidence of LACCD's failure to provide Plaintiffs with accessible educational materials and appropriate accommodations, despite Plaintiffs' repeated requests.**

In *Duvall*, the Ninth Circuit held that, "[w]hen the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id*., 260 F.3d at 1139.  Here, Plaintiffs will show that they provided LACCD with multiple requests for accessible texts, software, websites, note-takers, and modifications of discriminatory practices so that they could participate in and benefit from the education offered to sighted students.   Both Mr. Payan and Ms. Mason registered with the Office of Special Services ("OSS") at LACC every semester they attended classes and met with an OSS counselor to obtain authorization for accommodations suited to their needs as blind students.  Their approved accommodations included recording of lectures and note-taking assistance. Thus, Defendant was on notice that Plaintiffs needed modification of how educational material was presented to them every semester and for each class they attended in order for them to have equal opportunity to participate in and benefit from the

education offered to sighted students.  Despite this knowledge, Defendant consistently failed to give the individual Plaintiffs accessible educational materials on a timely basis.  For instance, Mr. Payan and Ms. Mason will testify that they both received textbooks in an accessible format on a piecemeal basis, causing them to fall behind in class; and they did not receive in-class handouts in an accessible format before class so they could not follow along like sighted students.  The evidence will also show that LACCD failed to ensure that LACC professors permitted Plaintiffs' authorized accommodations in class.

While Defendant may argue that Plaintiffs always received some level of access through individual accommodations, Congress intended to prohibit discrimination that denies "disabled persons public services disproportionately due to their disability." *Crowder v. Kitigawa,* 81 F.3d 1480, 1483 (9th Cir. 1996).  It is not a complete denial of services that demonstrates deliberate indifference, but LACCD's repeated failure to provide Plaintiffs with an equal opportunity to participate in classes and obtain the same benefits as sighted students.

## II.    PLAINTIFFS' PROPOSED WITNESS TESTIMONY

Plaintiffs will offer the following testimony to prove that LACCD was deliberately indifferent by violating known guidance and its own stated policies requiring equal access and equally effective communication to blind students.

### A.    Individual Plaintiffs

- **Plaintiff Roy Payan**: Mr. Payan will testify that because he is blind, he was denied equal access to LACCD's programs and services and equally effective communication as sighted students.  Mr. Payan will testify that he has registered with OSS and fulfilled LACC's requirements for requesting accommodations for every semester and for each class he has attended at LACC.  Despite following LACC's procedures to receive accommodations, Mr. Payan will testify that he has repeatedly encountered instructors who refuse to grant him the authorized accommodations,

including as recently as February of 2018. Mr. Payan's professors have also failed to provide him with in-class educational materials in an accessible format and in a timely manner, so he has been unable to follow along and participate in class on an equal basis with his sighted peers.

Mr. Payan will also testify that he has taken multiple classes that require the use of technology that is inaccessible to him as a blind student, namely MyMathLab and Etudes. Though Mr. Payan has repeatedly notified OSS, his instructors, and the head of the Math Department of the difficulties he has encountered and continues to encounter with inaccessible technology, he will testify that the barriers he has encountered have never been resolved. Instead, to use MyMathLab, Mr. Payan has been forced to have a tutor read him math problems and input his answers into the software. Mr. Payan is only permitted two hours of math tutoring per week, although he cannot complete his homework or learn the material with only two hours of assistance per week. As a result, Mr. Payan has done poorly or failed math classes in which he could not keep up because of inaccessible math software. Similarly, in a class using Etudes, the only way Mr. Payan could participate was for his professor to help him find a workaround for using the software.

Mr. Payan will also testify that LACCD has denied him necessary auxiliary aids and services that he needs to understand educational material or participate on an equal basis with sighted students. LACCD has not provided Mr. Payan with note-takers, instead directing him to ask other students to give him copies of their notes. LACCD has also failed to consistently provide Mr. Payan with test proctors who could correctly read math questions to blind students. Mr. Payan will testify that the websites used by LACCD and LACC are difficult for him to use independently to complete tasks such as registering for classes online and to downloading his transcript.

