Patricia Barbosa (SBN 125685)
pbarbosa@barbosagrp.com
**BARBOSA GROUP**
8092 Warner Avenue
Huntington Beach, California 92647
Phone: (714) 465-9486

Sharon Krevor-Weisbaum
skw@browngold.com
Joseph B. Espo
jbe@browngold.com
Jean M. Zachariasiewicz
jmz@browngold.com
**BROWN, GOLDSTEIN & LEVY LLP**
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Phone: (410) 962-1030

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY PAYAN, PORTIA MASON, THE NATIONAL FEDERATION OF THE BLIND, INC., and THE NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> LOS ANGELES COMMUNITY COLLEGE DISTRICT, <br><br> Defendant. | Case No.: 2:17-cv-01697-SVW-SK <br> **Civil Rights** <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date: Sept. 17, 2018 <br> Time: 1:30 p.m. <br> Action filed: March 2, 2017 <br> Trial date: TBD |

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ........................................................................................... 1

FACTS .......................................................................................................... 1

          A.     John Gafford ........................................................... 1

          B.     Portia Mason .......................................................... 4

ARGUMENT .................................................................................................. 5

   I.     THE MOVING PLAINTIFFS ARE ENTITLED TO A
         PRELIMINARY INJUNCTION ...................................... 5

   II.    THE RELIEF TO BE ENTERED .................................... 8

          A.     The Court Should Order a Full Remedy .............................. 8

          B.     If a Full Remedy Is Not Ordered, Defendant Should Be
                 Ordered to Accommodate All Blind Students with Interim
                 Measures ........................................................... 9

CONCLUSION ............................................................................................. 11

# TABLE OF AUTHORITIES

## CASES

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
   643 F.3d 1165 (9th Cir.2010) ..............................................................6

*Enyart v. Nat'l Conference of Bar Examiners*,
   No. C 09–5191 CRB, 2010 WL 475361 (N.D. Calif., Feb. 4, 2010)...............7

*Enyart v. National Conf. of Bar Examiners*,
   630 F.3d 1153 (9th Cir. 2011) ................................................5, 6, 7

*Moeller v. Taco Bell Corp.*,
   816 F.Supp.2d 831 (N.D. Calif. 2011) ...........................................8

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
   251 F.3d 814 (9th Cir. 2001) ..........................................................6

*Winter v. Natural Res. Def. Council*,
   555 U.S. 7 (2008).............................................................5, 6

## STATUTES

29 U.S.C. § 794................................................................1, 5

42 U.S.C. § 12131...........................................................1, 5

*PAYAN, et al. v LACCD*, Case No. 2:17-cv-01697-SVW(SKx)
PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

ii

**INTRODUCTION**

Plaintiffs, two membership organizations and two individuals, filed this case against the Los Angeles Community College District ("LACCD") seeking a remedy for its failure to provide equal educational opportunities to blind students.  On February 12, 2018, the Court granted partial summary judgment, finding that Plaintiffs had established that LACCD had violated Title II of the ADA, 42 U.S.C. § 12131 et seq. ("ADA" or "Title II"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504").  Individual Plaintiff Portia Mason and the two organizational Plaintiffs, the National Federation of the Blind ("NFB") and the National Federation of the Blind of California ("NFBCA"), now bring this Motion for Preliminary Injunction seeking interim relief from Defendant's continued legal violations while also seeking wider, more permanent relief.

**FACTS**

**A.    John Gafford**

John Gafford is a member of the NFB and the NFBCA who has extremely low vision and is, therefore, blind.  Ex. A, Declaration of John Gafford ("Gafford Dec.") ¶ 2.  Mr. Gafford has a disability as that term is used in the ADA and Section 504.  *Id.* Mr. Gafford also is a student at Los Angeles City College, one of the constituent campuses of defendant LACCD.  *Id.* ¶ 2.

For reading textual or graphic materials Mr. Gafford uses: a CCTV, which provides enlarged type from source documents; a screen reader named Jobs Access with Speech ("JAWS"), which converts computer text to synthesized speech; or audio files that read text aloud and explain graphic material.  *Id.* ¶ 3.

