Patricia Barbosa (SBN 125685)
pbarbosa@barbosagrp.com
**BARBOSA GROUP**
8092 Warner Avenue
Huntington Beach, California 92647
Phone: (714) 465-9486

Sharon Krevor-Weisbaum
skw@browngold.com
Joseph B. Espo
jbe@browngold.com
Jean M. Zachariasiewicz
jmz@browngold.com
**BROWN, GOLDSTEIN & LEVY LLP**
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Phone: (410) 962-1030

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY PAYAN, PORTIA MASON, THE NATIONAL FEDERATION OF THE BLIND, INC., and THE NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, INC.,<br><br>                    Plaintiffs,<br><br>vs.<br><br>LOS ANGELES COMMUNITY COLLEGE DISTRICT,<br><br>                    Defendant. | Case No.: 2:17-cv-01697-SVW(SKx)<br>**Civil Rights**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION**<br><br>Trial date:  May 14, 2019 |

**INTRODUCTION**

Plaintiffs, two membership organizations and two individuals, filed this case against Los Angeles Community College District ("LACCD") seeking a remedy for its failure to provide equal educational opportunities to blind students. Consistent with the Court's partial grant of summary judgment and Ninth Circuit precedent, Plaintiffs now seek entry of a permanent injunction seeking relief from LACCD's discrimination in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

**FACTS & PROCEDURAL HISTORY**

The underlying facts of this case have been thoroughly recounted multiple times and thus will not be repeated here.

On April 23, 2019, the Court granted in part Plaintiffs' Second Renewed Motion for Partial Summary Judgment as to Liability.  Dkt. 183.  As relevant here, the Court held that LACCD "violated Title II [of the ADA] and Section 504 [of the Rehabilitation Act] as a matter of law by failing to provide [individual Plaintiff Roy] Payan with meaningful access to his course materials in the math classes in which Payan enrolled, either through the MyMathLab software program or via equivalent accessible assignments from a math textbook in a timely manner."[1] *Id.* at 25.

_____

[1] The Court also found that LACCD "discriminated against blind students as a matter of law by failing to provide blind students with meaningful access to LACC websites and LACC library databases," but found that Plaintiffs had not conclusively identified reasonable modifications at the summary judgment stage. *See* Dkt. 183 at 25.  Accordingly, at trial, Plaintiffs will present evidence regarding reasonable modifications to cure this discrimination.  The Court separately recognized undisputed evidence that LACCD failed to provide accessible versions of in-class materials, such as handouts, to Plaintiffs, but ultimately could not conclude at this

*PAYAN, et al. v. LACCD*, Case No.:  2:17-cv-01697 SVW(SKx)
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

2

In reaching this conclusion, the Court first analyzed the discrimination by LACCD against Mr. Payan before discussing the reasonable modifications that would remedy that discrimination.  With respect to the former, the Court found that the "undisputed record at the summary judgment stage reveals that Payan was unable to access the benefits of the MyMathLab program." *Id.* at 10.  The Court further and relatedly found that LACCD had failed to provide an accessible version of the math textbook to Mr. Payan in a timely manner, leading him to fall behind in his course. *Id.* at 10–11.  These failures constituted discrimination, because, as the Court explained, "[t]here is no question that a student without timely access to the textbook and homework assignments for a course is denied meaningful access to the benefits of that course." *Id.* at 11.  Mr. Payan's sighted peers, by comparison, did not encounter the same difficulties.  *Id.*

The Court expressly rejected LACCD's arguments to the contrary.  First, it found that a single, prior accessibility test did not somehow insulate LACCD in perpetuity from any liability. *Id.* at 12.  Second, the Court found unreasonable LACCD's attempt to place the burden on Mr. Payan (and other blind students) to initiate a request for an accommodation each time he (and they) sought accessible course materials.  As the Court explained, "requiring blind students such as Payan to seek affirmative assistance for their disabilities through repeated conversion

stage whether the lack of access deprived Plaintiffs of meaningfulness access. *Id.* at 7.  Plaintiffs maintain that this lack of access to materials that remained "open and equally accessible by others" constitutes a denial of meaningful access, *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996), and violated the effective communication regulation, 28 C.F.R. § 35.160(a)(1), which independently meets the meaningful access standard, *see KM ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013).  In any event, Plaintiffs will present additional evidence as to this issue at trial.

*PAYAN, et al. v. LACCD*, Case No.:  2:17-cv-01697 SVW(SKx)
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

3

1  requests and trips to OSS [Office of Student Services] is itself a disparate burden

2  imposed upon blind students, rendering their educational experience for a

3  particular class inferior to those of their peers." *Id.* at 11.  The Court characterized

4  LACCD's process of converting course materials upon request by students with

5  disabilities as "ad hoc" and found it unlawful. *Id.* at 12.

