Richard E. Morton (Bar No. 54188)
rmorton@hbblaw.com
Bruce L. Cleeland (Bar No. 100524)
bcleeland@hbblaw.com
Yvette Davis (Bar No. 165777)
ydavis@hbblaw.com
HAIGHT BROWN & BONESTEEL LLP
2050 Main Street, Suite 600
Irvine, California 92614
Telephone: 714.426.4600
Facsimile: 714.754.0826

Attorneys for Defendant
LOS ANGELES COMMUNITY COLLEGE DISTRICT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ROY PAYAN; PORTIA MASON; THE NATIONAL FEDERATION; OF THE BLIND, INC.; and THE NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, INC.,

Plaintiffs,

v.

LOS ANGELES COMMUNITY COLLEGE DISTRICT, and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:17-cv-01697 SVW(SKx)
**[Civil Rights]**

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION**

*[concurrently filed with Declaration of Richard Morton]*

Haight

# TABLE OF CONTENTS

Page


I. INTRODUCTION AND SUMMARY OF ARGUMENTS .......... 1

II. SUMMARY OF PERTINENT FACTS .......... 1

A. Finding of Discrimination Regarding MyMathLab as to Plaintiff Payan .......... 1

B. Finding of Discrimination Regarding PeopleSoft and LACC's Website .......... 2

C. Finding of Discrimination Regarding LACC Library Databases .......... 2

D. Finding of Discrimination Regarding Mason's Inability to Access Handbook in Professor Daniel's Abnormal Psychology Course .......... 2

E. Plaintiffs' Experts Failed to Demonstrate That Any of the *Now* Requested Injunctive Relief Constitutes Reasonable Modifications or Accommodations .......... 3

F. Plaintiffs' Assert Claims Against Only LACC .......... 4

III. ARGUMENT .......... 4

A. Plaintiffs' Proposed Order is Procedurally Defective Pursuant to F.R.C.P. Rule 65(d) .......... 4

B. Plaintiffs Are Not Entitled to the Proposed Injunction under 42 U.S.C.A. section 12133 .......... 7

1. Reasonable Modification for MyMathLab Issue .......... 8

2. Reasonable Modification for PeopleSoft and LACC Website .......... 9

3. Reasonable Modification for LACC Library Databases .......... 11

4. Reasonable Modifications for Mason's Inability to Access Handbook in Professor Daniel's Abnormal Psychology Course .......... 12

C. Prior Rulings of This Court Preclude the Entry of the Broad Permanent Injunction Sought by Plaintiffs .......... 12

IV. CONCLUSION .......... 16


Haight

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alexander v. Choate*, 469 U.S. 287, 301 (1985) ........ 8

*Aluminum Workers Intern. Union, AFL-CIO, Local Union No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437 (6th Cir. 1982) ........ 5

*Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624 (7th Cir. 2003) ........ 5

*Dufresne v. Veneman*, 114 F3d. 952, 954 (9th Cir. 1997) ........ 8

*Hearne v. Smiley*, 378 U.S. 563 ........ 7

*Hearne v. Smylie*, 225 F.Supp. 645 (D. Idaho 1964) ........ 7

*Huezo v. Los Angeles Community College District* ........ 12, 13, 14

*National Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. National Spiritual Assembly of Baha'is of U.S., Inc.*, 547 F.Supp.2d 879 (N.D. Ill. 2008) ........ 5

*Penn Central Co. v. Buckley & Co.*, 293 F.Supp. 653 (D.N.J. 1968) ........ 7

*Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002) ........ 14, 15

*Refrigeration Engineering Corp. v. Frick Co.*, 370 F.Supp. 702 (W.D. Tx 1974) ........ 7

