Patricia Barbosa (SBN 125685)
pbarbosa@barbosagrp.com
**BARBOSA GROUP**
8092 Warner Avenue
Huntington Beach, California 92647
Phone: (714) 465-9486

Sharon Krevor-Weisbaum
skw@browngold.com
Joseph B. Espo
jbe@browngold.com
Jean M. Zachariasiewicz
jmz@browngold.com
**BROWN, GOLDSTEIN & LEVY LLP**
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Phone: (410) 962-1030

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY PAYAN, PORTIA MASON, THE NATIONAL FEDERATION OF THE BLIND, INC., and THE NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> LOS ANGELES COMMUNITY COLLEGE DISTRICT, <br><br> Defendant. | **Case No.: 2:17-cv-01697-SVW(SKx)** <br> **Civil Rights** <br><br> **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PERMANENT INJUNCTION, FOR AMENDMENT OF THE ENTERED JUDGMENT, AND FOR ENTRY OF FINAL JUDGMENT** |

1

**<u>TABLE OF CONTENTS</u>**

2

TABLE OF AUTHORITIES ....................................................................ii

3     I.     Defendant Does Not Contest Plaintiffs' Entitlement to a

4            Permanent Injunction. ..................................................................1

5     II.    The Injunctive Relief Should Apply to the District........................1

6     III.   The Court Should Order the Requested Relief to Remedy

7            LACCD's Various Violations...........................................................4

8            A.     MyMathLab ............................................................................5

9            B.     Inaccessible Course Materials ..............................................6

10           C.     Websites and PeopleSoft ......................................................7

11           D.     Library Databases .................................................................8

12    IV.   The Court Should Reject LACCD's Unsupported

13            Arguments. ....................................................................................8

14    V.    LACCD Does Not Meaningfully Challenge the Remaining

15           Proposed Injunction Terms. ........................................................10

16    VI.   Plaintiffs Request the Amendment of the Partial Judgment

17           Entered. .......................................................................................12

18    VII.  Conclusion...................................................................................12

19  CERTIFICATE OF SERVICE ..........................................................13

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Davis*,
  318 F.3d 965 (9th Cir. 2003) .......................................................................... 10

*Clement v. California Dep't of Corr.*,
  364 F.3d 1148 (9th Cir. 2004) .......................................................................... 3

*Doran v. 7-Eleven, Inc.*,
  524 F.3d 1034 (9th Cir. 2008) .......................................................................... 3

*Dudley v. Miami Univ.*,
  Case No. 1:14-cv-38-SJD (S.D. Ohio) .............................................................. 9

*Huezo v. Los Angeles Cmty. Coll. Dist.*,
  672 F. Supp. 2d 1045 (C.D. Cal. 2008) ........................................... 4, 9, 10, 11

*Huezo v. Los Angeles Cmty. Coll. Dist.*,
  No. CV 04-09772 MMM(JWJx),
  2008 WL 4184659 (C.D. Cal. Sept. 9, 2008) ................................................... 4

*Lanzilotti v. Atl. Cape Cmty. Coll.*,
  Case No. CV 15-3656-JEI-JS  (D.N.J.) ............................................................ 10

*Pickern v. Holiday Quality Foods, Inc.*,
  293 F.3d 1133 (9th Cir. 2002) ................................................................... 3, 4, 7

*Skydive Arizona, Inc. v. Quattrocchi*,
  673 F.3d 1105 (9th Cir. 2012) .......................................................................... 8

## Statutes

29 U.S.C. § 794a ..................................................................................................... 10

## Rules

Fed. R. Civ. P. 58(b) ............................................................................................... 12

Fed. R. Civ. P. 65 .................................................................................................... 8

1    This Court determined that Defendant Los Angeles Community College

2    District ("LACCD") violated Plaintiffs' rights under the American with Disabilities

3    Act and Rehabilitation Act in multiple domains.  Despite these findings, LACCD

4    argues that the "requested permanent injunction should be denied outright."  Dkt. 327