Mr. Payan will also testify that he received educational materials late, in part because professors do not choose textbooks that are available in an accessible format, and they do not send texts to OSS to be converted into an accessible format prior to the start of the semester.  Instructors also do not provide class syllabi until the first day of class, so that Mr. Payan does not have enough time to have materials converted into an accessible format before classes begin.  Mr. Payan was also never provided with any tactile materials to help him understand graphs and diagrams, nor offered material in Braille.

Ultimately, Mr. Payan will testify he has been denied equally effective communication in some form in every class he has taken.  Mr. Payan's testimony will support his claim that LACCD discriminated against him with deliberate indifference to his right to full and equal access and participation in its programs and services.

- **<u>Plaintiff Portia Mason</u>**:  Ms. Mason has much the same testimony as Mr. Payan regarding LACCD's failure to provide equally effective communication and her inability to participate or benefit from class materials and lectures.  Ms. Mason will testify about two psychology classes she took in spring 2016.  Ms. Mason will testify that, like Mr. Payan, she registered with OSS and received accommodation letters for each class she took at LACC.  Ms. Mason was required to complete research papers for two of her classes, but many of the research materials on library databases were not accessible with JAWS.  Ms. Mason had problems retrieving accessible materials both in the library and remotely from home.  The JAWS version installed in the library during that time also had a demonstration version that timed out after 40 minutes, causing Ms. Mason to restart her work every time the program timed out.

One of Ms. Mason's professors also required use of a handbook that was not provided in an accessible format.  Even after Ms. Mason took the handbook to OSS to be converted into an accessible format, she could not understand portions of the

1   handbook.  Similarly, Ms. Mason will testify that she routinely received in-class

2   handouts and lecture notes in an inaccessible format so she was unable to use them at

3   the same time as her sighted peers.

4        Ms. Mason also has difficulty using the LACCD website to register for classes.

5   Ms. Mason will testify that she has notified OSS that she has had problems using

6   student-facing websites and software with JAWS.

7        Ms. Mason will testify that accommodation letters from OSS do not require

8   instructors to designate textbooks early, or send inaccessible material to the High

9   Tech Center at OSS for conversion into an accessible format prior to use in class, or

10  to modify their procedures to verbally articulate what is written on the board or

11  offered in a visual form, such as a picture or video, in class.  Ms. Mason will testify

12  that instructors will not provide accessible materials and equally effective

13  communication in class if they are not forced to do so by the administration.

14      **B.    Plaintiffs' Experts**[1]

15      •    **Peter Bossley**:  Mr. Bossley is the Director of the Ohio State

16  University's Digital Accessibility Center.  In his role as an expert in this case,

17  Mr. Bossley reviewed and evaluated the functional accessibility of software deployed

18  at LACCD for student use, including PeopleSoft Campus Solutions, the LACCD

19  website, MyMathLab, and Etudes.  Mr. Bossley will testify that these software

20  applications and website presented accessibility barriers.  He will further testify that

21  if LACCD had conducted even basic accessibility testing during the procurement

22  stage, it would have been readily apparent that the software and website did not

23  provide blind students with equal access to LACCD's programs and services.  Mr.

24  Bossley will further testify that there should be procurement controls requiring that

25  technology be evaluated for accessibility compliance prior to purchase, and that a

26

27  [1]Plaintiffs' expert Bruce Steven Growick will testify to the economic damages
    amount for the individual Plaintiffs.

28

1    Staff member should be delegated the responsibility and authority for ensuring that

2    LACCD and its campuses comply with obligations for technology accessibility.  Mr.

3    Bossley will testify that notwithstanding LACCD's written policy on website

4    accessibility, LACCD lacks the necessary procedures and policies to ensure that its

5    student-facing software and website are, in fact, accessible to blind students and that

6    they will be maintained in an accessible fashion.  Mr. Bossley will also testify that

7    LACCD has failed to sufficiently train its faculty and staff on the institution's

8    obligations under the ADA and the Rehabilitation Act.