Mr. Gafford enrolled at LACC for classes in the Fall of 2017 with the goal of transferring to a four-year university where he wants to pursue a degree that will enable him to work in the field of cyber security.  *Id.* ¶ 4.  Mr. Gafford registered with the LACC Office of Special Services ("OSS"), met with academic counselors, and

1   requested accommodations. *Id*. ¶¶ 4, 5. Mr. Gafford did not know what materials his

2   instructors would use or how they would present in-class materials at the time he

3   sought accommodations and was authorized for test-taking modifications and

4   formatting alternatives. *Id*. ¶ 4.

5      Among the classes Mr. Gafford registered for in Fall 2017 was Accounting

6   001, a course he needs to continue his education at the BA level. *Id*. ¶ 5.

7   Mr. Gafford received an accommodation letter from OSS to give to his instructor. *Id*.

8   ¶ 5 and Attachment 1 thereto.

9      Gafford had difficulty in his Accounting course from the time he first attended

10   class. The Accounting instructor, Elenita Ayuyao, used a "white board" in class to

11   present educational material but did not read out loud what she was writing, even

12   after Mr. Gafford asked her to do so. Ex. A, Gafford Dec. ¶ 8. She also used Power

13   Point presentations, which Mr. Gafford cannot see without use of his access

14   technology. *Id*. Use of that technology in class requires that he get copies of the

15   Power Point presentations in advance. *Id*. Mr. Gafford asked Ayuyao to provide him

16   advance copies of any Power Point presentations or other written work to be used in

17   class so he could convert it to an accessible format and follow along with other

18   students in class. *Id*. She refused to do so. *Id*.

19      At Mr. Gafford's first Accounting class, Ayuyao insisted on discussing

20   Mr. Gafford's requested accommodations in front of his classmates. *Id*. ¶ 7. Among

21   other comments made during that public conversation, Ayuyao asked Mr. Gafford

22   irrelevant and insulting questions, including why he was taking Accounting if he

23   could not see the whiteboard and if he understood that Accounting is difficult. *Id*.

24      Mr. Gafford informed his OSS counselors Robert Dominick and Everett Turner

25   about his difficulties in Accounting class. *Id*. ¶ 8. Eventually, Mr. Gafford stopped

26   attending class and, ultimately, the course was expunged from his record. *Id*. ¶¶ 9,

27   16. Because Mr. Gafford still needs to take accounting, he went to meet with another

28

*PAYAN, et al. v LACCD*, Case No. 2:17-cv-01697-SVW(SKx)
PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

2

professor about being in his section of the class, but that instructor also said he would not provide accommodations. *Id.* ¶¶ 10, 11.

Mr. Gafford also has had trouble getting accommodations in other classes. He enrolled in Music 101 with Instructor Kevin Kelly in Spring 2018. *Id.* ¶ 19. Mr. Gafford asked Kelly about enrolling in Music 200, but Kelly said that blind students could not take classes that required "sight reading" of music. *Id.* Mr. Gafford told Mr. Kelly that there is a program called "Dancing Dots" that scrolls musical notes across two monitors, allowing musicians or students with low vision to read music, and that he knew from Ryan Kushner, an OSS counselor, that OSS has access to the Dancing Dots program. *Id.* ¶ 19.

During the Summer 2018 session Mr. Gafford began taking Piano 101 but was told by instructor D.Q. Stahl that the class required sight reading and that he was unfamiliar with the Dancing Dots program and could not accommodate Mr. Gafford. *Id.* ¶ 20.

Mr. Gafford is enrolled in Piano, Guitar, and Percussion for Fall 2018 and will need accommodations for those music classes. *Id.* ¶ 22 and Attachment 2 thereto (Fall 2018 Schedule). Mr. Gafford will also need accommodations for Business Law, which he is scheduled to take in the Fall semester. Ex. A, Gafford Dec., ¶ 22.

On August 6, 2018, Mr. Gafford met with his OSS Counselor at LACC about accommodations for Fall 2018 classes. *Id.* ¶ 23. Neither his counselor, nor anyone else at OSS who was available, was knowledgeable about the Dancing Dots music program. *Id.* Consequently, Mr. Gafford does not know how, if at all, he will be accommodated in his music classes that use written music. *Id.*

At Mr. Gafford's meeting with the OSS counselor he received nearly identical accommodation letters for each class, none of which include the specific accommodations he asked for so that he could receive effective communication or equal access to the written or graphical materials provided to sighted students in a

*PAYAN, et al. v LACCD*, Case No. 2:17-cv-01697-SVW(SKx)
PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