6        Following its finding of discrimination, the Court identified a reasonable

7  modification that would remedy the discrimination against Mr. Payan: requiring

8  LACCD to enforce the binding portions of the already-adopted Alternate Media

9  Production Policy ("Media Policy"). *Id.* at 16.  The Media Policy, among other

10  things, provides that LACCD must ensure that "[a]ll instructional resources or

11  materials purchased or leased from a third-party provider . . . [are] accessible to

12  students with disabilities. Dkt. 48-21 at 1.  The Media Policy also requires an

13  accessibility review of "instructional resources or materials used in each course"

14  every six years. *Id.*  "In the event that a student with a disability enrolls in course

15  before this review is completed, the college will be responsible for acting in a

16  timely manner to make instructional materials or resources used in the course

17  accessible, unless doing so would fundamentally alter the nature of the

18  instructional activity[.]" *Id.*  Although LACCD argued that it would not be

19  feasible to have accessible versions of textbooks and course materials available, it

20  did not provide any evidence to that effect.  Dkt. 183 at 17.  The Court found that

21  LACCD had "ample notice" of blind students' needs for accessible materials and

22  that it was "ignor[ing] its affirmative obligations under Title II and Section 504 to

23  ensure in the first instance that all services and materials offered to students with

24  disabilities are provided in an accessible format at the same time as all other

25  students." *Id.* at 18.

26

*PAYAN, et al. v. LACCD*, Case No.:  2:17-cv-01697 SVW(SKx)
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

4

At the conclusion of its Order, the Court instructed that Plaintiffs could file a motion for a permanent injunction consistent with the liability finding discussed above. *Id.* at 25.

## **ARGUMENT**

## I.   **PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION**

The Court's finding of liability entitles Plaintiffs to injunctive relief, because, under Ninth Circuit precedent, "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175–76 (9th Cir. 2010).  Because the ADA expressly provides for injunctive relief, *see* 42 U.S.C. § 12188(a)(1), the Court need not consider the remaining factors for injunctive relief, *Antoninetti*, 643 F.3d at 1175–76.

In recognition of this principle, this Court and several others in this District have ordered injunctive relief after finding violations (or likely violations) of the ADA without consideration of the traditional injunctive relief factors. *See Longer v. Deguzman*, Case No. 2:15-cv-09493-SVW-JEM, 2016 WL4500783, at *5 (C.D. Cal. July 28, 2015) (relying on *Antoninetti* in ordering injunctive relief after finding violation of ADA and without consideration of remaining injunctive relief factors); *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1015 (C.D. Cal. 2014) (same); *James Rutherford v. Burger King # 8976*, Case No. ED CV18-00621 JAK (SHKx), 2018 WL 6131173, at *6 (C.D. Cal. July 24, 2018) (same and noting that "[i]njunctive relief is routinely granted with respect to violations of the ADA");

*PAYAN, et al. cv. LACCD*, Case No.:  2:17-cv-01697 SVW(SKx)
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

5

*Donna Dugo v. Jeronimo, LLC*, Case No. SA CV 17-1772-DOC (DFMx), 2018 WL 5877275, at *6 (C.D. Cal. June 4, 2018) (same).

To the extent the traditional test applies, Plaintiffs are still entitled to a permanent injunction. A plaintiff seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). As the Supreme Court has explained, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod'n Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

As to the first two factors, LACCD's violations of Title II and Section 504 in the context of Mr. Payan's math classes caused him irreparable injury. The Ninth Circuit has long "held that where a defendant has violated a civil rights statute, [it] will presume that the plaintiff has suffered irreparable injury[.]" *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 826 (9th Cir. 2001). Furthermore, it explored irreparable injury in *Enyart v. National Conference of Bar Examiners,* 630 F.3d 1153 (9th Cir. 2011), a case where a blind law school graduate sought to take the Multistate Professional Responsibility Exam and the Multistate Bar Exam using a computer equipped with JAWS and ZoomText (a text enlargement program). *Id.* at 1156. The National Conference of Bar Examiners refused to grant the accommodation. *Id.* The Ninth Circuit affirmed the district

*PAYAN, et al. v. LACCD*, Case No.: 2:17-cv-01697 SVW(SKx)
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

6

court's finding that, in the absence of injunctive relief, the student would suffer irreparable harm in the form of the loss of the chance to engage in a normal life activity, in her case, pursuing her chosen profession.