*Robinson v. Coopwood*, 292 F.Supp. 926 (N.D. Miss. 1968) ........ 5

*Servisco v. Morreale*, 312 F.Supp. 103 (E.D. La. 1970) ........ 5

## STATUTES

29 U.S.C.A. section 794a ........ 8

Americans with Disabilities Act. 42 U.S.CA. section 12133 ........ 8

## I. INTRODUCTION AND SUMMARY OF ARGUMENTS

Plaintiffs' requested permanent injunction should be denied outright as Plaintiffs are asking the Court for injunctive relief that goes well beyond the limited findings of discrimination contained within the Court's orders of April 23, 2019 and May 21, 2019. The *only* evidence plaintiffs offered during the summary adjudication phase and at trial pertained to alleged discrimination that occurred at the Los Angeles City College. Notwithstanding, Plaintiffs now ask the Court to enjoin the eight *other* colleges within the Los Angeles Community College District despite the fact that no evidence exists in the record of any discriminatory acts befalling students at the eight other colleges.

Injunctive relief must be narrowly tailored to remedy the specific harms demonstrated to exist. Accordingly, the Court should outright deny Plaintiff's motion and instead order narrow and limited injunction that is calculated to remedy only the specific discriminatory conduct the Court concluded existed at Los Angeles City College.

## II. SUMMARY OF PERTINENT FACTS

### A. Finding of Discrimination Regarding MyMathLab as to Plaintiff Payan

The first finding of discrimination was entered on April 23, 2019, when the Court concluded "summary judgment is warranted in favor of plaintiffs on the issue of LACCD's discrimination against Payan on account of Payan's disability in Payan's math courses." (See ECF Docket No. 183 at p. 12, ¶ 2.) The Court further noted "the Court GRANTS summary judgment for Plaintiffs regarding LACCD's failure to provide Payan with access to MyMathLab or, as an alternative, timely access to textbook assignments in an accessible format." (See ECF Docket No. 183 at p. 18, ¶ 2.) The Court's determination is strictly limited to a finding that *Payan* was discriminated against -- not Mason, not other sight-impaired students of the

LACC, and certainly not students of the other eight colleges within the Los Angeles Community College District.

**B. Finding of Discrimination Regarding PeopleSoft and LACC's Website**

In its April 23, 2019 order, the Court also determined that "Plaintiffs have established as a matter of law that LACCD discriminated against blind students by denying blind students meaningful access to important enrollment management information on the LACC website." (See ECF Docket No. 183 at p. 20, ¶ 3.) The Court's determination is very clearly limited to the "LACC website" – not the websites of the other eight schools within the Los Angeles Community College District, and not with respect to the Los Angeles Community College District's own website.

**C. Finding of Discrimination Regarding LACC Library Databases**

The Court's April 23, 2019 order also concluded that "LACCD discriminated against blind students as a matter of law by failing to ensure that the LACC library databases were equally accessible to blind students through JAWS as they were to sighted students." (See ECF Docket No. 183 at p. 24, ¶ 1.) Again, the Court did *not* conclude that library databases at any of the other eight schools within the Los Angeles Community College District were discriminatory as to sight-impaired students. No such evidence was even proffered by the Plaintiffs at the summary judgment stage, or during trial. The only evidence Plaintiffs offered were with regard to their limited experiences at the LACC library.

**D. Finding of Discrimination Regarding Mason's Inability to Access Handbook in Professor Daniel's Abnormal Psychology Course**

In its May 21, 2019 Order, the Court further found "Plaintiffs have satisfied their burden to establish by a preponderance of the evidence that Mason was denied meaningful access to the handbook assigned in Professor Daniel's Abnormal Psychology course." (See ECF Docket No. 267 at p. 16, lines 26-28.) Again, the

finding was limited to Mason's experience in Professor Daniel's class, at the Los Angeles City College. There was no finding that any other students (at either LACC or any of the eight other colleges in the district) suffered the purported discrimination, or that other students were likely to suffer the discrimination in the future.