5    at 1.  LACCD seeks to escape meaningful accountability by requesting that the Court

6    enter a watered-down injunction that allows the discrimination against blind students

7    at LACCD to continue.  In so doing, LACCD ignores the evidentiary record as well

8    as binding precedent.  For the reasons previously stated and those set out below,

9    Plaintiffs' requested permanent injunction should be entered.

10   **I.    Defendant Does Not Contest Plaintiffs' Entitlement to a Permanent**

11   **Injunction.**

12   LACCD does not challenge Plaintiffs' entitlement to injunctive relief.

13   Plaintiffs first outlined their entitlement to such relief in their original Motion for

14   Permanent Injunction following entry of partial summary judgment and then

15   reiterated the applicable law in the Motion for Permanent Injunction following the

16   jury and bench trials.  *See* Dkt. 259-1 at 5–8; Dkt. 325-1 at 4–5.  LACCD did not

17   separately respond to the first Motion and does not address Plaintiffs' entitlement in

18   its Opposition.  As a result, Plaintiffs are entitled to injunctive relief and the dispute

19   between the parties centers on the scope of the relief.

20   **II.    The Injunctive Relief Should Apply to the District.**

21   LACCD's chief contention is that injunctive relief should be limited to Los

22   Angeles City College ("LACC"), but in so arguing LACCD fails to grapple with the

23   factual record, the practicalities of its position, or Ninth Circuit precedent.

24   First, LACCD fails to acknowledge record evidence pertaining to campuses

25   other than LACC.  For example, as part of her Second Supplemental Trial Testimony,

26   Plaintiff Portia Mason specifically addressed the accessibility issues she faces at East

27

28

1   Los Angeles College ("ELAC"), which she began attending in Spring 2019.  Dkt. 270

2   at ¶¶ 11, 20-23.  Ms. Mason detailed how at ELAC, like at LACC, her class materials

3   are not made accessible before they are used in class and how she had "not received

4   the accommodations [she] requested and need[s] to fully participate and understand

5   class lectures and materials." *Id.* at ¶ 22.  Further, as a practical matter, the

6   discrimination faced by Plaintiffs necessarily extends beyond just LACC.  The

7   inaccessible PeopleSoft Student Information System registration software is used

8   district-wide.  Declaration of Joseph B. Espo ("Espo Dec.") ¶ 7 and Att. F thereto,

9   Dep. Testimony of Jorge Mata used at jury trial, 41:2-4.  As Plaintiffs' expert Peter

10  Bossley testified at the jury trial, all students access PeopleSoft through the LACCD

11  website.  Thus, its accessibility does not hinge on which campus a student attends.

12  Likewise, the testimony at trial from Library Department Chair Barbara Vasquez was

13  that "*all* of the community colleges in the state" receive the same package of

14  databases, Espo Dec.¶ 2 and Att. A thereto, Vasquez Dep. Testimony used at jury

15  trial, 18:5-12 (emphasis added); so it again makes sense to either require accessibility

16  of the databases at all campuses or end the use of inaccessible databases across all

17  campuses.  What is more, Plaintiffs' experts submitted trial declarations – which

18  LACCD  ignores – that speak to the accessibility barriers encountered by blind

19  students generally.[1]  Dkt. 114; 117; 210.  Thus, the record evidence supports the

20  scope of the proposed injunction.

21       LACCD also fails to distinguish, or in some cases even address, the binding

22  decisions that support applying the injunction to LACCD – the named Defendant in

---

24  [1] In its argumentative fact section, LACCD asserts that Plaintiffs' experts did not make

25  specific findings as to the individual Plaintiffs on certain issues. Dkt. 327 at 3.  LACCD misunderstands that Plaintiffs' experts often formed opinions about whether certain

26  technologies and materials were accessible to blind individuals, which necessarily encompasses the individual Plaintiffs. *See, e.g.*, Dkt. 114, Trial Testimony Declaration

27  of Peter Bossley at 27 ("Based on the findings above, it is my opinion to a reasonable degree of professional certainty that MyMathLab is not accessible to blind users.").