9          •     **Jon Gunderson**:  Dr. Gunderson is the Coordinator of Accessible IT

10   Group, Division of Disability Resources and Education Services at the University of

11   Illinois in Champaign/Urbana.  Dr. Gunderson will testify that LACC and LACCD

12   lack sufficient procedures and training to ensure that blind students are provided

13   equal access to print and electronic instructional material and other resources

14   (including library databases).  He will further testify that even though LACCD has

15   written policies generally requiring that course materials be accessible to students

16   with disabilities (such as the Chancellor's Guidelines and Administrative Regulations

17   B-33 and B-34), there are no clear procedures or practices to actually implement

18   those policies.  For instance, Dr. Gunderson will testify that there are no procedures

19   or practices requiring the provision of instructional materials to blind students in an

20   accessible format at the same time non-disabled students receive the information.

21   Similarly, Dr. Gunderson did not observe any procedures or practices at LACCD and

22   LACC that describe how accessibility of instructional technology is evaluated as part

23   of the procurement process or whether accessibility is even considered in procuring

24   technology.  Dr. Gunderson will also testify that LACC and LACCD rely on a

25   student-initiated, complaint-driven process to belatedly address any accessibility

26   issues.

27

28

Dr. Gunderson will also testify to the policies, procedures, and training that LACCD needs to provide equal access to blind students, including but not limited to: developing policies and training for faculty to provide accessible electronic versions of handouts in class; policies and training for faculty to improve their multimodal teaching style for students; policies, training, and procedures for administrators and IT professionals to develop standardized practices for evaluating software and websites for accessibility; and conducting an audit of current educational technology and digital content.

### C.   Other Fact Witnesses

- **Virginia Romero**:  Ms. Romero will testify that she is a blind student at LACC who is registered with OSS and receives accommodations letters every semester for each class she takes.  She will testify that she has encountered communication barriers that have made it more difficult for her to participate in class, to learn class material, to do homework assignments, and to achieve the same grades and accomplishments as sighted students.  She has also had difficulty in receiving timely and correctly formatted texts, and problems taking math exams with the untrained proctors in OSS.

Like Mr. Payan, Ms. Romero will testify that MyMathLab is inaccessible to her with JAWS and she has not been able to use the software.  She will testify that she has never been able to do homework or take practice quizzes or tests using this program.  Ms. Romero will testify that she has also had difficulty using the Canvass software used by some instructors to post homework or other assignments.  Ms. Romero will also testify that the software she needed to use in the language lab for a Spanish class was not accessible with JAWS.

Ms. Romero will testify that she repeatedly notified her math instructors, the dean of the Math Department, and OSS staff that she cannot use MyMathLab with a screen-reader.  She will testify that she has attended Accommodation Committee

1  Meetings in which students complained about the problems with MyMathLab as well.

2  Ms. Romero has never heard any OSS staff offer solutions for using MyMathLab

3  with JAWS, and the only solution she has been offered is to have her note-taker or an

4  OSS tutor read the problems on MyMathLab to her.

5       Ms. Romero's testimony will refute LACCD's claims that blind students

6  evaluated and used MyMathLab and had positive experiences.

7       •    **Sylvia Mitchell**:  Ms. Mitchell will testify that she is blind and was a

8  student at LACC from 2010 to 2016.  She is also a member of the National

9  Federation of the Blind of California, Inc. ("NFBCA").  Ms. Mitchell will testify that

10  she took math classes and found that MyMathLab was not useable with JAWS and

11  she could not use the math software independently.  Ms. Mitchell reported her

12  problems using MyMathLab to OSS staff.

13       Ms. Mitchell will also testify that she had difficulty obtaining textbooks in an

14  accessible format in time to use them in class, denying her the opportunity to

15  participate in class on an equal basis and causing her to fall behind.  Ms. Mitchell also

16  had difficulty using the software Etudes in her classes, and had to withdraw from a

17  computer class after she and Ryan Kushner demonstrated to the instructor how

18  difficult it was to use JAWS to read class material.  The computers in the English lab

19  only had demonstration versions that timed-out, making it difficult for her to

20  complete her work.