3

timely and effective manner.  *Id.* ¶ 23 & Attachment 3 thereto.  The omitted accommodations were his request that instructors read aloud material written on the black or white board; that instructors provide him with any in-class handouts or assignments with enough time to have the documents formatted prior to using them in class; that instructors give him copies of any Power Point presentations prior to use in class so that he can format the presentation and follow along in class; and that instructors tell him what texts will be used early enough for Mr. Gafford to purchase them and have them formatted.  Ex. A, Gafford Dec., ¶ 23.  In his expert report and summary of trial testimony, Plaintiffs' expert Jon Gunderson noted that from his review of the record, nothing indicated that LACCD faculty are trained or encouraged to describe what they write on the board during class.  Dkt. 117, ¶ 21.  Mr. Gafford's experience confirms the validity of that finding and demonstrates that the deficiency continues.

Mr. Gafford still needs to take Accounting 001, but to do so he requires the accommodations that LACCD has denied him so far.

**B.    Portia Mason**

Ms. Mason is a named Plaintiff in this case, and her background and past experiences at LACCD are set out in Plaintiffs' Memorandum in Support of their Motion for Summary Judgment [Dkt. 48] and her proposed direct trial testimony (Dkt. 212).  Ms. Mason went to the LACC campus on August 7, 2018, to meet with a counselor at the OSS office so she could enroll for Fall 2018 classes but was unable to do so.  Ex. B, Declaration of Portia Mason, ¶¶ 4, 5.  Ms. Mason was unable to meet with a counselor because the walk-in appointments usually held on Tuesdays had been cancelled due to a large number of students waiting to see OSS counselors.  *Id.* ¶ 5.  She attempted to make an appointment for another date but was told there are no more appointments available until September, and that she would just have to go to the OSS office for a "walk-in" appointment on August 13, 2018.  *Id.* ¶ 6.  She intends

*PAYAN, et al. v LACCD*, Case No. 2:17-cv-01697-SVW(SKx)
PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

4

to do so.  *Id.* ¶ 7.  Ms. Mason needs to see an OSS counselor before Fall class registration because she must have an educational plan provided by OSS to bring to her Rehabilitation Counselor, who can then complete financial aid forms.  *Id.* ¶ 5.

When Ms. Mason returns to school she will need the same accommodations that LACCD has denied to her in the past, including accessible texts and in-class assignments in an alternate format in time for participation in class and instructors who read aloud the material they write on the board or show in Power Point presentations.  *Id.* ¶ 8.

## ARGUMENT

## I.    THE MOVING PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION

The standard for obtaining a preliminary injunction in the Ninth Circuit is well established:

> A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest.

*Enyart v. National Conf. of Bar Examiners*, 630 F.3d 1153, 1160 (9th Cir. 2011) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)).  The Organizational Plaintiffs and Ms. Mason clearly meet this standard.  First, the Court has found that for purposes of proving a violation of the law, Plaintiffs have prevailed. Ex. C, Declaration of Joseph B. Espo, ¶ 4 and Attachment 2 thereto, 30:12-15 ("Here is what the Court concludes at this juncture: The court is going to grant partial summary judgment for the plaintiffs on violation of the ADA Title II and Section 504 of the Rehabilitation Act.").  The Court went on to say that it had not yet considered the scope of what, if any, injunctive relief should be ordered and whether Defendant was deliberately indifferent, which is the threshold finding that must be made either on summary judgment or at trial for a jury to award damages.  *Id.*, 30:16-31:18.

*PAYAN, et al. v LACCD*, Case No. 2:17-cv-01697-SVW(SKx)
PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

5

Second, the organizational Plaintiffs have shown that their members will continue to suffer irreparable harm in the absence of relief.  Ex. A, Declaration of John Gafford.  Ms. Mason, too, will be laboring under LACCD's legal violations as she continues her classes.  Ex. B, Declaration of Portia Mason.  Simply stated, the evidence shows that Defendant's behavior has not changed since the Court made its February 2018 finding and that blind students still are not receiving the equal education to which they are entitled.