*Enyart* teaches that irreparable harm is present in circumstances when an individual is denied access to a required examination, even if it could be taken at a later date. Applied to the Court's liability finding here, it is not sufficient that blind students who are suffering discrimination may be able to later access textbooks and other course materials. Instead, they require and deserve the same materials at the same time as sighted students, so that they can obtain the full educational experience to which they are entitled. The individual Plaintiffs and other blind students will suffer irreparable harm if injunctive relief is not provided.

The third element a plaintiff must show when seeking a permanent injunction is that the balance of equities tips in her favor. *Id.* at 1166–67. Here, because Plaintiffs already succeeded on the merits, and because Defendant will suffer no harm by being required to comply with federal law, the balance of equities lies in Plaintiffs' favor.

Lastly, the public interest will be served by entry of an injunction. As the Ninth Circuit explained in *Enyart*, "[t]he district court held that 'the public clearly has an interest in the enforcement of its statutes,' and concluded that the public interest weighed in favor of granting the injunctions." *Id.* at 1167 (quoting *Enyart v. Nat'l Conference of Bar Examiners*, No. C 09–5191 CRB, 2010 WL 475361, at *8 (N.D. Cal. Feb. 4, 2010)). In affirming the district court, the Court of Appeals noted that Congress's enactment of the ADA demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disability. *Id.* It went on to note that the public interest is served by requiring

*PAYAN, et al. v. LACCD*, Case No.: 2:17-cv-01697 SVW(SKx)
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

7

1    entities to take steps to "assure equality of opportunity for people with disabilities."

2    *Id.* (internal quotation marks and citation omitted).

3         Because the Court has found a violation of the ADA, or alternatively

4    because Plaintiffs have satisfied the four-part test outlined above, a permanent

5    injunction is appropriate here.

6    **II.    THE RELIEF TO BE ENTERED**

7         **A. Legal Standard**

8         Since Plaintiffs are entitled to a permanent injunction, the next inquiry is the

9    scope of that relief.  The general rule is that the "scope of injunctive relief is

10   dictated by the extent of the violation established."  *Clement v. California Dep't of*

11   *Corrs.*, 364 F.3d 1148, 1153 (9th Cir. 2004) (quoting *Armstrong v. Davis*, 275 F.3d

12   849, 870 (9th Cir. 2001)).  While an injunction must be tailored to the harm

13   established, as the Supreme Court and Ninth Circuit have explained, it "should not

14   be 'so narrow as to invite easy evasion.'"  *Skydive Arizona, Inc. v. Quattrocchi*,

15   673 F.3d 1105, 1116 (9th Cir. 2012) (quoting *McComb v. Jacksonville Paper Co.*,

16   336 U.S. 187, 193 (1949)).

17        In the context of ADA cases, Ninth Circuit law is clear that a plaintiff "*need*

18   *not have personally encountered all the barriers* . . . in order to seek an injunction

19   to remove those barriers."  *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133,

20   1138 (9th Cir. 2002) (emphasis added).  The Ninth Circuit's decision in *Pickern*,

21   which expressly adopts the Eighth Circuit's holding in *Steger v. Franco*, 228 F.3d

22   889 (8th Cir. 2000), explains this principle in detail.  *Steger* concerns a blind

23   plaintiff who entered a defendant's building on one occasion and was unable to

24   access the bathroom due to violations of the ADA.  293 F.3d at 1138.  As the Ninth

25   Circuit wrote, the "*Steger* court rejected the defendant's argument that the blind

26

27

28

plaintiff could challenge the ADA violation only as to the restroom he had attempted to access, stating that such a 'narrow construction' of the ADA would be 'not only . . . inefficient, but impractical.'" *Pickern*, 293 F.3d at 1138 (quoting *Steger*, 228 F.3d at 894). *Steger* further states that adopting a rule that "numerous blind plaintiffs, each injured by a different barrier, would have to seek injunctive relief as to the particular barrier" would lead to "piecemeal compliance." *Steger*, 228 F.3d at 894; *see also Clement v. California Dep't of Corrections*, 364 F.3d 1148, 1153 (9th Cir. 2004) (affirming a system-wide injunction because "it would inefficient and unnecessary for prisoners in each California state prison to separately challenge the same [] policy"). Based on this reasoning, the Ninth Circuit adopted the rule from *Steger*. *Pickern*, 293 F.3d at 1138.