### E. Plaintiffs' Experts Failed to Demonstrate That Any of the *Now* Requested Injunctive Relief Constitutes Reasonable Modifications or Accommodations

Plaintiffs' expert Jon Gunderson formed no opinions about any of the purported discrimination faced by Porta Mason. (See Transcript of Trial, Day One, dated May 14, 2019, at 91:19 – 23, attached as Exhibit "A" to the Declaration of Richard Morton.) Moreover, Mr. Gunderson did not form any opinions about the purported discrimination faced by Mr. Payan other than in his math courses. (*Id.* at 91:24 – 92:1.)

Plaintiffs' expert, Peter Bossley was only asked to test Etudes, PeopleSoft, the LACC website, the LACCD website, and MyMathLab. (*Id.* at 95:11 – 23.) He offered no opinions about library database accessibility or modifications to same. (See generally Transcript of Trial, Day One, dated May 14, 2019, between 92:12 – 108:25.)

As to PeopleSoft, Mr. Bossley concluded only that "the developers of that software have not coded that software to provide accessibility for students with disabilities and in particular users that rely on screen readers." (*Id.* at 95:24 – 96:9.)

Bossley testified that the websites had "similar issues" to the PeopleSoft software, noting that graphs and tables were not accessible to sight-impaired individuals, and that headings and bookmarks were also inaccessible. (*Id.* at 97:8 – 99:2.) He testified that the websites "[c]ould certainly be revised to be accessible in a much more straightforward fashion than a piece of software could be revised." (*Id.* at 104:24 – 105:6.)

Neither Bossley nor Gunderson offered evidence of the myriad forms of injunctive relief now sought in Plaintiff's proposed permanent injunction. (See generally Transcript of Trial, Day One, dated May 14, 2019, at pp. 68-91 and 92-108.)

**F. Plaintiffs' Assert Claims Against Only LACC**

LACCD operates nine community colleges in the County of Los Angeles, including LACC. (See Defendant's Response to Plaintiffs' Separate Statement of Undisputed Material Facts ("SSMF") No. 1 within ECF Document Number 54-1.) However, Plaintiffs only asserted claims about accessibility issues they purportedly faced at LACC as opposed to any other community college within LACCD. (See SSMF No. 5, 6, 14-17, 22-26, 28-34, 37-38, 54-78, 80-96 within ECF Document Number 54-1.)

## III. ARGUMENT

**A. Plaintiffs' Proposed Order is Procedurally Defective Pursuant to F.R.C.P. Rule 65(d)**

Plaintiffs' Motion for a permanent Injunction cannot be granted (at least on the proposed order submitted) because the proposed order fails to comply with Federal Rules of Civil Procedure, Rule 65(d), which provides:

> (d) Contents and Scope of Every Injunction and Restraining Order.
>
> (1) Contents. Every order granting an injunction and every restraining order must:
>
> (A) state the reasons why it issued;
>
> (B) state its terms specifically; and
>
> (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.
>
> (2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise:
>
> (A) the parties;
>
> (B) the parties' officers, agents, servants, employees, and attorneys; and
>
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

The Court has an independent duty to assure that injunctions it issues are appropriate in scope. *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624 (7th Cir. 2003). Because equitable relief is an extraordinary remedy to be cautiously granted, scope of relief should be *strictly tailored* to accomplish only that which the situation specifically requires, and which cannot be attained through a legal remedy. *Aluminum Workers Intern. Union, AFL-CIO, Local Union No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437 (6th Cir. 1982). An injunction decree should conform to the requirements of the case, ***and should give relief only from the wrong committed, but not be so broad as to inflict an unwarranted injury on defendant.*** *Servisco v. Morreale*, 312 F.Supp. 103 (E.D. La. 1970) The form and scope of restraining orders must be such as to apprise the party enjoined of the specific course of conduct which is prohibited, and must avoid undue restraint on parties to the action, or others affected by the restraint. *Robinson v. Coopwood*, 292 F.Supp. 926 (N.D. Miss. 1968).