28

1  this matter.  As previously outlined, in *Pickern v. Holiday Quality Foods, Inc.*, the

2  Ninth Circuit made clear that a plaintiff "need not necessarily have personally

3  encountered all the barriers . . . in order to seek an injunction to remove those

4  barriers." 293 F.3d 1133, 1138 (9th Cir. 2002).  LACCD's suggestion that the

5  injunctive relief should be limited to what the Plaintiffs have personally encountered

6  runs directly counter to this well-established principle.  In affirming its ruling in

7  *Pickern*, the Ninth Circuit stated that limiting injunctive relief to barriers personally

8  encountered "would require disabled plaintiffs to engage in piecemeal litigation to

9  eliminate barriers the ADA prohibits."  *Doran v. 7-Eleven, Inc*., 524 F.3d 1034, 1046

10 (9th Cir. 2008).  Consistent with *Pickern* and *Doran*, Plaintiffs do not seek to extend

11 the injunctive relief to unproven types of discrimination but rather to ensure that the

12 relief covers all instances of the same types of discrimination.  LACCD's attempt to

13 distinguish *Pickern* is unpersuasive.  The "futile gesture" language to which LACCD

14 cites is in the statute of limitations section of *Pickern* and inapplicable to the issue at

15 hand.  *See* Dkt. 327 at 14–15; *Pickern*, 293 F.3d at 1136–37.  LACCD also invokes

16 "due process principles," Dkt. 327 at 14, but gives no specific authority or argument.

17     LACCD simply ignores the Ninth Circuit's decision in *Clement v. California*

18 *Dep't of Corr.*, 364 F.3d 1148 (9th Cir. 2004).   There, the court affirmed a system-

19 wide injunction because it "would be inefficient and unnecessary for prisoners in

20 each California state prison to separately challenge the same [] policy." *Id.* at 1153.

21 That same logic applies here.  It would be highly inefficient if blind students at each

22 of LACCD's campuses were required to challenge in separate lawsuits the

23 inaccessible PeopleSoft program used throughout the District.  LACCD's suggestion

24 that it should be required to fix the PeopleSoft issue *only* "on the LACC website,"

25 Dkt. 327 at 16, is illogical – it is a software that is common to all campuses.  The

26

27

28

*PAYAN, et al. v. LACCD*, Case No.:  2:17-cv-01697 SVW(SKx)
PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OR THEIR MOTION FOR PERMANENT INJUNCTION,
FOR THE AMENDMENT OF THE ENTERED JUDGMENT, AND FOR ENTRY OF FINAL JUDGMENT

3

1  Court's finding that the PeopleSoft program is inaccessible is also direct notice to

2  LACCD that continued use of PeopleSoft at any campus is intentional discrimination.

3         Rather than grapple with this Ninth Circuit caselaw, LACCD contends that the

4  district court decision in *Huezo v. Los Angeles Cmty. Coll. Dist.*, 672 F. Supp. 2d

5  1045 (C.D. Cal. 2008), resolves the issue in its favor.  Not so.  *Huezo* raised

6  complaints of architectural barriers, and the injunctive relief granted required the

7  removal of barriers that affected all mobility disabled students.  It was targeted at

8  Pierce College because the barriers were specific to that campus.  *See Huezo v. Los*

9  *Angeles Cmty. Coll. Dist.*, No. CV 04-09772 MMM(JWJx), 2008 WL 4184659, at *1

10  (C.D. Cal. Sept. 9, 2008).  In other words, the plaintiff in *Huezo* sought relief for

11  barriers at Pierce College.  *See Huezo*, 672 F. Supp. at 1046.