21       Ms. Mitchell will also corroborate Ms. Mason's testimony that the LACC

22  library databases contained inaccessible materials.  Ms. Mitchell will testify that she

23  required assistance to obtain the materials she wanted from library databases because

24  although she was able to search for relevant research materials, the articles and papers

25  downloaded were not accessible.  She will testify that the library staff would send her

26  to the High Tech Center to convert the materials rather than assist her in the library.

27

28

1      • **Wail Alhidir**:  Mr. Alhidir will testify that he is blind and was a student

2   at LACC from 2013 to 2017.  He is also a member of the National Federation of the

3   Blind of California, Inc. ("NFBCA").  He will testify that he encountered numerous

4   communication barriers during his time as a student at LACC.  He will testify that he

5   had difficulty understanding lectures when instructors failed to read what they were

6   writing on the board; he could not read handouts until after class when OSS formatted

7   the handouts; and instructors assigned research material from library databases that

8   were not accessible with JAWS Mr. Alhidir will also testify that LACCD never

9   provided him with note-takers despite his repeated requests.

10     Mr. Alhidir will testify that when he complained about an inaccessible

11   assignment or project, he was offered the "accommodation" of skipping the

12   assignment, or doing his best with inaccessible documents or programs.  He will

13   testify that he wanted the opportunity to participate in class work with sighted

14   classmates, not to skip work because he is blind.

15      • **Steven Cargill**:  Mr. Cargill will testify that he is blind and is a student

16   at LACC.  He registered and received accommodation letters each semester he has

17   attended LACC and for each class he has taken.  He will testify that the math

18   department and OSS have been on notice that the MyMathLab software used by math

19   instructors is not compatible with JAWS screen readers.  Mr. Cargill will testify that

20   he struggled in and ultimately failed Math 124B because the class used MyMathLab.

21   He will testify that he complained about MyMathLab to instructors and OSS.  He will

22   testify that he was never asked to evaluate math software for any classes that he has

23   taken.

24      • **David Serrano**:  Mr. Serrano is the former LACCD ADA Coordinator.

25   Mr. Serrano will testify that he received no training regarding the accessibility of

26   educational material for blind students.  Mr. Serrano will testify that though LACCD

27   has procurement policies requiring accessibility of websites and student-facing

28

software, he cannot identify anyone at LACCD who ever evaluated or reported on the accessibility of LACCD websites and student-facing software to determine compliance with that policy.

- **Mojgan Khatoonabadi**:  (proposed in-court testimony):  Plaintiffs filed a Supplemental Witness list (Dkt. 134) regarding Professor Mojgan Khatoonabadi. Ms. Khatoonabadi is the current instructor of Mr. Payan's Spring 2018 Statistics 227 course.  Professor Khatoonabadi will testify about the educational material initially selected for use in her current Statistics class; her interactions with Roy Payan, OSS staff, and Kian Kaviani, the chair of the Math Department; as well as the accommodations she has offered to Mr. Payan to ensure he receives equally effective communication as sighted students in her class.

**D.   30 (b)(6) Witnesses**:

Plaintiffs will put in the deposition testimony of the following individuals:

- **John Al-Amin**:  Mr. Al-Amin is the Vice President of Administrative Services at LACC and has assumed responsibilities of the campus ADA coordinator since November 2016.  Mr. Al-Amin's deposition testimony will show that he has never received any training in compliance with the ADA or Rehabilitation Act.  His testimony also confirms that there is no person at LACC who has the title "Dean of Technology."  Mr. Al-Amin's deposition testimony will further show that LACC has failed to properly implement LACCD Administrative Regulations B-33 and B-34 and failed to conduct pre-purchase accessibility evaluations of educational technology. Mr. Al-Amin's deposition testimony also relates to the District-wide technology task force and demonstrates LACCD's understanding of its obligation to provide equal access to programs and services, and equally effective communication to students who are blind or have visual impairments.