Comparison with *Enyart* teaches that the harm blind students suffer at LACCD is irreparable, as that term is used by the Supreme Court in *Winter*.  In *Enyart*, a blind law school graduate sought to take the Multistate Professional Responsibility Exam and the Multistate Bar Exam using a computer equipped with JAWS and ZoomText (a text enlargement program).  630 F.3d at 1156.  The National Conference of Bar Examiners refused to grant the accommodation.  *Id*.  The district court found that, in the absence of preliminary relief, the student would likely suffer irreparable harm in the form of (1) the loss of the chance to engage in normal life activity, *i.e.,* pursuing her chosen profession, and (2) professional stigma.[1]

*Enyart* teaches that irreparable harm is demonstrated in circumstances when an individual is denied access to a required examination, even if it could be taken at a later date.  Applied to the circumstances of this case, it is not sufficient that blind LACCD students currently suffering discrimination may be able to later take, or

---

[1]In *Enyart*, neither the district Court nor the Court of Appeals decided, as the plaintiff urged, that as a matter of law she faced irreparable injury from the fact of NCBE's violation of the ADA.  *Id*. at 1165. Although Plaintiffs meet the traditional test in equity for injunctive relief, it is not at all clear that they must prove so.  The Ninth Circuit has said: "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175–76 (9th Cir.2010) (quoting *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001)).

*PAYAN, et al. v LACCD*, Case No. 2:17-cv-01697-SVW(SKx)
PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

6

1  retake, classes in which LACCD currently denies them accommodations.  Instead,

2  they must be granted relief so they can obtain the education to which they are

3  entitled.  Therefore, Plaintiffs' members will suffer irreparable harm if injunctive

4  relief is not provided now.

5          The third element a plaintiff must show when seeking a preliminary injunction

6  is that the balance of equities tips in her favor.  *Enyart*, 630 F.3d at 1166-67.  In this

7  case, because Plaintiffs already succeeded on the merits, and because Defendant will

8  suffer no harm by being required to provide the services federal law already obligates

9  it to provide, the balance of equities clearly lies in Plaintiffs' favor.  Defendant can

10  make no showing that complying with the law, nor any of the specific relief sought

11  by Plaintiffs, will cause it irreparable harm.

12          Finally, the public interest will be served by entry of an injunction.  As the

13  Court of Appeals found in *Enyart*, "[t]he district court held that 'the public clearly

14  has an interest in the enforcement of its statutes,' and concluded that the public

15  interest weighed in favor of granting the injunctions."  *Id.* at 1167 (quoting *Enyart v.*

16  *Nat'l Conference of Bar Examiners*, No. C 09–5191 CRB, 2010 WL 475361, *8

17  (N.D. Calif., Feb. 4, 2010)).  In approving that holding, the Court of Appeals noted

18  that Congress's enactment of the ADA demonstrated its view that the public has an

19  interest in ensuring the eradication of discrimination on the basis of disability.  *Id.*  It

20  went on to note that the public interest is served by requiring entities to take steps to

21  "assure equality of opportunity for people with disabilities."  *Id.* (internal quotation

22  marks and citation omitted).

23

24

25

26

27

28

*PAYAN, et al. v LACCD*, Case No. 2:17-cv-01697-SVW(SKx)
PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

7

## II.   THE RELIEF TO BE ENTERED

### A.   The Court Should Order a Full Remedy

Plaintiffs believe nothing short of complete relief will end LACCD's systemic discrimination and fully remedy the harm that LACCD's blind students suffer.  A proposed Order that would provide complete relief for all blind students is attached. *See* Proposed Order A.  The comprehensive relief sought in the Order is fully supported by this Motion, its exhibits, and by the Summary Judgment record with the declarations of Plaintiffs' experts Jon Gunderson [Dkt. 48-32 through 48-34] and Peter Bossley [Dkt. 48-35 through 48-37], and the trial testimony summaries filed by Dr. Gunderson [Dkt. 117] and Mr. Bossley [Dkt. 114].  The effects of Defendant's failures on its students are set out in their proposed trial testimony, found at: Dkt. 122 (Portia Mason); Dkt. 119 (Roy Payan); Dkt. 126-1 (Virginia Romero); and Dkt. 123 (Wail Alihidir).  They also are set out in Plaintiffs' Statement of Undisputed Material Facts, filed with their Motion for Partial Summary Judgment, and in the Plaintiffs' deposition testimony filed as part of Plaintiffs' Motion for Partial Summary Judgment.  Dkt. 48-5 (Payan) and Dkt. 48-7 (Mason).  It also is notable that many of LACCD's acts and omissions are violations of its own regulations, as well as of federal law.