## B. Requested Relief

At the outset, Plaintiffs request that the Court enter an injunction that reflects the reasonable modification it identified in its Order—that is, LACCD must enforce the mandatory portions of the Alternate Media Production Policy.[2] *See* Dkt. 183 at 16 ("By virtue of the fact that LACCD already adopted the Media Policy, requiring LACCD to enforce it fully is certainly a reasonable modification to LACCD's current practices[.]"). The Court, as noted earlier, identified several binding aspects of the Media Policy and stated that "strict adherence to these aspects of the Media Policy would prevent the discrimination experienced by Payan in his math classes and would ensure that blind students continue to receive equal opportunity in their courses and access to course materials." Dkt. 183 at 17.

---

[2] Of note, the Alternate Media Production Policy is based explicitly on the Guidelines for Producing Instructional and Other Printed Materials in Alternate Media for Persons with Disabilities, which were issued in 2000 by the Chancellor's Office of the California Community Colleges. *See* Dkt. 48-21 at 2.

*PAYAN, et al. v. LACCD*, Case No.: 2:17-cv-01697 SVW(SKx)
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

9

Among the provisions identified by the Court were the requirements that LACCD procure only fully accessible third-party software; act "in a timely manner to make instructional materials or resources used in the course accessible"; and conduct a mandatory review of course curriculum as part of the accreditation process. *Id.* at 15–16.  Plaintiffs have incorporated the relevant, binding portions of the Media Policy into the proposed injunction, attached as Exhibit A.  In recognition of the distinction the Court drew between binding and non-binding aspects of the Media Policy, Plaintiffs have not included the latter in the proposed injunction.

Critically, and in light of the Ninth Circuit precedent outlined above, LACCD should be ordered to comply with the relevant portions of the Media Policy for all classes in which blind students are enrolled—not just for math courses.  To start, the Media Policy as written does not merely apply to math courses but rather applies to all courses; it would therefore be anomalous to require enforcement of the Policy solely to the former.  What is more, as the Court recognized, LACCD's "ad hoc" process of converting course materials only upon a blind student's request is discriminatory as a matter of law.  Dkt. 183 at 12.  Because that ad hoc process is not limited just to math textbooks and materials, the ordered relief should not be so limited, either.

Additionally, as explained, the Ninth Circuit has held that a plaintiff "need not have personally encountered all the barriers . . . in order to seek an injunction to remove those barriers."  *Pickern*, 293 F.3d at 1138.  That logic applies here: a plaintiff need not personally encounter every inaccessible textbook or homework assignment to seek an injunction to cure that inaccessibility.  If the injunction were solely limited to math classes, it would produce the absurd result of requiring a blind student to bring a new lawsuit each and every time she enrolled in a class and

*PAYAN, et al. v. LACCD*, Case No.:  2:17-cv-01697 SVW(SKx)
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

10

faced the same accessibility barrier.  Mandating such an approach would be, as the Ninth Circuit explained, to adopt a "narrow construction" of the ADA that would be "inefficient" and "impractical," *Pickern*, 293 F.3d at 1138, and would lead to "piecemeal compliance," *Steger*, 228 F.3d at 894.  *See also Clement*, 364 F.3d at 1153.

Lastly, to ensure full compliance with the Media Policy and thus ensure that blind students can access instructional technology and materials at the same time as sighted students, Plaintiffs seek the inclusion of enforcement measures in the permanent injunction.  Given that LACCD has failed in the past to follow the Media Policy, limited monitoring of the discrete provisions of the injunction is necessary and will allow Plaintiffs and the Court to enforce the terms of the injunction and adjudicate any violations, respectively.  These measures will create an injunction that is not so narrow as to "invite easy evasion" by LACCD.  *Skydive Arizona*, 673 F.3d at 1116 (internal quotation marks and citation omitted).

Plaintiffs recognize the Court's instruction that the proposed injunctive relief should be tailored to the findings of liability.  For that reason, Plaintiffs do not seek, at this time, any remedies for many of the other violations asserted against LACCD, such as those related to the LACC website and library databases, or request broader relief, such as training of all employees.  Instead, Plaintiffs intend to present evidence as to these violations, available reasonable modifications, and the need for accompanying injunctive relief at trial.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant their motion for permanent injunction.

*PAYAN, et al. v. LACCD*, Case No.:  2:17-cv-01697 SVW(SKx)
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

11

Respectfully submitted,

Dated:  May 14, 2019

**BARBOSA GROUP**

_P Barbosa_

Patricia Barbosa

**BROWN GOLDSTEIN & LEVY, LLP**

_Noreen B. Emmar_

Sharon Krevor-Weisbaum
Joseph B. Espo
Jean M. Zachariasiewicz

*Attorneys for Plaintiffs*

*PAYAN, et al. v. LACCD*, Case No.:  2:17-cv-01697 SVW(SKx)
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

12