Critically, an injunction against a non-human entity binds that entity's acting officers, even if not personally named in the injunction, because such an entity (as an incorporeal abstraction) acts only through its agents. *National Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. National Spiritual Assembly of Baha'is of U.S., Inc.*, 547 F.Supp.2d 879 (N.D. Ill. 2008). This similarly means that any injunction entered against the LACCD, must be so specific and clear that LACCD's agents can perform the specific acts called for in the injunction order, and understand that doing such act brings them in compliance with the injunction. The Plaintiffs' proposed order falls well short of this requirement.

***First***, the Court's April 23, 2019 and May 21, 2019 Orders pertained specifically to Plaintiffs' experiences at the Los Angeles City College – yet Plaintiffs' proposed injunction would impose requirements upon (and affecting) eight other colleges falling within the Los Angeles Community College District without any evidentiary support. Plaintiffs are unable to point to any evidence in the

record on summary judgment or trial which would entitle them to injunctive relief affecting the eight colleges within the Los Angeles Community College District other than the Los Angeles City College.

***Second*** the proposed order is so vague and ambiguous that a reasonable agent of the LACCD could not possibly know if he or she was complying with the injunction or subjecting himself or herself to a contempt order. For example, paragraph 10 of proposed injunctive alternative "A" requires the LACCD to:

> revise its existing policies and procedures or adopt and implement policies and procedures that:
>
> a. Ensure no qualified individual with a disability shall be, by reason of such disability, excluded from participation in or be denied the benefits of the services, programs, or activities of LACCD, or be subjected to discrimination by LACCD. Such policies and procedures shall specifically refer to the requirement of deploying accessible technology and course content in a post-secondary setting, as more specifically outlined in Paragraphs 11-22 of this Decree.
>
> b. Ensure that LACCD's Offices of Disability Support Services at each of the nine campuses act as liaisons between students and faculty. To this end the policy shall require the Offices of Disability Support Services to take an active role in working with all persons within LACCD, including but not limited to all instructors, to promptly and effectively resolve issues involved in providing class instruction to students. c. Ensure that LACCD's Offices of Disability Support Services serve as the main point of contact on issues related to ADA compliance for all instructors at LACCD. If a student makes a disability-related complaint to an instructor, that instructor must notify the campus Office of Disability Support Services immediately so that the Office of Disability Support Services can ensure appropriate resolution of the complaint and, where appropriate, be involved in facilitating such resolution.
>
> d. Ensure that LACCD's recognized modifications for students (those granted to individual students through "Accommodation Letters") are timely implemented under the supervision of LACCD's Offices of Disability Support Services. The decision to request accommodations from an instructor shall remain solely the decision of individual students.
>
> e. Ensure that LACCD's Offices of Disability Support Services timely respond to reasonable requests for

> assistance by students with disabilities when such requests were not anticipated, and therefore perhaps not enumerated, in LACCD-prepared "Accommodation Letters."
>
> f. Ensure that, consistent with the requirements of the ADA, opportunities afforded generally to LACCD students are equally afforded to students with disabilities. For instance, when LACCD allows students in a course to take exams outside of the operating hours of LACCD administrative offices, LACCD shall ensure that blind students are afforded that same opportunity.
>
> ....

***Third***, Plaintiffs proposed injunction would require years (if not *decades*) of direct judicial oversight of the Order – specifically because of the ambiguities created by the Order, and the resulting inability of LACCD officials to definitively perform an act and *know* whether they performed the specific act in sufficient compliance with the Order until years later (i.e. when disabled students either are, *or are not*, "ensured" their rights by the regulations contemplated for adoption and dissemination.)

***Fourth***, court enforcement of the proposed orders will be nearly impossible due to the difficulties created by the timelines and requirements. Difficulty of enforcement is, *in itself*, often a sufficient reason for denying injunctive relief. *Refrigeration Engineering Corp. v. Frick Co.*, 370 F.Supp. 702 (W.D. Tx 1974); *Penn Central Co. v. Buckley & Co.*, 293 F.Supp. 653 (D.N.J. 1968) [Court of equity will not grant injunctive relief unless it is shown that, if injunction is granted, court may enforce mandate]; *Hearne v. Smylie*, 225 F.Supp. 645 (D. Idaho 1964), reversed on other grounds in *Hearne v. Smiley*, 378 U.S. 563 (Court of equity will not issue unenforceable decree of injunction, mandatory or prohibitory).