12         More critically, a careful review of *Huezo* reveals the Court *did not limit* the

13  injunctive relief to that campus.  As reflected in the excerpt that LACCD cites, the

14  Court ordered that *the District* modify relevant policies and procedures, "publicize

15  the modification of policies and accommodations" and that the "Pierce campus

16  website and *the District's main website*" be revised to provide information regarding

17  services available to students with disabilities.  Dkt. 327 at 13 (emphasis added).

18  Thus, *Huezo* supports Plaintiffs' position that the relief should apply beyond a

19  particular campus to resolve common problems.  In light of *Pickern*, *Clements*, and

20  *Huezo*, the scope of Plaintiffs' requested relief is appropriate.

21  **III.    The Court Should Order the Requested Relief to Remedy LACCD's**

22  **Various Violations.**

23         The Court should reject not only LACCD's attempt to limit the injunctive relief

24  to LACC but also its related attempt to gut the requested relief, rendering it

25  meaningless.  The Court found that LACCD violated Title II and Section 504 by

26  failing to provide:  (1) Roy Payan with meaningful access to course materials in his

27

28

1    math class; (2) Portia Mason an accessible handbook in Professor Daniel's course;

2    (3) both Plaintiffs access to the LACC website (including the embedded PeopleSoft

3    program); and (4) both Plaintiffs access to the LACC library databases. Plaintiffs

4    have justified the requested relief with respect to these categories.

5                 **A.**    **MyMathLab**

6        First, Plaintiffs renew their request that the Court enter an injunction that

7    reflects the reasonable modification it proposed in its Order on Plaintiffs' Second

8    Renewed Motion for Partial Summary Judgment – that LACCD enforce the

9    mandatory portions of the Alternate Media Production Policy, Dkt. 183 at 16.[2] The

10    Court previously articulated that requiring LACCD to enforce the binding aspects of

11    the Media Policy was a reasonable measure. *Id.* "[S]trict adherence to these aspects

12    of the Media Policy would prevent the discrimination experienced by Payan in his

13    math classes and would ensure that blind students continue to receive equal

14    opportunity in their courses and meaningful access to course materials." *Id.* at 16–17.

15    In accordance with this clear holding, Plaintiffs have incorporated the relevant,

16    binding portions of the Media Policy into the proposed injunction. *See* Dkt. 325-4 at

17    4. The Court should thus order LACCD to comply with the Media Policy as written.

18    Espo Dec. ¶ 8 and Att. G thereto, Bench Trial Ex. No. 4, LACC Alternate Media

19    Production Policy.

20        Tellingly, LACCD's Opposition does not mention the Media Policy. Instead,

21    LACCD proposes assigning "substantively similar" homework assignments to blind

22    students. Dkt. 327 at 9. This unworkable suggestion runs afoul of the Court's

23    summary judgment order and would deny blind students the equal access to which

---

24   [2] The record shows that the problems with MyMathLab were significant, recurring, and
25   widespread. *See* Dkt. 114, Trial Testimony Declaration of Peter Bossley, ¶ 63 ("Based on the findings above, it is my opinion to a reasonable degree of professional certainty
26   that MyMathLab is not accessible to blind users."). At the second phase of the trial, the jury heard evidence from Sylvia Mitchell and Ryan Kushner about the long-
27   standing accessibility problems with MyMathLab.

---

28      *PAYAN, et al. v. LACCD*, Case No.: 2:17-cv-01697 SVW(SKx)
PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OR THEIR MOTION FOR PERMANENT INJUNCTION,
FOR THE AMENDMENT OF THE ENTERED JUDGMENT, AND FOR ENTRY OF FINAL JUDGMENT

5

1   they are entitled.  LACCD relatedly takes issue with the language in the proposed

2   injunction that would require it to stop using "inaccessible portions" of MyMathLab.

3   *Id.*  But the Court has already held that if a technology cannot be made accessible,

4   discontinuing use of that technology is a reasonable solution.  Dkt. 267 at 20 ("[I]t

5   would indeed be a reasonable modification to require LACCD to avoid using any

6   inaccessible library databases it identifies until those databases are proven to be

7   accessible, a principle which the Courts considers to be self-evident.").