- **Jorge Mata**:  Mr. Mata is the chief information officer for LACCD.  Mr. Mata's deposition testimony concerns his awareness of the Chancellor's Guidelines

and LACCD's Administrative Regulations, the inaccessibility of technologies used at LACCD (such as PeopleSoft Campus Solutions and Canvas), the lack of mandatory ADA trainings, and the lack of accessibility evaluations at LACCD.  Mr. Mata's deposition testimony will also show that there is no LACCD policy that requires LACCD to ensure that only textbooks that are also available in some form of ePub format are selected for use in classes.

- **Juan Mendoza**:  Mr. Mendoza is the manager of college information systems for LACCD and oversees the information technology system at LACC.  His deposition testimony will show that there is no person in the Dean of Educational Technology role, and no person has filled that role in approximately the past decade. Mr. Mendoza's deposition testimony will also concern the process of acquiring new technologies at LACC, the lack of accessibility testing for software and technologies used at LACC and LACCD, and the lack of plans to evaluate LACCD's educational software moving forward.

- **Daniel Wayne Walden**:  Mr. Walden is the Vice President of Academic Affairs at LACC.  His deposition testimony concerns his oversight of instructional programs at LACC, the use of the MyEtudes software at LACC, training on ADA compliance, and the absence of LACCD policies requiring that teachers with blind students make written classroom material accessible to blind students.

- **Ryan Kushner**:  Mr. Kushner is an OSS employee who works in the High Tech Center at LACC.  His deposition testimony will relate to the accessibility of LACCD's existing educational and non-educational technology and digital content, and specifically the District's failure to evaluate the accessibility of the technology used by students at LACCD.  It will also convey his interactions with Plaintiffs Mr. Payan and Ms. Mason, witnesses Sylvia Mitchell, Virginia Romero, Steve Cargill, and other blind students who have complained of difficulties they have faced when attempting to use MyMathLab, Etudes, Canvass, and PeopleSoft with the

screen-reading software JAWS.  His deposition testimony also concerns his contact with vendors, math staff, and LACCD/LACC administrative staff regarding complaints he had received regarding inaccessible software by blind students. Mr. Kushner's deposition testimony will show that he is not qualified to do a full accessibility check of the technology used at LACCD or LACC.

- **Robert Dominick**:  Mr. Dominick is the full-time academic counselor in OSS who authorizes students to receive accommodations and advises students with disabilities at LACC.  His deposition testimony concerns his interactions with Plaintiffs Mr. Payan and Ms. Mason, including the complaints he received from them regarding problems they encountered in classes and in obtaining documents in an accessible format.  He also testified about his interactions with other blind students at LACC and the inaccessibility of OSS's accommodation letters.

- **Barbara Vasquez**:  Ms. Vasquez is the librarian for LACC's library.  Ms. Vasquez's deposition testimony concerns the inaccessibility of the databases used by the LACC library and whether the accessibility of the databases were ever evaluated.  Ms. Vasquez's deposition testimony will show that any student complaints regarding accessibility are resolved on a case-by-case basis.

Dated:  February 15, 2018                    **BARBOSA GROUP**

Patricia Barbosa

**BROWN GOLDSTEIN & LEVY, LLP**

Sharon Krevor-Weisbaum
Joseph B. Espo
Jean M. Zachariasiewicz

*Attorneys for Plaintiffs*

1

<u>**CERTIFICATE OF SERVICE**</u>

2

    I hereby certify that on February 15, 2018 a copy of the foregoing Plaintiffs'

3

Trial Brief was delivered by the Court's e-filing system to:

4

    Richard E. Morton, Esquire

5

    Yvette Davis, Esquire
    Haight Brown & Bonesteel LLP

6

    2050 Main Street, Suite 600
    Irvine, California 92614

7

    Telephone: (714) 426-4600
    Facsimile: (714) 754-0826

8

    rmorton@hbblaw.com
    ydavis@hbblaw.com

9

    *Attorneys for Defendant Los Angeles*

10

    *Community College District*

11

12

                      Joseph B. Espo

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28