"The scope of injunctive relief is dictated by the extent of the violation established." *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 859 (N.D. Calif. 2011) (ADA Title III) internal citation and quotation omitted. As set out below, Plaintiffs' proposed Alternative Order A addresses the violations found at LACCD. A copy of Plaintiffs' proposed Order is attached as Alternative Order A.

The Order is designed to fully evaluate and remedy LACCD's systemic barriers to equal educational opportunity for blind students.  It addresses all aspects of LACCD's programs as they relate to blind students and contains benchmarks to track LACCD's progress towards equal opportunity.

*PAYAN, et al. v LACCD*, Case No. 2:17-cv-01697-SVW(SKx)
PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

8

1   The proposed Order provides for an evaluation of services provided by

2   LACCD's disability services offices as well as the creation of new policies and

3   procedures to insure equal access.  It addresses acquisition of new technology by

4   requiring that it be accessible and requires an audit of existing electronic information

5   technology so LACCD can learn what needs remediation and develop a corrective

6   action strategy.  In his report and trial summary, Mr. Bossley fully discussed the

7   many accessibility flaws found in LACCD's software.  *See, e.g.*, Dkt. 114, ¶¶ 28-76

8   (discussing PeopleSoft, Etudes, Pearson's My Math Lab, and the LACCD website).

9   Mr. Bossley went on to describe policies for insuring future accessibility.  *Id.*

10   Plaintiffs' Proposed Order A addresses training of faculty and staff, as well,

11   which is discussed by Dr. Gunderson.  Dkt. 117, ¶ 39.  He also reported on

12   inaccessibility of library materials and generally on the need for both remediation and

13   purchasing policies to assure that equal educational opportunities and materials for

14   blind students. Dkt. 117.

15   Plaintiffs' Proposed Order A would address the legal violations proven in this

16   case.

17   **B.      If a Full Remedy Is Not Ordered, Defendant Should Be Ordered to**

18   **Accommodate All Blind Students with Interim Measures**

19   If a full remedial Order is not entered at this time, the Court should enter a

20   preliminary injunction requiring LACCD to provide interim relief through measures

21   that will make classroom education accessible to blind students.  To do so, LACCD

22   should be ordered to provide to all blind students the following accommodations

23   upon request and to make affirmative inquiry into their need if not requested:

24   • All written and graphical material to be used in class be provided in

25   advance in an accessible format;

26   • All instructors be required to read out loud anything they write on a white

27   or blackboard;

28

*PAYAN, et al. v LACCD*, Case No. 2:17-cv-01697-SVW(SKx)
PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

9

- All textbooks be available in an accessible format at the same time they are offered to sighted students;
- All software programs required for course registration, retrieval of transcripts, financial aid applications, or other college purposes be made accessible to blind students;
- Equal access as sighted students have to remote access use of all LACCD technology;
- All teacher websites be made accessible for blind students, including those that are maintained separately from the LACCD servers, and if instructors are not willing to make their personal websites accessible that they be forbidden from posting instructional material on them;
- No inaccessible software or books that cannot be obtained in an accessible format be utilized in a class with a blind student;
- Provision and support of the Dancing Dots program for music students; and
- If any technology or educational materials are found to be inaccessible, students may hire a reader and will be reimbursed by LACCD for the cost.

A copy of Plaintiffs' proposed preliminary injunction is attached as Proposed Order B.  Such an interim Order would still leave a wide range of LACCD's illegal practices unremediated but would ameliorate the most egregious of the in-class barriers to equal education for blind students.  Still left to be addressed would be the other system-wide issues that are more fully covered in the full Proposed Order A.

1

## CONCLUSION

2      For the foregoing reasons Plaintiffs request that their Motion be granted.

3

4                                 Respectfully submitted,

5   Dated:  August 10, 2018        **BARBOSA GROUP**

6

7                                   Patricia Barbosa

8

9                                 **BROWN GOLDSTEIN & LEVY, LLP**

10

11                               Sharon Krevor-Weisbaum

12                               Joseph B. Espo
Jean M. Zachariasiewicz

13                               *Attorneys for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*PAYAN, et al. v LACCD*, Case No. 2:17-cv-01697-SVW(SKx)
PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

11