### B. Plaintiffs Are Not Entitled to the Proposed Injunction under 42 U.S.C.A. section 12133

Plaintiffs are not entitled to the proposed injunctive relief they seek in this circumstance because the 20-page manifesto they have submitted as a "proposed

Haight

order" fails to comply with even the most basic principles of injunctive relief under the Americans with Disabilities Act. 42 U.S.CA. section 12133 states "[t]he remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." 29 U.S.C.A. section 794a, in turn, indicates:

> [t]he remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C 2000e-5(f) through (k)) (and the application of section 706(e)(3) (42 U.S.C. 2000e-5(e)(3)) to claims of discrimination in compensation), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.

The Courts have interpreted the ADA's remedies provision as limiting available injunctive relief to "reasonable accommodations." *Dufresne v. Veneman*, 114 F3d. 952, 954 (9th Cir. 1997) citing *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

Here, the Court already reached conclusions of law about what the reasonable accommodations were as to each item of purported discrimination. Plaintiffs now seek an order that goes well beyond the Court's findings and conclusions of law.

1. Reasonable Modification for MyMathLab Issue

First, to remedy the discriminatory effect of the MyMathLab software, the Court expressly held:

> Based on the undisputed evidence advanced by Plaintiffs, the only use for MyMathLab in Math 124A was a repository for homework assignments. If those same homework assignments could be provided to Payan in an accessible format outside of the MyMathLab program, then Payan would still receive the same benefits as all

Haight

> other sighted students who are freely able to use MyMathLab, and LACCD would meet its obligations under Title II and Section 504 to ensure equal opportunity to Payan and other blind students.

(See ECF Docket No. 183 at p. 10, ¶ 2.)

Accordingly, it is evident that the narrowest and most reasonable accommodation to remedy the discriminatory effect of MyMathLab at LACC is to simply require the Los Angeles City College (in classes utilizing MyMathLab software for homework submission) provide substantively similar homework problems to sight-impaired students in an accessible format outside of MyMathLab including, but not limited providing the problems in Microsoft Word format.

Instead of this limited and reasonable accommodation, Plaintiffs proposed injunction would require LACCD to completely stop using what it terms as "inaccessible portions" of MyMathLab as an instructional tool (See ECF Docket No. 325-4 at p. 5, lines 5-9). Given that sight-impaired students of the LACC can be reasonably accommodated with an alternative format of the MyMathLab homework assignments – it is fundamentally unreasonable to require LACCD to completely remove MyMathLab's features from math courses taught at the LACC.

No other proposed modification or accommodation was offered into evidence, by Plaintiffs or their respective expert witnesses, at the summary adjudication phase or at trial.

2. <u>Reasonable Modification for PeopleSoft and LACC Website</u>

Plaintiffs' proposed injunction (as it pertains to the LACC website) calls for LACCD to restructure every single website maintained by any of the nine schools within the district, despite a lack of any evidence in the record suggesting discrimination as a result of any website other than the one maintained by LACC. Further, Plaintiffs' improperly request injunctive relief with respect to the "instructor websites." (ECF Docket No. 325-4 at p.8, lines 18-21.) Again, there was no evidence of discrimination resulting from the websites of any school in the

district save for the LACC. Moreover, Plaintiffs did not demonstrate that any specific professor's website resulted in discrimination under the ADA or Rehabilitation Act. Given that no such evidence is in the record – Plaintiffs are simply not entitled to such injunctive relief.