8   **B.   Inaccessible Course Materials**

9       Second, the Court held that LACCD discriminated against Plaintiff Portia

10  Mason by denying her an accessible handbook in Professor Daniel's psychology

11  course.  Plaintiffs again propose that LACCD be ordered to comply with the Media

12  Policy, and thus be required to provide its blind students with accessible versions of

13  course materials at the same time as or before sighted students receive those course

14  materials.  Dkt. 325-1 at 6–7.  As the Court previously explained, "LACCD ignores

15  its affirmative obligations under Title II and Section 504 to ensure in the first instance

16  that all services and materials offered to students with disabilities are provided in an

17  accessible format at the same time as other students."  Dkt. 183 at 18.

18      LACCD characterizes an injunction requiring it to meet its affirmative legal

19  obligations as "absurdly overbroad," Dkt. 327 at 12, and it instead proposes that the

20  injunction cover only a single textbook in a single course.  *Id.*  But, again, this

21  constrained view of injunctive relief is contrary to this Court's prior finding that

22  enforcement of the already-adopted Media Policy – which is not limited to a

23  particular textbook or class – is reasonable and appropriate.  Dkt. 183 at 16–17.

24  Limiting the injunction to one handbook in one psychology course will produce the

25  absurd result of forcing blind students to file a new lawsuit every time they encounter

26

27

*PAYAN, et al. v. LACCD*, Case No.:  2:17-cv-01697 SVW(SKx)
PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OR THEIR MOTION FOR PERMANENT INJUNCTION,
FOR THE AMENDMENT OF THE ENTERED JUDGMENT, AND FOR ENTRY OF FINAL JUDGMENT

6

28

1   inaccessible materials, producing an outcome that is "inefficient," "impractical," and

2   inconsistent with the broad mandate of the ADA. *Pickern*, 293 F.3d at 1138.

3   ## C.   Websites and PeopleSoft

4          Third, Plaintiffs' proposed injunction would require LACCD to make its and

5   its colleges' websites, as well as PeopleSoft, accessible to blind students.  With

6   respect to PeopleSoft, Plaintiffs' expert, Peter Bossley, testified that LACCD can

7   remedy the accessibility problems by either working with "software vendors out there

8   that have produced alternate interfaces that provide enhanced accessibility for the

9   inaccessible portions of PeopleSoft" or by "construct[ing] their own interface using

10  what's known as an application program interface that is made available by the

11  developers of PeopleSoft that would allow like a third-party integration."  Espo. Dec.

12  ¶ 3 and Att. B thereto, Bossley Bench Trial Testimony, 104:8-19.  Mr. Bossley also

13  made clear that deficient websites can be made accessible in accordance with the

14  accepted industry standards for digital accessibility (Web Content Accessibility

15  Guidelines ("WCAG") 2.0 Level AA).  *See* Dkt. 114; Dkt. 267 at 18; Espo Dec. ¶ 3

16  and Att. B thereto, Bossley Bench Trial Testimony, 104:20-23.  Jon Gunderson,

17  another of Plaintiffs' experts, likewise testified at the bench trial regarding the current

18  WCAG 2.1 Level AA standards.  Espo Dec. ¶ 4 and Att. C thereto, Gunderson Bench

19  Trial Testimony, 86:3-7.  Lastly LACCD employee Ryan Kushner testified regarding

20  his knowledge of student complaints about instructors' personal websites.  Espo Dec.

21  ¶ 5 and Att. D thereto, Dep. Testimony of Ryan Kushner Trial used at bench trial,

22  78:4-23; Espo Dec. ¶ 6 and Att. E thereto, Kushner Bench Trial Testimony, 123:2-12.