Plaintiffs' own expert offered testimony at trial suggesting reasonable accommodations for the alleged discrimination resulting from PeopleSoft and the LACC website. The Court summarized this testimony about reasonable modifications, noting first:

> Bossley testified at trial that reasonable modifications exist to resolve blind students' lack of access to the LACC website through JAWS. Specifically, Mr. Bossley testified that PeopleSoft has made available different Application Programming Interfaces ("APIs") to allow its customers to build a custom website or mobile-application-based interface different from the default interface accompanying the PeopleSoft program. Existing APIs produced by software vendors are compatible with JAWS and would remedy the accessibility problems found on PeopleSoft's default interface....

(ECF Docket No. 267 at p. 10, lines 8-14.)

Accordingly, insofar as Plaintiffs' proposed injunctive seeks any relief as to PeopleSoft *beyond* installation of one of the identified Application Programming Interfaces, the Order is improper and cannot be imposed. Plaintiffs' own expert testified that the issue with PeopleSoft can be entirely remedied by installation of a designation API – that is the *only* relief to which Plaintiff is entitled as to the PeopleSoft discrimination issue.

Moreover, as to the LACC Website, the Court summarized Bossley's conclusions noting:

> As to the LACC website itself, Mr. Bossley testified that LACC could revise the website to make the website accessible under the Web Content Accessibility Guidelines ("WCAG"). Deficiencies in the formatting of the website that preclude access by text-to-speech users to not conform with WCAG standards and could theoretically be remedied through changes in the website's coding.

(ECF Docket No. 267 at p. 10, lines 19-23.)

Yet Plaintiffs now ask for a litany of additional relief. They ask that the court enter an order requiring changes to the websites of *every school in the district* instead of just LACC. Plaintiffs ask that the Court order private websites (maintained and controlled solely by teachers) fall within the gambit of the injunction. Plaintiffs want the Court to Order the LACCD to hire a third-party to assess whether the LACCD has complied with the Court's order regarding remedying the website issues. None of these added items of relief were submitted or even suggested by Plaintiffs or their experts to be reasonable modifications of the alleged discrimination. As the Court noted, the only reasonable modifications attested to were (1) adoption of an API to remedy the PeopleSoft issue on the LACC website; and (2) re-coding of the LACC website to comply with WCAG standards. The injunctive relief available to Plaintiffs on this issue should be limited to what was established, and nothing more.

3. Reasonable Modification for LACC Library Databases

Here again, Plaintiffs' proposed injunction (as it pertains to the LACC Library Database) goes well beyond the Court's conclusions, and the evidence offered at trial and during the summary adjudication stage. Specifically, as to Library databases, the Court concluded that Plaintiffs had failed to identify specific remedies for the library databases, and that if such remedies could not be identified, then the only pertinent remedy would be for the LACC to discontinue use of the offending databases. (See ECF Docket No. 267 at p. 20, lines 3-16.)

Instead of attempting to offer any specific alternative other than complete removal of inaccessible databases from the library, Plaintiffs request the Court bar the use of the databases "found to be inaccessible." Notably, however, no evidence exists in the record identifying which particular databases are purportedly inaccessible. The Court expressly noted this deficiency in its May 21, 2019 Order, by stating "Plaintiffs have not identified which specific databases were

inaccessible." (See ECF Docket No. 267 at p. 19, lines 15-16.) Given that Plaintiffs have failed to competently demonstrate which purported databases are "inaccessible" such that they result in discrimination – it would be overbroad and unduly vague for the Court to simply order that LACC cease utilizing "all databases inaccessible to sight-impaired individuals."

4. Reasonable Modifications for Mason's Inability to Access Handbook in Professor Daniel's Abnormal Psychology Course

Lastly, Plaintiffs proposed injunction is absurdly overbroad with respect to the proposed relief addressing Mason's inability to access a handbook used in Professor Daniel's Abnormal Psychology course. Plaintiffs' proposed injunction seeks to take this one instance and use it enjoin the LACCD as to every one of its nine campuses, for every single course taught at each college..

The Court expressly concluded that the available reasonable modification would be for LACCD to ensure that "Mason receive an accessible version of Professor Daniel's handbook at the same time as sighted students receive a hard-copy of the handbook." (See ECF Docket No. 267 at p. 17, lines 12-15.) All of the relief Plaintiffs seek by their proposed injunction which goes beyond this *specific* remedy, should not be granted.