23         Despite this specific testimony, expert findings, and recommended solutions,

24  LACCD objects to the requested relief.  Regarding PeopleSoft, LACCD confusingly

25  appears to suggest that the injunction should only cover the software as it relates to

26  LACC's website.  *See* Dkt. 327 at 16.  As discussed, it does not make sense to limit

27

28

1    the remedy of a software in this manner when it is used across LACCD and there is

2    no evidence that such a remedy is even possible.  Further, LACCD once again

3    advocates for the narrowest injunction possible, this time by suggesting that only a

4    handful of webpages should be made accessible in accordance with industry

5    standards.  But such an approach runs counter to the Ninth Circuit's instruction to

6    avoid making injunctions "so narrow as to invite easy evasion."  *Skydive Arizona,*

7    *Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012) (citation omitted).

8                    **D.    Library Databases**

9          Lastly, directly contrary to the Court's summary judgment finding, LACCD

10   argues that the proposed injunctive relief as to the library databases is unreasonable.

11   While LACCD cites to some of the Court's language on this topic, it conveniently

12   omits the portion where the Court expressly held that "it would indeed be a

13   reasonable modification to require LACCD to avoid using inaccessible library

14   databases it identifies until those databases are proven to be accessible."  Dkt. 267 at

15   20.  That is what Plaintiffs propose here.  Dkt. 325-4 ("Within one (1) year of the

16   effective date of this Decree, LACCD shall evaluate and cease using any library

17   databases . . . that are not accessible.").  Given that Plaintiffs have followed the

18   Court's guidance on this issue, LACCD's protestations that such a remedy is

19   "overbroad and unduly vague" ring hollow.  Dkt. 327 at 12.

20             **IV.    The Court Should Reject LACCD's Unsupported Arguments.**

21         LACCD confusingly asserts in a header that Plaintiffs' proposed permanent

22   injunction is "procedurally defective," citing Fed. R. Civ. P. 65, Dkt. 327 at 4, but it

23   does not identify any lack of compliance with the rule.  Whether or not LACCD's

24   miscellaneous arguments are procedural or substantive, none have merit.

25         First, LACCD states that the proposed order is so vague and ambiguous that a

26   reasonable agent of the LACCD could not know if he or she was complying with the

27

28

*PAYAN, et al. v. LACCD*, Case No.:  2:17-cv-01697 SVW(SKx)
PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OR THEIR MOTION FOR PERMANENT INJUNCTION,
FOR THE AMENDMENT OF THE ENTERED JUDGMENT, AND FOR ENTRY OF FINAL JUDGMENT

8

1  injunction.  Dkt. 327 at 6.  Later in its brief, LACCD complains that the proposed

2  injunction is too long.  *Id.* at 7.  LACCD cannot have it both ways.  In any event, it

3  fails to explain how the proposed order is unduly vague.  LACCD cites only to a

4  portion of the proposed injunction requiring LACCD to revise its existing policies or

5  adopt new policies in a number of specific areas within 240 days of the entry of the

6  injunction.  Dkt. 325-4 at 10–13.[3]  The proposed injunction covers those policy areas

7  in detail.  *Id.*  There is nothing vague about ordering a defendant to adopt certain

8  policies; in fact, the *Huezo* court ordered that remedy.  672 F. Supp. 2d at 1063

9  ("Because he has shown a likelihood that he will suffer irreparable injury and the

10  inadequacy of remedies at law, the court grants Huezo's request for interim

11  modifications to the District's policies and procedures.").  And it is not impermissibly

12  vague for an injunction to track the language of the governing statutes.

13     Second, LACCD hyperbolically contends that the proposed injunction would

14  require "years (if not *decades*) of direct judicial oversight of the Order."  Dkt. 327 at

15  7.  This argument ignores the language of the proposed injunction which expressly

16  provides that it "shall remain in effect for five (5) years."  Dkt. 325-4 at 19.

17  Additionally, the proposed injunction specifically calls for monitoring and a "third-

18  party consultant," which will obviate the need for direct judicial oversight.