Plaintiffs' experts did not offer any specific testimony at trial regarding the now requested relief with respect to faculty trainings, audits of procedures for making materials accessible, or appointment of an overseer of the policies and procedures at LACC. The record is silent on these now requested forms of relief.

**C. Prior Rulings of This Court Preclude the Entry of the Broad Permanent Injunction Sought by Plaintiffs**

A prior ruling of the United States District Court, Central District of California, is directly on point in this regard. In *Huezo v. Los Angeles Community College District*, a mobility impaired student filed a complaint for violation of the ADA and Section 504 of the Rehabilitation Act of 1973 against the Los Angeles Community College District. 672



Haight

F.Supp.2d 1045, 1046 (C.D. Cal. 2008)("*Huezo*"). The plaintiff in *Huezo* attended Pierce College, and alleged that LACCD failed to make the educational facilities accessible to mobility-impaired persons and failed to provide 'programs, services and activities' in a non-discriminatory manner to persons with mobility disabilities." *Id.* In the plaintiff's motion for partial summary judgment, the plaintiff offered evidence pertaining to physical barriers he encountered *at Pierce College*, and the Court entered partial summary judgment in his favor. *Id.* at 1047. Plaintiff then moved for a permanent injunction against the Los Angeles Community College District, which the Court granted. *Id.* at 1068.

Critically, the injunction issued by the Court in *Huezo* was against the Los Angeles Community College District, but only orderd remedial action by the District ***as to the Pierce College campus***, or as to the LACCD policies and procedures and website. Specifically, the Order states, in pertinent part:

> IT IS FURTHER ORDERED that the District immediately cease charging disabled students for accommodations to overcome barriers at Pierce College, including any charges for the use of parking permits for faculty parking and keys to the library elevator.
>
> IT IS FURTHER ORDERED that the District establish a regularly scheduled wheelchair accessible shuttle that will take disabled students to all portions of the campus that do not have accessible paths of travel as identified by plaintiffs expert, … including the upper portion of the campus, the agricultural and equestrian facilities, the applied technology buildings, and the parking lots on campus.
>
> …
>
> IT IS FURTHER ORDERED that the District publicize the modification of policies and accommodations available as a result of the permanent injunction in written materials provided to disabled students at all student orientations. The Special Services Student Handbook must be revised to include these changes, and the Pierce campus website and the District's main website must also provide information regarding the services available to disabled students.
>
> …
>
> IT IS FURTHER ORDERED that the access expert monitor and oversee the progress of corrective work and implementation of modified policies at Pierce College.

[Emphasis added.] See United States District Court, Central District of California, Permanent Injunction issued in the matter titled *Huezo v. Los Angeles Community College District*, bearing case number CV 04-09772 MMM (JWJx), dated September 9, 2008.[1] Even though the plaintiff in *Huezo* sued the entire college district, this Court previously recognized that proven violations at *one campus* were insufficient to justify an injunction expanding to *other campuses* within the college district, absent proof of discrimination by physical barriers at those campuses.

Plaintiffs contend the Court is within its authority to expand the scope of injunctive relief to extend to matters upon which *no evidence of discrimination was elicited*, arguing the 9th Circuit decision in *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002)("*Pickern*") stands for the proposition that a Plaintiff need not "personally experience every barrier to obtain an injunction as to the same accessibility violation." This position runs afoul of the most basic due process principles, and is premised on a case (*Pickern*) that does *not* stand for such proposition.