19     Third, LACCD states, again in a conclusory and hyperbolic manner, that "court

20  enforcement of the proposed orders will be nearly impossible due to the difficulties

21  created by the timelines and requirements."  Dkt. 327 at 7.  Enforcement of the

22  proposed injunction is not "nearly impossible."  Plaintiffs previously submitted an

23  injunction entered in *Huezo*, and consent decrees in the cases of  *Dudley v. Miami*

24  *Univ.*, Case No. 1:14-cv-38-SJD (S.D. Ohio) and *Lanzilotti v. Atl. Cape Cmty. Coll.*,

---

25  [3] LACCD mistakenly cites to an earlier-filed version of the proposed injunction, which
26  was submitted in connection with an earlier motion.  The proposed permanent
    injunction at issue is contained at Docket 325, and the language that LACCD cites is
27  contained in paragraph 24 (not paragraph 10).

28  *PAYAN, et al. v. LACCD*, Case No.: 2:17-cv-01697 SVW(SKx)
PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OR THEIR MOTION FOR PERMANENT INJUNCTION,
FOR THE AMENDMENT OF THE ENTERED JUDGMENT, AND FOR ENTRY OF FINAL JUDGMENT

9

1   Case No. CV 15-3656-JEI-JS  (D.N.J.).  Those examples show that an injunction
2   such as the one proposed here is not impossible to enforce.

3        Fourth, LACCD incorrectly implies that a court cannot order anything other
4   than individually tailored reasonable accommodations in fashioning injunctive relief
5   under the ADA.  That is not the case.  Even the language that LACCD references
6   broadly provides that a court may consider "other appropriate relief in order to
7   achieve an equitable and appropriate remedy."  Dkt. 327 at 8 (citing 29 U.S.C. §
8   794a).  What is more, there are numerous examples within the Ninth Circuit where a
9   court has ordered injunctive relief that has not taken the form of individually tailored
10  reasonable accommodations.  *See, e.g.*, *Huezo*, 672 F. Supp. 2d at 1063 (ordering
11  modification of policies and procedures); *Armstrong v. Davis*, 318 F.3d 965, 969 (9th
12  Cir. 2003) (noting that "the court issued a permanent injunction requiring [a
13  defendant] to bring its policies and practices into compliance with the law" in case
14  involving ADA claims).

15       **V.    LACCD Does Not Meaningfully Challenge the Remaining Proposed**
16             **Injunction Terms.**

17       Consistent with its overly restrictive view of injunctive relief, LACCD asserts
18  that the Court should not issue any terms of relief other than the very narrow few that
19  it suggests.  LACCD asserts, without authority, that it should not be required to hire a
20  third-party consultant; have training for its staff; or conduct any sort of audit.  In so
21  arguing, LACCD, once again, does not accurately convey the record or the caselaw.

22       LACCD argues, for instance, that Plaintiffs' experts did not offer any
23  testimony at trial regarding the need for certain remedies, such as an audit or an
24  "overseer of the policies and procedures at LACC."  Dkt. 327 at 12.  That is belied by
25  the record.  Mr. Bossley addressed both issues, specifically testifying that
26  "[c]ontract[s] with vendors should require them to either maintain existing

27
28

1   accessibility or bring noncompliant software into compliance over a period of time.

2   And some *periodic monitoring and auditing* should take place to ensure those

3   processes are being carried forward."  Espo Dec. ¶ 3 and Att. B thereto, Bossley

4   Bench Trial Testimony, 105:17-106:2 (emphasis added).  Once again, LACCD

5   ignores the trial declarations submitted by Plaintiffs' experts.  Dr. Gunderson

6   specifically recommended an audit.  Dkt. 117 at 18 ("LACCD must perform an audit

7   of current educational technology and digital content to determine where accessibility

8   problems lie.").  Thus, there is an evidentiary basis for the relief requested.

9   Nevertheless, given that the bench and jury trials focused on liability and deliberate

10   indifference, Plaintiffs stand ready for an evidentiary hearing to offer additional

11   testimony as to the scope of the relief, if the Court finds it necessary.