*Pickern* does not stand for the proposition which Plaintiffs' advance, and it is so factually and procedurally different from the present case that Plaintiffs' citing of the case is puzzling. In *Pickern*, the plaintiff Jerry Doran was a paraplegic who filed suit against Holiday Quality Foods, seeking injunctive relief under Title III of the Americans with Disabilities Act for alleged architectural barriers which existed on the Holiday Quality Foods' property which made the property inaccessible to him. *Id.* at 1135. The defendant filed a motion for summary judgment, arguing that the plaintiff had not actually attempted to enter the store during the limitations period, and thus had not encountered any barriers during that period. *Id.* The District Court granted the motion for summary judgment, and the Ninth Circuit reversed. *Id.* The Ninth Circuit pointed to Title III's "futile gesture" doctrine, noting "Title III explicitly provides that it does not require 'a person with a

---

[1] Pursuant to Federal Rules of Evidence, Rule 201, LACCD respectfully requests the Court take judicial notice that the contents of the Permanent Injunction were ordered by the Court in *Huezo*.



Haight

disability to engage in a futile gesture if such person has actual notice that a person or organization ... does not intend to comply' with the ADA." *Id.* at 1136. The Court continued by holding "[w]e agree with the Eighth Circuit that Doran need not necessarily have personally encountered all the barriers that 8765 bar his access to the Paradise store in order to seek an injunction to remove those barriers."

Plaintiffs construe this holding to mean they are entitled to an injunction as to allegations of discrimination without the need to proffer evidence of discrimination on those topics. This is not the holding of *Pickern.* Rather, *Pickern* simply notes that an ADA plaintiff does not have to *personally* encounter every single physical barrier in order to seek injunctive relief to remove them – ***it does not excuse the plaintiff from offering evidence of the specific barriers that constitute discrimination.***

Accordingly, Plaintiffs' proposed injunction cannot be entered with respect to technology other than MyMathLab, PeopleSoft, and the LACC website. Plaintiffs did not establish any other discriminatory software exists at LACC, within LACCD, or at any of the other eight campuses within the LACCD. Further, Plaintiffs are not entitled to an injunction affecting how LACC assigns students to certain professors, or an injunction that forces specific training on professors. Again, these are matters upon which Plaintiff did not secure a finding of an ADA violation. *Pickern* merely allows Mason and Payan to ***plead and pursue*** claims of discrimination for discriminatory conduct they did not personally encounter, but it does not excuse them from having to proffer evidence and prove the discriminatory acts they want enjoined. Here, Plaintiffs established only very specific and situational violations of the ADA and Rehabilitation Act at the LACC. They are therefore only entitled to very narrow injunctive relief to remedy the discriminatory conduct they established existed at LACC. If the Court has not expressly concluded that a practice of the LACC or LACCD violates the ADA, Plaintiffs are not entitled to an injunction on that issue because it would violate fundamental principles of due process, and is based upon sheer speculation and baseless conclusions.

## IV. CONCLUSION

In sum, LACCD respectfully requests the Court deny Plaintiffs' Motion for a Permanent Injunction given the proposed relief is improper, beyond the Court's conclusions of law, and procedurally impermissible under Federal Rules of Civil Procedure, Rule 65(d).

In conclusion, any injunction issued by the Court should be expressly limited to requiring the LACCD to perform four specific actions: (1) provide sight-impaired math students (enrolled in classes utilizing MyMathLab) substantively similar homework problems in an accessible format outside of MyMathLab including, but not limited to, in Microsoft Word format; (2) adopt an API to remedy the PeopleSoft issue on the LACC website; (3) re-code any inaccessible portions of the LACC website to comply with WCAG standards as they pertains to use by sight-impaired students; and (4) provide all sight-impaired students enrolled in Professor Daniel's Abnormal Psychology course with an accessible version of the class handbook at the same time as such handbook is provided to sighted students.

The record is devoid of evidence to support injunctive relief beyond these four mandates., and the Court's conclusions regarding available reasonable modifications render Plaintiffs' arguments for additional relief moot.

Dated: July 12, 2019

HAIGHT BROWN & BONESTEEL LLP

By: ______________________

Richard E. Morton
Bruce Cleeland
Yvette Davis
Attorneys for Defendant
LOS ANGELES COMMUNITY COLLEGE DISTRICT