12        What is more, LACCD neglects that courts have discretion to fashion

13   injunctive relief as they see fit. The Court need look no further than *Huezo*.  There,

14   the plaintiff argued that "any permanent injunction must include a monitoring

15   program to ensure that the District is complying with its obligation to modify its

16   policies and procedures and remove interim physical barriers."  672 F. Supp. at 1067.

17   The court agreed and directed LACCD to hire an "ADA access expert approved by

18   plaintiff" to oversee the modification of policies. *Id.* at 1064, 1067.  The Court here

19   should likewise authorize external monitoring.  Testimony throughout this case has

20   shown that, rather than require that all professors abide by federal law, LACC steers

21   blind students away from professors who refuse to accommodate them. *See, e.g.*,

22   Espo Dec. ¶ 9 and Att. H thereto, Dep. Testimony of Robert Dominick used at jury

23   trial, 33:12-17; Espo Dec. ¶ 10 and Att. I thereto, Dep. Testimony of Kian Kaviani

24   used at jury trial, 44:6-15. Further, given that both the individual Plaintiffs have

25   demonstrated violations in their classrooms with different instructors, some basic

26   ADA training is warranted.

27

28

1        This case underscores that having written policies is not enough to ensure legal

2   compliance.  Policies, such as the Media Policy, are meaningless if LACCD fails to

3   notify and train instructors and administrators on the policies; identify who has

4   responsibility to comply with them; and establish a means of enforcing them.  The

5   monitoring, training, and audit proposed are necessary to ensure meaningful relief for

6   Plaintiffs and end Defendant's discrimination.

7       **VI.**   **Plaintiffs Request the Amendment of the Partial Judgment Entered.**

8        On June 24, 2019, a Clerk's Judgment was entered on the Jury Verdict.  Dkt.

9   322.  The Clerk's Judgment references the individual Plaintiffs but not the

10  organizational Plaintiffs.  Fed. R. Civ. P. 58(b) provides that when a jury returns a

11  general verdict the Clerk "must promptly prepare, sign and enter the judgment…"  If

12  the Court grants any other relief not specified in Rule 58(b), judgment is to be entered

13  only after the court approves the form of the judgment.  In this case, the Court is

14  contemplating injunctive relief, so judgment on the jury verdict should not have been

15  entered.  Plaintiffs request that the earlier judgment be vacated and re-entered as part

16  of any injunction ordered by the Court and final judgment granted.

17      **VII.   Conclusion.**

18       For the foregoing reasons, Plaintiffs request that the Court grant their Motion.

19                Respectfully submitted,

20  Dated:  July 19, 2019         BARBOSA GROUP

21

22                       _____

23           Patricia Barbosa

            BROWN GOLDSTEIN & LEVY, LLP

24

25           _____

         Sharon Krevor-Weisbaum

         Joseph B. Espo

26           Jean M. Zachariasiewicz

         *Attorneys for Plaintiffs*

27

28

*PAYAN, et al. v. LACCD*, Case No.:  2:17-cv-01697 SVW(SKx)
PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OR THEIR MOTION FOR PERMANENT INJUNCTION,
FOR THE AMENDMENT OF THE ENTERED JUDGMENT, AND FOR ENTRY OF FINAL JUDGMENT

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2019, a copy of the foregoing Plaintiffs' Reply Memorandum in Support of their Motion for Permanent Injunction, for Amendment of the Entered Judgment, and for Entry of Final Judgment was delivered by the Court's e-filing system to:

Richard E. Morton, Esquire
Bruce Cleeland, Esquire
Yvette Davis, Esquire
Bethsaida C. Obra-White, Esquire
Kristian Moriarty, Esquire
Haight Brown & Bonesteel LLP
2050 Main Street, Suite 600
Irvine, California 92614
rmorton@hbblaw.com
bcleeland@hbblaw.com
ydavis@hbblaw.com
bobrawhite@ hbblaw.com
kmoriarty@hbblaw.com

*Attorneys for Defendant Los Angeles*
*Community College District*

_____
Joseph B. Espo