1   Patricia Barbosa (SBN 125685)
    pbarbosa@barbosagrp.com
2   **BARBOSA GROUP**
    606 Lake Street, #9
3   Huntington Beach, California 92648
    Phone: (714) 465-9486
4
    Sharon Krevor-Weisbaum
5   skw@browngold.com
    Jessica P. Weber
6   jweber@browngold.com
    Kevin D. Docherty
7   kdocherty@browngold.com
    Monica R. Basche
8   mbasche@browngold.com
    **BROWN, GOLDSTEIN & LEVY LLP**
9   120 East Baltimore Street, Suite 2500
    Baltimore, Maryland 21202
10  Phone: (410) 962-1030

11  *Attorneys for Plaintiffs*

12

13              **IN THE UNITED STATES DISTRICT COURT**
14          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15  ROY PAYAN, PORTIA MASON, THE          ) Case No.: 2:17-cv-01697-SVW(SKx)
    NATIONAL FEDERATION OF THE            )
16  BLIND, INC., and THE NATIONAL         ) **Civil Rights**
    FEDERATION OF THE BLIND OF            )
17  CALIFORNIA, INC.,                     ) **[PROPOSED] JOINT JURY**
                                          ) **INSTRUCTIONS; PLAINTIFFS'**
18              Plaintiffs,               ) **JURY INSTRUCTIONS;**
                                          ) **DEFENDANT'S JURY**
19  v.                                    ) **INSTRUCTIONS; VERDICT**
                                          ) **SHEETS**
20  LOS ANGELES COMMUNITY                 )
    COLLEGE DISTRICT,                     )
21                                        ) Final Pretrial Conf: May 15, 2023
                                          ) Time: 1:30 p.m.
22              Defendant.                ) Location: 350 W. 1st Street, Los
                                          ) Angeles, CA 90012
23                                        ) Courtroom 10A
                                          )
24                                        ) Action filed:  March 2, 2017
                                          ) Trial Date: May 23, 2023
25

26  _____

27

1

## INDEX OF JOINT JURY INSTRUCTIONS

2

| NO. | TITLE | SOURCE | PAGE |
|-----|-------|--------|------|
| | Claims and Defenses | 42 U.S.C. § 12132; 28 C.F.R. § 35.130; *Duvall v. Cnty. of Kitsap*, 260 F. 3d 1124, 1135 (9th Cir. 2001), *K.M. ex rel. Bright v. Tustin*, 725 F.3d 1088, 1096 (9th Cir. 2013). | 7 |
| | Title II of the ADA Elements | 42 U.S.C. § 12131; 42 U.S.C. § 12132; 28 C.F.R. § 35.104; *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). | 8 |

## INDEX OF PLAINTIFFS' JURY INSTRUCTIONS

| NO. | TITLE | SOURCE | PAGE |
|-----|-------|--------|------|
| | Title II of the Americans with Disabilities Act: Discrimination Prohibited | 42 U.S.C. § 12131; 42 U.S.C. § 12132; 28 C.F.R. § 35.104; 28 C.F.R. § 35.130(b)(1)(ii); *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002). | 10 |
| | Intent Not Required for Finding of Violation of Title II | 42 U.S.C. §§ 12131–12134; *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g*, (Oct. 11, 2001); *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016); *Updike v. Multnomah Cnty.*, 870 F.3d 939, 950–51 (9th Cir. 2017). | 15 |
| | Theories of Discrimination | *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (quoting *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016)). | 18 |
| | Disparate Treatment | 42 U.S.C. § 12132; 28 C.F.R. § 35.130; *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021); *McGary v. City of Portland*, 386 F.3d 1259, 1268–69 | 22 |

28

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| | | (9th Cir. 2004); *Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 733–35 (9th Cir. 1999); *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996). | |
| | Disparate Impact | 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7)(i); *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021); *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996); *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). | 25 |
| | Failure to Accommodate | 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7)(i); *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021); *Updike v. Multnomah Cnty.*, 870 F.3d 939, 951 (9th Cir. 2017); *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016); *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002); *Duvall v. Cnty. Of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g*, (Oct. 11, 2011) | 29 |
| | "Discrimination" Defined | 28 C.F.R. § 35.130(b)(1). | 33 |
| | Equally Effective Communication | 28 C.F.R. § 35.160 (a)–(b); *K.M. ex rel. Bright v. Tustin*, 725 F.3d 1088 (9th Cir. 2013). | 37 |
| | Auxiliary Aids and Services | 42 U.S.C. § 12103(1)(B); 28 C.F.R. § 35.104. | 41 |
| | Unlawful Methods of Administration | 28 C.F.R. § 35.130(b)(3). | 45 |
| | Organizational Plaintiffs | *Nat'l Fed'n of the Blind v. Target, Corp.*, 582 F. Supp. 2d 1185, 1191–92 (N.D. Cal. 2007). | 49 |

| NO. | TITLE | SOURCE | PAGE |
|-----|-------|--------|------|
|  | Damages Available for Violations of Title II of the ADA | 42 U.S.C. §§ 12131–12134; 29 U.S.C. § 794(b)(2)(B); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g*, (Oct. 11, 2001); *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016); *Updike v. Multnomah Cnty.*, 870 F.3d 939, 950–51 (9th Cir. 2017). | 52 |
|  | Damages—Proof | Ninth Circuit Pattern Jury Instructions Civil, No. 5.1 & 5.2. | 56 |
|  | Damages Arising in the Future – Discount to Present Cash Value | Model Civil Jury Instruction for the District Courts of the Ninth Circuit, Civil Instruction No. 5.4; *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 449-42 (1988); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 508-09 (9th Cir. 2000). | 61 |

**INDEX OF DEFENDANT'S JURY INSTRUCTIONS**

| NO. | TITLE | SOURCE | PAGE |
|-----|-------|--------|------|
|  | Disparate Impact | 28 C.F.R. §§ 35.130(b)(7)(i), 35.150(a)(3), and 35.164; *Alexander v. Choate*, 469 U.S. 287, 301–02 (1985); *Crowder v. Kitigawa*, 81 F.3d 1480, 1484–85 (9th Cir. 1996); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013); *Townsend v. Quasim*, 328 F.3d 511, 518–20 (9th Cir. 2003); *Olmstead v. Zimring*, 527 U.S. 581 (1999) (plurality opinion); *Toledo v. Sanchez*, 454 F.3d 24, 32, 39–40 (1st Cir. 2006), *cert. denied* 549 U.S. 1301 (recognizing undue burden as an available defense under Title II). | 67 |
|  | Reasonable Accommodations | 28 C.F.R. §§ 35.130(b)(7)(i), 35.150(a)(3), and 35.164; *Wong v. Regents of University* | 71 |

| NO. | TITLE | SOURCE | PAGE |
|-----|-------|--------|------|
|  |  | *of California*, 192 F.3d 807, 817–19 (9th Cir. 1999) (recognizing that approving an alternative modification to the one requested meets an educational institution's obligations under the ADA); *Crowder v. Kitigawa*, 81 F.3d 1480, 1485 (9th Cir. 1996); *Townsend v. Quasim*, 328 F.3d 511, 518–20 (9th Cir. 2003); *Olmstead v. Zimring*, 527 U.S. 581 (1999) (plurality opinion); *Toledo v. Sanchez*, 454 F.3d 24, 32 (1st Cir. 2006), *cert. denied* 549 U.S. 1301 (recognizing undue burden as an available defense under Title II). |  |
|  | Proof of Intent | 42 U.S.C. §§ 12131–12134; 29 U.S.C. § 794; *Ferguson v. City of Phoenix*, 157 F.3d 668, 673–74 (9th Cir. 1998); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). | 77 |
|  | Damages – Proof | Model Civil Jury Instruction for the District Courts of the Ninth Circuit, Civil Instruction Nos. 5.1 & 5.2. | 79 |
|  | Damages Arising in the Future – Discount to Present Cash Value | Model Civil Jury Instruction for the District Courts of the Ninth Circuit, Civil Instruction No. 5.4. | 81 |
|  | Affirmative Defense – Duty to Mitigate Damages | Model Civil Jury Instruction for the District Courts of the Ninth Circuit, Civil Instruction No. 5.3; 42 U.S.C. § 12117; 42 U.S.C.A. § 12133; 29 U.S.C. § 794a; *Picinich v. United Parcel Service*, 583 F.Supp.2d 336 (N.D.N.Y. 2008); *Brown v. Smith*, 827 F.3d 609 (7th Cir. 2015); *E.E.O.C. v. Western Trading Co., Inc.*, 291 F.R.D. 615 (D. Colo. 2013); *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F.Supp.3d 1269 (D. Kan. 2016). | 83 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INDEX OF VERDICT SHEETS**

| NO. | TITLE | SOURCE | PAGE |
|-----|-------|--------|------|
|  | Plaintiffs' Proposed Verdict Sheet |  | 87 |
|  | Defendant's Proposed Verdict Sheet |  | 92 |

The Parties hereby submit their [Proposed] Joint Jury Instructions.

**Joint Proposed Jury Instruction No. 1**

**CLAIMS AND DEFENSES**

A brief summary of the positions of the Parties:

Individual Plaintiffs Roy Payan and Portia Mason and organizational Plaintiffs the National Federation of the Blind and the National Federation of the Blind of California ("Plaintiffs") claim that Defendant, the Los Angeles Community College District ("Defendant" or "the District") has violated its obligations under Title II of the Americans with Disabilities Act by denying Mr. Payan and Ms. Mason an equal opportunity to fully participate in or receive the benefits of the educational programs and services it offers students by reason of their blindness and by failing to communicate effectively with blind students.

Plaintiffs have the burden of proving that by reason of their blindness, Mr. Payan and Ms. Mason were excluded from or denied the benefits of the District's programs and services offered to sighted students.

Defendant denies those claims.

I will now explain each element of Plaintiffs' claims.

**Authority:** 42 U.S.C. § 12132; 28 C.F.R. § 35.130; *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *K.M. ex rel. Bright v. Tustin*, 725 F.3d 1088, 1096 (9th Cir. 2013).

**Joint Proposed Jury Instruction No. 2**

**TITLE II OF THE ADA ELEMENTS**

To establish a claim under Title II of the Americans with Disabilities Act, or ADA, the individual Plaintiffs must prove:

(1)    They are qualified individuals with disabilities;

(2)    They were either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or were otherwise discriminated against by the public entity; and

(3)    Such exclusion, denial of benefits, or discrimination was by reason of their disability.

Plaintiffs and Defendant agree that Mr. Payan and Ms. Mason are qualified individuals with disabilities and that the District is a public entity.

**Authority**: 42 U.S.C. § 12131; 42 U.S.C. § 12132; 28 C.F.R. § 35.104; *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

Patricia Barbosa (SBN 125685)
pbarbosa@barbosagrp.com
**Barbosa Group**
606 Lake Street, #9
Huntington Beach, California 92648
Phone: (714) 465-9486

Sharon Krevor-Weisbaum
skw@browngold.com
Kevin D. Docherty
kdocherty@browngold.com
Jessica P. Weber
jweber@browngold.com
**BROWN, GOLDSTEIN & LEVY LLP**
120 East Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Phone: (410) 962-1030

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

ROY PAYAN, PORTIA MASON, THE
NATIONAL FEDERATION OF THE
BLIND, INC., and THE NATIONAL
FEDERATION OF THE BLIND OF
CALIFORNIA, INC.,

    Plaintiffs,

v.

LOS ANGELES COMMUNITY
COLLEGE DISTRICT,

    Defendant.

Case No.: 2:17-cv-01697-SVW(SKx)

**Civil Rights**

**[PROPOSED] PLAINTIFFS'
JURY INSTRUCTIONS**

Pretrial Conference Date: May 15,
2023
Time: 1:30 p.m.
Location: 350 W. 1st Street
Los Angeles, CA 90012
Courtroom 10A

**Trial Date: May 23, 2023**

Plaintiffs hereby submit their [Proposed] Jury Instructions.

**Plaintiffs' Proposed Jury Instruction No. 3**

**TITLE II OF THE AMERICANS WITH DISABILITIES ACT:**

**DISCRIMINATION PROHIBITED**

Plaintiffs seek relief under Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12131, *et seq.*) for alleged discrimination. Title II prohibits public entities, including the District and each of its colleges, from discriminating against individuals with disabilities. Title II of the ADA requires the District to provide Mr. Payan and Ms. Mason with an opportunity equal to that offered to sighted students to participate in and receive the benefits of the programs and services offered by the District. The law provides that:

No qualified individual with a disability shall, by reason of such disability:

(1)    Be excluded from participation in the services, programs, or activities of a public entity; or,

(2)    Be denied the benefits of the services, programs, or activities of a public entity; or

(3)    Be subjected to discrimination by any public entity.

The definition of a "public entity" includes any instrumentality of a state or local government, including a community college district.

**Authority**: 42 U.S.C. § 12131; 42 U.S.C. § 12132; 28 C.F.R. § 35.104; 28 C.F.R. § 35.130(b)(1)(ii); *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002).

**Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 3
("TITLE II OF THE AMERICANS WITH DISABILITIES ACT:
DISCRIMINATION PROHIBITED")**

Defendant maintains its objection to the second sentence of the proposed instruction because it improperly suggests to the jury that Plaintiffs' experience at the college has to be "equal to that offered to sighted students," whereas the elements of various causes of action under Title II of the ADA do not require this - for example, if a proposed modification is not "reasonable," then a duty does not exist for an educational institution to provide it. *See Crowder v. Kitagawa*, 81 F.3d 1480, 1481 (9th Cir. 1996). In that circumstance, a sight-impaired student's experience will not be the same as that of a sighted student, although the educational institution will have complied with Title II. Although 28 C.F.R. section 35.l30(b)(l)(ii) uses the phrase "equal to," its use as an instruction is out-of-context and without connection to what element of a theory of liability the jury is considering. Accordingly, the use of the phrase from the regulations will confuse the jury to the prejudice of Defendant.

Without connection to a particular element of a cause of action, the use of the regulation does not correctly state the law. *See Bird v. Lewis & Clark College*, 303 F.3d 1015, 1022 (9th Cir. 2002) (plaintiff's proposed jury instructions in Title III ADA case "based in part on federal regulations" were properly omitted because "the proposed instructions overall misstate the law").

The phrase "each of its colleges" in the second sentence of the proposed instruction is objectionable because only Los Angeles City College, and certainly not District-wide resources, are at issue in this case.

1
2
3

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 3[1]**

**("TITLE II OF THE AMERICANS WITH DISABILITIES ACT:**

**<u>DISCRIMINATION PROHIBITED</u>")**

4
5
6
7
8
9
10
11
12
13
14
15
16

The second sentence of this proposed instruction accurately reflects the affirmative obligation Title II places on public entities, such as Defendant, to provide equal opportunity. *See* 28 C.F.R. § 35.130(b)(1)(ii) ("A public entity . . . may not . . . afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not *equal* to that afforded others.") (emphasis added); *see also* 28 C.F.R. § 35.160(a)(1) ("A public entity *shall* take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are *as effective* as communications with others." (emphasis added)); 28 C.F.R. § 35.160(b)(1) ("A public entity *shall* furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an *equal opportunity* to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." (emphasis added)).

17
18
19
20
21
22
23
24
25
26
27

---

[1] Defendant's position is that the Court's Civil Trial Preparation Order (Dkt. #493) does not request a further statement from the parties in response to the objections already asserted to the parties' respective jury instructions.  Defendant's position is that such a further statement is not appropriate.  Should the Court require further comment, Defendant's will provide at the Pretrial Conference. Plaintiff's position is that the parties provided additional statements in support of their proposed jury instructions when last submitted (ECF No. 191) and Plaintiffs have continued with this prior convention. Furthermore, Plaintiffs first proposed exchanging responses to objections to jury instructions to Defendant on May 5 and Defendant confirmed that same day that Plaintiffs' proposed schedule for exchanging proposed jury instructions, objections, and responses was "workable." The first time Defendant notified Plaintiffs that it did not believe the parties should respond to each other's objections was on the date they had agreed to exchange them: May 11, 2023.

28

A defendant like LACCD discriminates against individuals with disabilities when it violates the regulations that interpret Title II. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013)  ("Consequently, in determining whether K.M. and D.H. were denied meaningful access to the school's benefits and services, we are guided by the specific standards of the Title II effective communications regulation."); *A.G.*, 815 F.3d at 1204 ("We have held that a plaintiff may establish denial of 'meaningful access' under . . . Title II by showing there was a violation of one of the regulations implementing section 504, if such violation denied the plaintiff meaningful access to a public benefit." (internal quotation marks and citation omitted)).

In addition, the Ninth Circuit has held that the Title II regulations are entitled to deference. In applying the Title II regulations, the Ninth Circuit stated that not only are they "not manifestly contrary to the statute, . . . they reflect the fairest reading of the statute." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1067 (9th Cir. 2010); *see also Bright*, 725 F.3d at 1096 (affording Title II regulations "controlling weight"). Indeed, Congress expressly mandated that the Department of Justice model the Title II regulations after the already-existing Section 504 regulations. *See* 42 U.S.C. § 12134 (ordering the DOJ to promulgate regulations that "shall be consistent with regulations and analysis" in 28 C.F.R. parts 39 and 41. Courts have therefore held that the Title II regulations carry "the force of law." *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir. 1995); *see Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1307 n.1 (10th Cir. 1999); *Rodriguez v. DeBuono*, 44 F. Supp. 2d 601, 621 (S.D.N.Y. 1999), *rev'd on other grounds sub nom. Rodriguez v. City of N.Y.*, 197 F.3d 611 (2d Cir. 1999). Accordingly, Plaintiffs have properly incorporated language from the Title II regulations into this instruction.

1    Finally, because LACCD—not merely Los Angeles City College—is the

2   Defendant in this case, this instruction appropriately refers to LACCD as a whole,

3   including each of its colleges. Issues such as the accessibility of library resources, the

4   LACCD website, and other technology procured at the District-level extend beyond

5   Los Angeles City College and implicate LACCD as a whole, including each of its

6   colleges.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**Plaintiffs' Proposed Jury Instruction No. 4**

**INTENT NOT REQUIRED FOR FINDING OF VIOLATION OF TITLE II**

3

4

5

    Plaintiffs do not need to prove the Defendant's actions or omissions were intentional discrimination or the result of ill will towards Plaintiffs in order for you to find a violation of Title II of the ADA.

6

7

8

9

10

**Authority**: 42 U.S.C. §§ 12131–12134; *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g*, (Oct. 11, 2001); *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016); *Updike v. Multnomah Cnty.*, 870 F.3d 939, 950–51 (9th Cir. 2017).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3

**Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 4 ("INTENT NOT REQUIRED FOR FINDING OF VIOLATION OF TITLE II")**

4
5
6
7
8
9

Defendant maintains its objection to the proposed instruction in its entirety. The language and phrasing does not appear in the case law cited, and instead the Court should instruct the jury on the elements of various causes of action approved by Ninth Circuit authority. See Defendant's Proposed Instruction Nos. 1-3, at pp. 5-8, filed August 22, 2022 (Dckt. 441),

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 4**
**("INTENT NOT REQUIRED FOR**
**FINDING OF VIOLATION OF TITLE II")**

Because the jury will decide liability—which does not require a finding of intent—and separately whether Defendant's violation of Title II was intentional (a prerequisite for awarding damages), this instruction is necessary to ensure that the jury does not confuse the two questions and mistake intentionality as a requirement for finding that Defendant violated Title II. The authority Plaintiffs cite in support of this instruction makes clear that no finding of intentional discrimination or ill will is necessary to establish a violation of Title II and the instruction is consistent with this.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Proposed Revised Jury Instruction No. 5**

**THEORIES OF DISCRIMINATION**

There are three ways that a qualified individual with a disability can prove that he or she was discriminated against by a public entity. They are commonly referred to as: disparate treatment, disparate impact, and failure to accommodate. These three theories have significant overlap but require slightly different proof. You should consider the evidence in this case under as many of the theories as you find useful in deciding whether Defendant discriminated against the individual Plaintiffs. I will explain each of them to you in more detail now.

**Authority**: *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (quoting *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 5
(<u>"THEORIES OF DISCRIMINATION"</u>)**

Defendant maintains its objection to the phrase:  "You should consider the evidence in this case under as many of the theories as you find useful in deciding whether Defendant discriminated against the individual Plaintiffs." The citation from the *Payan* case does not support this statement, and instead merely cites three theories of liability. See *Payan v. Los Angeles Cmly. Coll. Dist.*, ll F.4th 729, 738 (9th Cir. 2021) ("A disability discrimination claim may be based on "one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation) (quoting *Davis v. Snalz*, 821 F.3d231, 260 (2d Cir. 2016)). This part of the instruction would, in fact, directly contradict the Ninth Circuit's holding in *Payan,* which was that it constituted error for the trier of fact to adjudicate some claims as disparate impact claims and others as reasonable accommodation claims. *See id.* at 739 ("Where a plaintiff challenges a program's policy or practice of failing to remedy systemic barriers, rather than the individual's experience with requesting accommodations to address those barriers, this type of claim is more appropriately evaluated under the disparate impact framework than the failure to reasonably accommodate framework."). This Court must make decisions on which theories apply to which factual claims by Plaintiffs, and Plaintiffs' contention that this should be left to the jury is wrong.

In addition, the first part of this instruction is flawed as well, to the extent that it allows the jury to consider a theory of "disparate treatment." The theory was not asserted in the prior trial and would result in an expansion of liability in the re-trial and a potential change in the scope of the case not authorized by the Ninth Circuit. The Ninth Circuit, in considering the prior judgment, mentioned the disparate impact

theory as background, but analyzed case issues using only the two theories: disparate impact and reasonable accommodation. *Payan*, 11 F.4th at 737-40, *see id*. at 740 ("On remand, the district court is instructed to reconsider Plaintiffs' individual claims under either the disparate impact framework or the individual failure to accommodate framework, depending on the nature of the specific claim, and to permit Plaintiffs to introduce evidence to support these claims under either framework") (emphasis added). The theories of liability on re-trial should be limited to these two. The instruction, if allowed, should be modified accordingly.

Finally, this Court has already specified which theories (i.e., disparate impact, reasonable accommodation) will apply to which of the nine factual contentions at issue in this case.  The proposed instruction directly contradicts this Court's order by leaving it to the jury to decide which legal theory to apply to which factual contention.

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 5 (<u>"THEORIES OF DISCRIMINATION"</u>)**

Defendant's objection to the mention of disparate treatment is no longer applicable given that this Court has ruled that the element of Plaintiffs' claim involving redirecting blind students from certain professors who did not, or would not, accommodate blind students falls under the disparate treatment theory. Plaintiffs' Order Regarding Def.'s Mots. in Limine & Pls.' Mot. to Strike at 3 (Oct. 26, 2022), ECF No. 460. Accordingly, disparate treatment is appropriately at issue in this case.

Furthermore, this instruction's language advising the jury that they should "consider the evidence in this case under as many of the theories as you find useful in deciding whether Defendant discriminated against the individual Plaintiffs," is consistent with the Ninth Circuit's decision in this case holding that Plaintiffs were improperly limited in their presentation of their claims in the first trial. *Payan v. Los Angeles. Cmty. Coll. Dist.*, 11 F.4th 729, 739–740 (9th Cir. 2021). "Our case law provides no justification for limiting disability discrimination claims to only the failure to accommodate theory of liability in the higher education context. But here, the district court erred in requiring Plaintiffs to present all of their claims as disparate impact claims." *Id.* at 739. This portion of the instruction is also consistent with the Court's recognition that all three theories of discrimination are at issue in this case. *See* Pretrial Order at 2–3 (Oct. 4, 2022), ECF No. 453; Order Regarding Def.'s Mots. in Limine & Pls.' Mot. to Strike at 3 (Oct. 26, 2022), ECF No. 460. Accordingly, Plaintiffs have proposed additional instructions explaining each theory (*see infra* Plaintiffs' Jury Instructions Nos. 6–8) and this instruction appropriately instructs the jury that it should consider the evidence under these three theories as is useful to them.

1
2

**Plaintiffs' Proposed Jury Instruction No. 6**

**DISPARATE TREATMENT**

3
4
5

Disparate treatment results from facially discriminatory policies or conduct; that is, policies or conduct that explicitly treat those with a disability less favorably than those without a disability.

6

To prove discrimination by disparate treatment a plaintiff must show:

7
8

      (1)     A policy or conduct that explicitly treated individuals with disabilities differently than those without disabilities; and,

9
10

      (2)     The different treatment denied the plaintiff an equal opportunity to access public programs or services.

11
12
13
14
15
16

**Authority**: 42 U.S.C. § 12132; 28 C.F.R. § 35.130; *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021); *McGary v. City of Portland*, 386 F.3d 1259, 1268–69 (9th Cir. 2004); *Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 733–35 (9th Cir. 1999); *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996).

17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 6 ("<u>DISPARATE TREATMENT</u>")**

Defendant maintains its objection to the instruction for the reasons set forth in Defendant's response to Plaintiff's Proposed Instruction No. 5. *Payan,* 11 F.4th at 740 ("On remand, the district court is instructed to reconsider Plaintiffs' individual claims under either the disparate impact framework or the individual failure to accommodate framework ... "). The jury should not be instructed on disparate treatment at all.

In addition, the instruction does not include any discussion of the intent required for a disparate treatment claim, which involves intentional discrimination by a defendant. This instruction also contradicts jury instruction no. 4, which Defendant believes should be stricken in its entirety. The citations do not support the statement offered as an instruction.

1
2

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 6**
**("DISPARATE TREATMENT")**

3
4
5
6
7
8
9

Defendant's objection that the jury should not be instructed on disparate treatment at all is no longer applicable given that this Court has ruled that the element of Plaintiffs' claim involving redirecting blind students from certain professors who did not, or would not, accommodate blind students falls under the disparate treatment theory. Order Regarding Def.'s Mots. in Limine & Pls.' Mot. to Strike at 3 (Oct. 26, 2022), ECF No. 460. Accordingly, disparate treatment is appropriately at issue in this case.

10
11
12
13
14
15
16
17
18

Defendant's objection that this instruction does not include a discussion of intent misunderstands the elements needed to establish a disparate treatment claim. As this Court set forth previously, Plaintiffs need not show ill will or intent beyond establishing that Defendant maintained a policy or exhibited conduct that "explicitly treated disabled individuals differently than non-disabled individuals." Order Regarding Further Proceedings at 5 (Aug. 10, 2022), ECF No. 437. It is this explicit difference in treatment—rather than any showing of malice or ill will—that is required to establish disparate treatment. Plaintiffs' proposed instruction properly reflects the elements required to prove disparate treatment.

19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Proposed Jury Instruction No. 7**

**DISPARATE IMPACT**

Disparate impact involves a facially neutral policy or conduct—that is, a policy or conduct that does not explicitly treat individuals with disabilities differently from individuals without disabilities—that nonetheless denies individuals with disabilities an equal opportunity to access public programs or services.

To prove discrimination by disparate impact a plaintiff must show:

(1)    A facially neutral policy or conduct had the effect of denying an equal opportunity to access public programs or services to those with disabilities; and,

(2)    The public entity could make "reasonable modifications" to its policies or conduct that are necessary to avoid or remedy the discrimination.

Under a disparate impact theory of discrimination, the plaintiff bears the burden of proving by a preponderance of the evidence that the proposed modification is reasonable and necessary to provide the plaintiff with an equal opportunity to access the defendant's services.

**Authority**: 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7)(i); *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021); *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996); *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002).

1
2

**Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 7**

**("DISPARATE IMPACT")**

3

4

5

6

7

8

9

Defendant maintains its objection to the instruction because it omits any reference to the concept of "fundamental alternation."[2] See Defendant's Proposed Instruction No. 1, at p.5, filed August 22, 2022 (Dckt. 441), *KM ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1101 (9th Cir. 2013) (Title II "does not require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens.") (quoting 28 C.F.R. § 35.l64).

10

11

12

In addition, Defendant's proposed instruction constitutes a more neutral and accurate statement of the law. The term "avoid" should also be deleted as not supported by the citations offered

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

---

[2] Defendant acknowledges the Court's order striking "undue burden" affirmative defense which is deleted from the version of jury instructions provided to Plaintiff on May 8, 2023.  See also Dckt. 519.

28

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 7**

**("DISPARATE IMPACT")**

This instruction properly omits reference to "fundamental alteration" because Defendant abandoned this affirmative defense in its two recent pre-trial filings. *Compare* Am. Answer ¶ 122 (pleading Defendant's Second Affirmative Defense that "the remedies sought by plaintiffs would result in a fundamental alteration"), *with* Def.'s Mem. of Contentions of Fact and Law at 23–26, ECF No. 519 (omitting Defendant's Second Affirmative Defense from list of affirmative defenses being pursued), *and* Proposed Final Pretrial Conference Order at 11–13, ECF No. 522-1 (omitting Defendant's Second Affirmative Defense from list of affirmative defenses being pursued). Defendant cannot abandon its fundamental alteration affirmative defense, but then insist on mentioning the term in its proposed jury instructions.

To the extent Defendant maintains its fundamental alteration defense is an elements defense, rather than an affirmative defense, it is mistaken. "[F]undamental alteration" is an "affirmative defense for which the asserting public entity bears the burden of proof." *Martinez v. Cnty. of Alameda*, 512 F. Supp. 3d 978, 985 (N.D. Cal. 2021); *see also K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1096–97 (9th Cir. 2013) ("The public entity has the burden to prove that a proposed action would result in . . . fundamental alteration . . . ."). Thus, if Defendant intended to pursue this defense, it should have included it as an affirmative defense in its recent pretrial filings.

For the reasons stated in Plaintiffs' objection to Defendant's Proposed Jury Instruction No. 17, *infra*, Plaintiffs' disparate impact instruction more accurately describes this legal theory by: (a) adhering to the language of the Title II regulations requiring equal opportunity to access programs and services, *see* 28 C.F.R. §

---

1   35.130(b)(1)(ii); (b) omitting Defendant's incorrect definition of "reasonable"; and

2   (c) excluding reference to Defendant's abandoned fundamental alteration defense.

3          As for Defendant's prior objection to including the word "avoid" in this

4   instruction, this word does not appear in the instruction above.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Plaintiffs' Proposed Jury Instruction No. 8
### FAILURE TO ACCOMMODATE

To prove discrimination under a failure to accommodate theory, a plaintiff must show:

    (1)    They were denied an equal opportunity to access a public program or service because they lacked an accommodation for their disability;

    (2)    A reasonable accommodation was available; and,

    (3)    The public entity was on notice of the need for a reasonable accommodation and did not provide one.

Under a failure to accommodate theory, the plaintiff bears the burden of proving by a preponderance of the evidence that the proposed accommodation is reasonable and necessary to provide the plaintiff with an equal opportunity to access defendant's programs or services.

To prove that the defendant was on notice, a plaintiff does not have to show that they requested a specific accommodation at the time they were denied access to the defendant's services. It is sufficient for the plaintiff to show that the defendant was aware that the plaintiff required an accommodation or was being denied access to the defendant's programs or services due to the plaintiff's disability.

**Authority**: 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7)(i); *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021); *Updike v. Multnomah Cnty.*, 870 F.3d 939, 951 (9th Cir. 2017); *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016); *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002); *Duvall v. Cnty. Of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g*, (Oct. 11, 2011).

**Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 8**

**("FAILURE TO ACCOMMODATE")**

Defendant maintains its objection because it omits any reference to the concept of "fundamental alteration." See Defendant's Proposed Instruction No. 2, at pp. 6-7, filed August 22, 2022 (Dckt. 441), *KM ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1101 (9th Cir. 2013) (Title II "does not require a public entity to take any action that it can demonstrate would result in a fundamental alteration[3] in the nature of a service, program, or activity or in undue financial and administrative burdens.") (quoting 28 C.F.R. § 35.l64).

The proposed instruction further omits that if a public entity does not defer to the plaintiff's request for a specific accommodation, then the burden is on the entity to demonstrate that another effective means of communication exists or that the requested accommodation would otherwise not be required. *Updike v. Multnomah Cnty.*, 870 F.3d 939, 951 (9th Cir. 2017),

In addition, Defendant's proposed instruction constitutes a more neutral and accurate statement of the law.

---

[3] Defendant acknowledges the Court's order striking "undue burden" affirmative defense which is deleted from the version of jury instructions provided to Plaintiff on May 8, 2023.  See also Dckt. 519.

*Payan, et al. v. LACCD*, Case No.:  2:17-cv-01697- SVW(SKx)
PROPOSED JURY INSTRUCTIONS AND VERDICT SHEETS

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 8**

**("FAILURE TO ACCOMMODATE")**

This instruction properly omits reference to "fundamental alteration" because Defendant abandoned this affirmative defense in its two recent pre-trial filings. *Compare* Am. Answer ¶ 122 (pleading Defendant's Second Affirmative Defense that "the remedies sought by plaintiffs would result in a fundamental alteration"), *with* Def.'s Mem. of Contentions of Fact and Law at 23–26, ECF No. 519 (omitting Defendant's Second Affirmative Defense from list of affirmative defenses being pursued), *and* Proposed Final Pretrial Conference Order at 11–13, ECF No. 522-1 (omitting Defendant's Second Affirmative Defense from list of affirmative defenses being pursued). Defendant cannot abandon its fundamental alteration affirmative defense, but then insist on mentioning the term in its proposed jury instructions.

To the extent Defendant maintains its fundamental alteration defense is an elements defense, rather than an affirmative defense, it is mistaken. "[F]undamental alteration" is an "affirmative defense for which the asserting public entity bears the burden of proof." *Martinez v. Cnty. of Alameda*, 512 F. Supp. 3d 978, 985 (N.D. Cal. 2021); *see also K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1096–97 (9th Cir. 2013) ("The public entity has the burden to prove that a proposed action would result in . . . fundamental alteration . . . ."). Thus, if Defendant intended to pursue this defense, it should have included it as an affirmative defense in its recent pretrial filings.

Defendant's objection that the instruction does not state that if a public entity does not defer to the plaintiff's request for a specific accommodation, it then bears the burden to demonstrate that another effective means of communication exists or that the requested accommodation would not otherwise be required is also unavailing. Inclusion of such language would incorrectly suggest that Defendant is not required

---

*Payan, et al. v. LACCD*, Case No.:  2:17-cv-01697- SVW(SKx)
PROPOSED JURY INSTRUCTIONS AND VERDICT SHEETS

1   to provide *any* accommodation if an accommodation that is equally effective as the
2   one Plaintiffs have requested is available. Plaintiffs' proposed instruction already
3   notes that "plaintiff bears the burden of proving . . . that the proposed accommodation
4   is reasonable and *necessary*." (emphasis added). Thus, the instruction anticipates that
5   Defendant may argue that a requested accommodation was not necessary (and thus
6   need not have been provided).

7       Additionally, for the reasons stated in Plaintiffs' objection to Defendant's
8   Proposed Jury Instruction No. 18, *infra*, Plaintiff's failure to accommodate instruction
9   more accurately describes this legal theory by: (a) adhering to the language of the
10  Title II regulations requiring equal opportunity to access programs and services, *see*
11  28 C.F.R. § 35.130(b)(1)(ii); (b) omitting Defendant's incorrect definition of
12  "reasonable," and confusing and misleading references to Defendant's "standards";
13  and (c) excluding reference to Defendant's abandoned fundamental alteration
14  defense.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Proposed Jury Instruction No. 9**

**"DISCRIMINATION" DEFINED**

General prohibitions against discrimination by a public entity include:

(1)    Denying a qualified individual with a disability the opportunity to participate in or benefit from an aid, benefit, or service;

(2)    Affording a qualified individual with a disability an opportunity to participate in or benefit from an aid, benefit, or service that is not equal to that afforded others;

(3)    Providing a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others; or

(4)    Otherwise limiting a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

**Authority**: 28 C.F.R. § 35.130(b)(1).

1

2

**Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 9**

**(<u>"DISCRIMINATION" DEFINED</u>)**

3   Defendant maintains its objection because the proposed instruction is based on

4   an incomplete citation to a regulation rather than upon statutory or binding case

5   precedent. Among other things, the instruction suggests to the jury that it can find

6   liability simply by finding that the District did not abide by one of the four highly

7   general items listed, without reference to other important elements required for

8   liability. For example, under a disparate impact theory, if a proposed modification is

9   not "reasonable," then a duty does not exist for an educational institution to provide

10   it. See *Crowder v. Kitagawa*, 81 F.3d 1480, 27 1481 (9th Cir. 1996). Without

11   connection to a particular element of a cause of action, the use of the regulation does

12   not correctly state the law, and is confusing and prejudicial. *See Bird v. Lewis &*

13   *Clark College*, 303 F.3d 1015, 1022 (9th Cir. 2002) (plaintiffs proposed jury

14   instructions in Title III ADA case "based in part on federal regulations" were properly

15   omitted because "the proposed instructions overall misstate the law").

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 9
(<u>"DISCRIMINATION" DEFINED</u>)**

Notably, Defendant agreed to jointly propose this exact instruction before the last jury trial. *See* Revised [Proposed] Joint Jury Instructions at 11, ECF No. 191 (Joint Proposed Jury Instruction No. 6 ("'Discrimination' Defined")). Thus, any objection to this language has now been waived.

Nevertheless, Defendant's belated objection to this previously-agreed-upon language is unavailing. This instruction properly draws on language from the Title II regulations. Under Ninth Circuit precedent, Plaintiffs can prove Defendant discriminated against them by demonstrating that Defendant violated a specific regulation promulgated for their benefit under Title II. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013)  ("Consequently, in determining whether K.M. and D.H. were denied meaningful access to the school's benefits and services, we are guided by the specific standards of the Title II effective communications regulation."); *A.G.*, 815 F.3d at 1204 ("We have held that a plaintiff may establish denial of 'meaningful access' under . . . Title II by showing there was a violation of one of the regulations implementing section 504, if such violation denied the plaintiff meaningful access to a public benefit." (internal quotation marks and citation omitted)).

In addition, the Ninth Circuit has held that the Title II regulations are entitled to deference. In applying the Title II regulations, the Ninth Circuit stated that not only are they "not manifestly contrary to the statute, . . . they reflect the fairest reading of the statute." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1067 (9th Cir. 2010); *see also Bright*, 725 F.3d at 1096 (affording Title II regulations "controlling weight"). Indeed, Congress expressly mandated that the Department of Justice model the Title II regulations after the already-existing Section 504 regulations. *See* 42

U.S.C. § 12134 (ordering the DOJ to promulgate regulations that "shall be consistent with regulations and analysis" in 28 C.F.R. parts 39 and 41. Courts have therefore held that the Title II regulations carry "the force of law." *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir. 1995); *see Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1307 n.1 (10th Cir. 1999); *Rodriguez v. DeBuono*, 44 F. Supp. 2d 601, 621 (S.D.N.Y. 1999), *rev'd on other grounds sub nom. Rodriguez v. City of N.Y.*, 197 F.3d 611 (2d Cir. 1999). Accordingly, Plaintiffs have properly incorporated language from the Title II regulations into this instruction.

Furthermore, this instruction helpfully defines "discrimination" for the jury—part of the third element of a Title II claim—by providing specific examples. This instruction thus supplements, and does not displace, the parties' Joint Jury Instruction No. 2 setting forth the three elements of a Title II claim.

**Plaintiffs' Proposed Jury Instruction No. 10**

**EQUALLY EFFECTIVE COMMUNICATION**

The District has an affirmative obligation to take appropriate steps to ensure that communications with blind applicants, participants, members of the public, and companions are as effective as communications with others.

The District is required to furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.

The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. In determining what types of auxiliary aids and services are necessary, the District is required to give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

**Authority**: 28 C.F.R. § 35.160 (a)–(b); *K.M. ex rel. Bright v. Tustin*, 725 F.3d 1088 (9th Cir. 2013).

1

2

## **Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 10 ("EQUALLY EFFECTIVE COMMUNICATION")**

3   Defendant maintains its objection to the proposed instruction because it is

4   based on a regulation rather than upon statutory or binding case precedent. Defendant

5   objects to the proposed instruction, which does not state the complete language of the

6   regulation, because it suggests to the jury that it can find liability simply by finding

7   that the District did not abide by very general items listed in the regulation cited as

8   support, without reference to other important elements required for liability. For

9   example, under a disparate impact theory, if a proposed modification is not

10  "reasonable," then a duty does not exist for an educational institution to provide it.

11  *See Crowder v. Kitagawa*, 81 F.3d 1480, 1481 (9th Cir. 1996). Without connection to

12  a particular element of a cause of action, the use of the regulation does not correctly

13  state the law, and is confusing and prejudicial. *See Bird v. Lewis & Clark College*,

14  303 F.3d 1015, 1022 (9th Cir. 2002) (plaintiff's proposed jury instructions in Title III

15  ADA case "based in part on federal regulations" were properly omitted because "the

16  proposed instructions overall misstate the 1aw").

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 10
("EQUALLY EFFECTIVE COMMUNICATION")**

Notably, Defendant agreed to jointly propose this exact instruction before the last jury trial. *See* Revised [Proposed] Joint Jury Instructions at 12, ECF No. 191 (Joint Proposed Jury Instruction No. 7 ("Equally Effective Communication")). Thus, any objection to this language has now been waived.

Nevertheless, Defendant's belated objection to this previously-agreed-upon language is unavailing. This instruction properly draws on language from the Title II regulations. Under Ninth Circuit precedent, Plaintiffs can prove Defendant discriminated against them by demonstrating that Defendant violated a specific regulation promulgated for their benefit under Title II. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013)  ("Consequently, in determining whether K.M. and D.H. were denied meaningful access to the school's benefits and services, we are guided by the specific standards of the Title II effective communications regulation."); *A.G.*, 815 F.3d at 1204 ("We have held that a plaintiff may establish denial of 'meaningful access' under . . . Title II by showing there was a violation of one of the regulations implementing section 504, if such violation denied the plaintiff meaningful access to a public benefit." (internal quotation marks and citation omitted)).

In addition, the Ninth Circuit has held that the Title II regulations are entitled to deference. In applying the Title II regulations, the Ninth Circuit stated that not only are they "not manifestly contrary to the statute, . . . they reflect the fairest reading of the statute." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1067 (9th Cir. 2010); *see also Bright*, 725 F.3d at 1096 (affording Title II regulations "controlling weight"). Indeed, Congress expressly mandated that the Department of Justice model the Title II regulations after the already-existing Section 504 regulations. *See* 42

U.S.C. § 12134 (ordering the DOJ to promulgate regulations that "shall be consistent with regulations and analysis" in 28 C.F.R. parts 39 and 41. Courts have therefore held that the Title II regulations carry "the force of law." *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir. 1995); *see Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1307 n.1 (10th Cir. 1999); *Rodriguez v. DeBuono*, 44 F. Supp. 2d 601, 621 (S.D.N.Y. 1999), *rev'd on other grounds sub nom. Rodriguez v. City of N.Y.*, 197 F.3d 611 (2d Cir. 1999). Accordingly, Plaintiffs have properly incorporated language from the Title II regulations into this instruction.

Furthermore, this instruction helpfully defines "discrimination" for the jury—part of the third element of a Title II claim—by providing specific examples. This instruction thus supplements, and does not displace, the parties' Joint Jury Instruction No. 2 setting forth the three elements of a Title II claim.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Proposed Jury Instruction No. 11**

**AUXILIARY AIDS AND SERVICES**

Where necessary to provide equal opportunity and equally effective communication, Defendant is required to provide Plaintiffs with auxiliary aids and services, which include qualified readers, taped texts, audio recordings, Brailled materials and displays, screen reader software, magnification software, optical readers, secondary auditory programs (SAP), large print materials, accessible electronic and information technology, or other effective methods of making visually delivered materials available to individuals who are blind or have low vision.

**Authority**: 42 U.S.C. § 12103(1)(B); 28 C.F.R. § 35.104.

1
2

**Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 11 ("AUXILIARY AIDS AND SERVICES")**

3
4
5
6
7
8
9
10
11
12
13
14
15

Defendant maintains its objection to the proposed instruction because it is based on a regulation rather than upon statutory or binding case precedent. Defendant objects to the proposed instruction because it suggests to the jury that it can find liability simply by finding that the District did not abide by general items listed, without reference to other important elements required for liability. For example, under a disparate impact theory, if a proposed modification is not "reasonable," then a duty does not exist for an educational institution to provide it. *See Crowder v. Kitagawa,* 81 F.3d 1480, 1481 (9th Cir. 1996). Without connection to a particular element of a cause of action, the use of the regulation does not correctly state the law, and is confusing and prejudicial. *See Bird v. Lewis & Clark College*, 303 F.3d 1015, 1022 (9th Cir. 2002) (plaintiffs proposed jury instructions in Title III ADA case "based in part on federal regulations" were properly omitted because "the proposed instructions overall misstate the law") .

16
17
18
19

Moreover, the proposed instruction does not completely cite 42. U.S. Code section 12103, or the regulation section 35.104 regarding definitions, and it omits the following language: "(3)  Acquisition or modification of equipment or devices, and (4) Other similar services and actions."

20
21
22
23
24
25
26
27
28

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 11 ("AUXILIARY AIDS AND SERVICES")**

Notably, Defendant agreed to jointly propose this exact instruction before the last jury trial. *See* Revised [Proposed] Joint Jury Instructions at 13, ECF No. 191 (Joint Proposed Jury Instruction No. 8 ("Auxiliary Aids and Services")). Thus, any objection to this language has now been waived.

Nevertheless, Defendant's belated objection to this previously-agreed-upon language is unavailing. This instruction properly draws on language from the Title II regulations (in addition to statutory text). Under Ninth Circuit precedent, Plaintiffs can prove Defendant discriminated against them by demonstrating that Defendant violated a specific regulation promulgated for their benefit under Title II. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013) ("Consequently, in determining whether K.M. and D.H. were denied meaningful access to the school's benefits and services, we are guided by the specific standards of the Title II effective communications regulation."); *A.G.*, 815 F.3d at 1204 ("We have held that a plaintiff may establish denial of 'meaningful access' under . . . Title II by showing there was a violation of one of the regulations implementing section 504, if such violation denied the plaintiff meaningful access to a public benefit." (internal quotation marks and citation omitted)).

In addition, the Ninth Circuit has held that the Title II regulations are entitled to deference. In applying the Title II regulations, the Ninth Circuit stated that not only are they "not manifestly contrary to the statute, . . . they reflect the fairest reading of the statute." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1067 (9th Cir. 2010); *see also Bright*, 725 F.3d at 1096 (affording Title II regulations "controlling weight"). Indeed, Congress expressly mandated that the Department of Justice model the Title II regulations after the already-existing Section 504 regulations. *See* 42

U.S.C. § 12134 (ordering the DOJ to promulgate regulations that "shall be consistent with regulations and analysis" in 28 C.F.R. parts 39 and 41. Courts have therefore held that the Title II regulations carry "the force of law." *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir. 1995); *see Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1307 n.1 (10th Cir. 1999); *Rodriguez v. DeBuono*, 44 F. Supp. 2d 601, 621 (S.D.N.Y. 1999), *rev'd on other grounds sub nom. Rodriguez v. City of N.Y.*, 197 F.3d 611 (2d Cir. 1999). Accordingly, Plaintiffs have properly incorporated language from the Title II regulations into this instruction.

Furthermore, this instruction helpfully defines "discrimination" for the jury—part of the third element of a Title II claim—by providing specific examples. This instruction thus supplements, and does not displace, the parties' Joint Jury Instruction No. 2 setting forth the three elements of a Title II claim.

Finally, Defendant complains that the instruction omits "(3) Acquisition or modification of equipment or devices; and (4) Other similar services and actions," but offer no rationale for the inclusion of these provisions. The proposed instruction also omits a paragraph listing examples of auxiliary aids and services that might be required for deaf individuals. *See* 42 U.S.C. § 12103(1)(A); 28 C.F.R. § 35.104 (paragraph (a) under "Auxiliary aids and services"). To keep the instruction understandable and relevant to this case, Plaintiffs have included only the paragraph of the relevant statute and regulation listing examples of auxiliary aids and services commonly used by blind individuals.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Proposed Jury Instruction No. 12**

**UNLAWFUL METHODS OF ADMINISTRATION**

A public entity may not, directly or through contractual or other arrangements, use criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability or that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities.

**Authority**: 28 C.F.R. § 35.130(b)(3).

1
2

### Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 12 ("UNLAWFUL METHODS OF ADMINISTRATION")

3
4
5
6
7
8
9
10
11
12
13
14
15

Defendant maintains its objection to the proposed instruction because it is based on a select portion of a regulation rather than upon statutory or binding case precedent. Defendant objects to the proposed instruction because it suggests to the jury that it can find liability simply by finding that the District did not abide by general items listed, without reference to other important elements required for liability. For example, under a disparate impact theory, if a proposed modification is not "reasonable," then a duty does not exist for an educational institution to provide it. *See Crowder v. Kitagawa*, 81 F.3d 1480, 1481 (9th Cir. 1996). Without connection to a particular element of a cause of action, the use of the regulation does not correctly state the law, and is confusing and prejudicial. *See Bird v. Lewis & Clark College*, 303 F.3d 1015, 1022 (9th Cir. 2002) (plaintiff's proposed jury instructions in Title III ADA case "based in part on federal regulations" were properly omitted because "the proposed instructions overall misstate the law").

16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 12**

**("UNLAWFUL METHODS OF ADMINISTRATION")**

3

4

5

6

Notably, Defendant agreed to jointly propose this exact instruction before the last jury trial. *See* Revised [Proposed] Joint Jury Instructions at 14, ECF No. 191 (Joint Proposed Jury Instruction No. 9 ("Unlawful Methods of Administration")). Thus, any objection to this language has now been waived.

7

8

9

10

11

12

13

14

15

16

17

18

19

Nevertheless, Defendant's belated objection to this previously-agreed-upon language is unavailing. This instruction properly draws on language from the Title II regulations (in addition to statutory text). Under Ninth Circuit precedent, Plaintiffs can prove Defendant discriminated against them by demonstrating that Defendant violated a specific regulation promulgated for their benefit under Title II. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013) ("Consequently, in determining whether K.M. and D.H. were denied meaningful access to the school's benefits and services, we are guided by the specific standards of the Title II effective communications regulation."); *A.G.*, 815 F.3d at 1204 ("We have held that a plaintiff may establish denial of 'meaningful access' under . . . Title II by showing there was a violation of one of the regulations implementing section 504, if such violation denied the plaintiff meaningful access to a public benefit." (internal quotation marks and citation omitted)).

20

21

22

23

24

25

26

In addition, the Ninth Circuit has held that the Title II regulations are entitled to deference. In applying the Title II regulations, the Ninth Circuit stated that not only are they "not manifestly contrary to the statute, . . . they reflect the fairest reading of the statute." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1067 (9th Cir. 2010); *see also Bright*, 725 F.3d at 1096 (affording Title II regulations "controlling weight"). Indeed, Congress expressly mandated that the Department of Justice model the Title II regulations after the already-existing Section 504 regulations. *See* 42

27

28

U.S.C. § 12134 (ordering the DOJ to promulgate regulations that "shall be consistent with regulations and analysis" in 28 C.F.R. parts 39 and 41. Courts have therefore held that the Title II regulations carry "the force of law." *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir. 1995); *see Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1307 n.1 (10th Cir. 1999); *Rodriguez v. DeBuono*, 44 F. Supp. 2d 601, 621 (S.D.N.Y. 1999), *rev'd on other grounds sub nom. Rodriguez v. City of N.Y.*, 197 F.3d 611 (2d Cir. 1999). Accordingly, Plaintiffs have properly incorporated language from the Title II regulations into this instruction.

Furthermore, this instruction helpfully defines "discrimination" for the jury— part of the third element of a Title II claim—by providing specific examples. This instruction thus supplements, and does not displace, the parties' Joint Jury Instruction No. 2 setting forth the three elements of a Title II claim.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Plaintiffs' Proposed Jury Instruction No. 13
## ORGANIZATIONAL PLAINTIFFS

If you find that Defendant discriminated against members of the NFB and/or the NFB of California—including individual Plaintiffs who are members—because of their disabilities, you may find in favor of the NFB and/or the NFB of California.

You may also find in favor of the NFB of California if you find that it had to divert its resources from other matters to combat Defendant's discrimination against students with disabilities.

**Authority**: *Payan v. Los Angeles Cmty. Coll. Dist.*, No. 19-56111, 2021 WL 3743307, at *1 (9th Cir. Aug. 24, 2021); *Nat'l Fed'n of the Blind v. Target, Corp.*, 582 F. Supp. 2d 1185, 1191–92 (N.D. Cal. 2007).

1
2

**Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 13
(<u>"ORGANIZATIONAL PLAINTIFFS"</u>)**

3
4
5
6

Defendant maintains its objection to the proposed instruction because it references unidentified "members of the NFB and/or the NFB of California" who are not parties to this litigation and were not parties in the first trial.  This is not a class action lawsuit.

7
8

Nor is the standard referenced by the case Plaintiffs cite, *National Federation of the Blind v. Target, Corp.*, 582 F. Supp. 2d 1185, 1191-92 (N.D. Cal.2007).

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 13 (“ORGANIZATIONAL PLAINTIFFS”)**

This instruction properly indicates that if the jury finds that Defendant discriminated against members of the NFB and/or NFB of California, it should find in favor of the organization(s) given that both organizations have associational standing to sue on behalf of their members in this case. As the Ninth Circuit explained:

> [T]he district court found both NFB and NFB-CA had associational standing to sue. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). LACCD challenges only this third element, which is generally satisfied when the associational plaintiff seeks prospective relief for the benefit of its members. *Warth v. Seldin*, 422 U.S. 490, 515, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Because both NFB and NFB-CA sought injunctive relief for their members, the district court correctly determined that both entities satisfied the third prong of the *Hunt* test. *Id.* Accordingly, both NFB and NFB-CA have standing to sue in this case.

*Payan v. Los Angeles Cmty. Coll. Dist.*, No. 19-56111, 2021 WL 3743307, at *2 (9th Cir. Aug. 24, 2021). Thus, if the jury finds that Defendant discriminated against members of the two organizational plaintiffs—whether plaintiffs or witnesses—it should find Defendant liable as to the NFB and NFB of California.

Plaintiffs' reference to *National Federation of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1191–92 (N.D. Cal. 2007), in which the court held that the NFB and NFB of California had associational standing to pursue its members claims, further supports the propriety of this instruction.

1
2
3

# Plaintiffs' Proposed Jury Instruction No. 14
## DAMAGES AVAILABLE FOR VIOLATIONS OF
## TITLE II OF THE ADA

4   Although you do not need to find that Defendant intended to discriminate
5 against Plaintiffs to find a violation of Title II of the ADA, in order to award damages
6 to either Mr. Payan or Ms. Mason, you must find that Defendant intentionally
7 discriminated against him or her or acted with deliberate indifference to its
8 obligations under the ADA. Therefore, if you find that the Defendant violated either
9 individual Plaintiff's rights under the ADA, you must then decide the issue of that
10 Plaintiff's damages.

11   To prove intentional discrimination, the individual Plaintiff must show by a
12 preponderance of the evidence that Defendant demonstrated an intentional or willful
13 violation of the law, or a deliberate indifference toward the individual Plaintiff's
14 rights under the law. This does not mean that a Plaintiff must show that Defendant
15 intended to discriminate, or that it harbored some ill will towards Plaintiffs or blind
16 individuals in general.

17   Intentional or willful discrimination is shown when a public entity is on notice
18 that it has a legal obligation to provide an equal opportunity to access its programs or
19 services and that failure to do so may violate the law, and it still decides to provide an
20 unequal opportunity to access its programs or services. In such a case, the public
21 entity intentionally violated the ADA.

22   Either Plaintiff also may prevail if he or she proves that LACCD was
23 deliberately indifferent to its obligations. One way to show such deliberate
24 indifference is to prove, by a preponderance of the evidence, both that Defendant had
25 knowledge that harm to a federally-protected right, such as a right under the ADA,
26 was likely, and Defendant failed to act upon that likelihood.

27
28

1

2      **Authority**: 42 U.S.C. §§ 12131–12134; *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124,

3      1139 (9th Cir. 2001), *as amended on denial of reh'g*, (Oct. 11, 2001); *A.G. v.*

4      *Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016);

5      *Updike v. Multnomah Cnty.*, 870 F.3d 939, 950–51 (9th Cir. 2017).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 14 (<u>"DAMAGES AVAILABLE FOR VIOLATIONS OF TITLE II OF THE ADA"</u>)

Defendant maintains its objection to the proposed instruction because it needs to more explicitly state that damages cannot be awarded absent the required showing of, at a minimum," deliberate indifference." The instruction also omits important qualifying language provided by the Ninth Circuit, such as the fact that deliberate indifference does not occur where a duty to act resulted from bureaucratic slippage or mere negligence, or where it may simply have been overlooked. *See Duvall v. Cnty. Of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), as amended on denial of reh'g (Oct. 2001). The qualifying language is important to include in order to clearly and fully instruct the jury. Defendant's Proposed Instruction No. 3 is more accurate and neutral and should be the instruction provided. See Defendant's Proposed Instructions, No 3, p.8, filed August 22, 2022 (Dckt. 441). Certain language and phrasing of the proposed instruction does not appear in the case law cited, and instead the Court should instruct the jury on the elements of various causes of action approved by binding precedent. *See id.*

1
2
3

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 14**

**("DAMAGES AVAILABLE FOR VIOLATIONS OF**

**TITLE II OF THE ADA")**

4
5
6
7
8

Contrary to Defendant's objection above, this instruction does explicitly state that "in order to award damages to either Mr. Payan or Ms. Mason," the jury "must find that Defendant intentionally discriminated against him or her or acted with deliberate indifference to its obligations under the ADA." The requirement to find intentional discrimination or deliberate indifference for an award of damages is clear.

9
10
11
12

Similarly, this instruction clearly sets forth examples of how intentional discrimination or deliberate indifference can be established. Nowhere does it explicitly state or imply that mere negligence would be sufficient to prove intentionality or deliberate indifference. No further clarifying language is needed.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

**Plaintiffs' Proposed Jury Instruction No. 15**

**DAMAGES—PROOF**

3

4

5

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

6

7

8

9

10

If you find for either Ms. Mason or Mr. Payan on either of their claims, you must determine whether the Plaintiffs are entitled to damages. Plaintiffs have the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Plaintiffs for any injury you find was caused by Defendant's conduct or failure to act.

11

In determining the measure of damages, you should consider:

12

1.   The nature and extent of the injuries;

13

2.   The mental and emotional pain and suffering experienced;

14

15

3.   The reasonable value of earnings and earning capacity lost up to the present time; and

16

17

4.   The reasonable value of earnings and earning capacity that with reasonable probability will be lost in the future.

18

It is for you to determine what damages, if any, Plaintiffs have proved.

19

20

Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

21

Neither the NFB nor the NFB of California is seeking damages.

22

23

**Authority**: Ninth Circuit Pattern Jury Instructions Civil, No. 5.1 & 5.2.

24

25

26

27

28

1
2

**Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 15**
**("DAMAGES—PROOF")**

3

        Defendant maintains its objection to item (2), the "mental and emotional pain

4

and suffering experienced," because such damages are not available under Title II of

5

the ADA. See Defendant's Proposed Instructions, p.2 n. l, filed August 22, 2022

6

(Dckt. 441).  Such damages are not available as a remedy for a private right of action

7

under the Rehabilitation Act, *see Cummings v. Premier Rehab Keller*, 142 S. Ct.

8

1562, 1576 (2022), and Title II of the ADA explicitly provides that the remedies it

9

authorizes are the same as those under the Rehabilitation Act. See 42 U.S.C. § 12133.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 15
("DAMAGES—PROOF")**

As a threshold matter, Defendant forfeited its argument that damages for mental and emotional pain and suffering are not available under Title II of the ADA, pursuant to the Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022), which concerned damages under Section 504 of the Rehabilitation Act.

The Ninth Circuit recently held that a defendant had forfeited its argument that emotional distress damages were unavailable under Title IX in light of *Cummings* by not raising the argument at the appropriate time in the district court. *See Asfall v. Los Angeles Unified Sch. Dist.*, No. 20-55599, 2022 WL 2764747, at *4 (9th Cir. July 15, 2022). The Ninth Circuit rejected the Los Angeles Unified School District's argument that *Cummings* was an intervening change in the law excusing its earlier failure to argue that emotional distress damages were unavailable. *Id.* The court noted that the defendant could have raised this argument earlier—before *Cummings*—given that the Supreme Court had already announced in *Barnes v. Gorman*, 536 U.S. 181, 185 (2002), that a Spending Clause funding recipient is only subject to "those remedies traditionally available in suits for breach of contract." *Id.* (quoting *Barnes*). In *Barnes*, the Supreme Court "signaled the viability of arguments against noneconomic damages under Spending Clause legislation." *Id.* Accordingly, the defendant "should have known that the argument against noneconomic damages under Title IX was viable" and "[b]y not raising the argument sooner even though it could have, [the defendant] forfeited it." *Id.*

The same reasoning applies with equal force here. Defendant never challenged Plaintiffs' entitlement to emotional distress damages at any point in the prior proceedings in this Court or as part of its appeal to the Ninth Circuit in this case, even

though all of these proceedings occurred after the Supreme Court decided *Barnes*. Indeed, before the last trial, Defendant joined with Plaintiffs in jointly proposing this instruction that included "mental and emotional pain and suffering experienced." Revised [Proposed] Joint Jury Instructions at 20, ECF No. 191 (Joint Proposed Jury Instruction No. 15 ("Damages—Proof")). Like the Los Angeles Unified School District, Defendant has forfeited this argument.

Even if the Court were to reach the merits of Defendant's argument, it should conclude that the *Cummings* holding does not apply to Title II of the ADA. The Supreme Court's reasoning in *Cummings* hinged on that case involving Spending Clause legislation, which is constrained by principles of contract law. *See Cummings*, 142 S. Ct. at 1568. The ADA, by contrast, is not Spending Clause legislation, and is therefore not similarly constrained. Instead, Congress enacted the ADA pursuant to its Fourteenth Amendment power and the power to regulate commerce, which has a much broader sweep than Spending Clause legislation. *See* 42 U.S.C. § 12101(b)(4) ("invok[ing] the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce"). Because principles of contract do not apply to "nonspending statutes" like the ADA, the *Cummings* holding does not apply to limit the remedies available under Title II. *See Cummings*, 142 S. Ct. at 1573. Further, because Section 504 of the Rehabilitation Act applies to recipients of federal funding, the *Cummings* Court "construe[d] [the statute] . . . with an eye toward ensuring that the receiving entity of federal funds [had] notice that it will be liable." *Cummings*, 142 S. Ct. at 1570 (internal quotation marks omitted). This is not the case with the ADA. Instead, the ADA is widely applicable "remedial legislation," that "should be construed broadly to effectuate its purposes." *See Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967). Because liability under the ADA does not depend on federal funding, there is no concern that "an award of damages in a particular case

1    might well exceed a recipient's level of federal funding." *See Gebser v. Lago Vista*

2    *Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

3        Both the Title II regulations and legislative history make clear that that the

4    remedies available under Title II are to be construed broadly. The Department of

5    Justice's Title II regulations state that the "full range of remedies (including

6    compensatory damages)" are available under Title II. 28 C.F.R. Pt. 35, App. A

7    (analysis of 28 C.F.R. § 35.172(c)(2)). Similarly, the House Report explained that the

8    "full panoply of remedies" should be available for violations of Title II. H.R. Rep.

9    No. 101-485 (III), at 52 (1990). Although Congress declared that the remedies in

10   Title II were the same as those available under Section 504, because *Barnes* and

11   *Cummings* were decided long after the passage of the ADA, Congress had no notice

12   that the Supreme Court would limit Section 504 remedies to exclude emotional

13   distress damages. In other words, Congress was not "legislating with full cognizance

14   of" the *Barnes* or *Cummings* decisions. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503

15   U.S. 60, 72 (1992) ("In the years *after* the announcement of *Cannon*, on the other

16   hand, a more traditional method of statutory analysis is possible, because Congress

17   was legislating with full cognizance of that decision."). Accordingly, there is no

18   reason to extend the limitations the Supreme Court has placed on Spending Clause

19   legislation to remedial legislation enacted pursuant to the Fourteenth Amendment and

20   Commerce Clause.

21

22

23

24

25

26

27

28

# Plaintiffs' Proposed Jury Instruction No. 16

## DAMAGES ARISING IN THE FUTURE – DISCOUNT TO PRESENT CASH VALUE

Any award for future economic damages must be for the present cash value of those damages.

Noneconomic damages such as pain and suffering are not reduced to present cash value.

Present cash value means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages will be incurred.

The rate of return to be applied in determining present cash value should be the interest that can reasonably be expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill. You should also consider decreases in the value of money that may be caused by future inflation.

**Authority:** Model Civil Jury Instruction for the District Courts of the Ninth Circuit, Civil Instruction No. 5.4; *Monsessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 449–42 (1988); *Passantino v. Johnson & Johnson Consumer Prods., Inc*., 212 F.3d 493, 508-09 (9th Cir. 2000).

1
2
3
4

**Defendant's Position Regarding Plaintiffs' Proposed Jury Instruction No. 16**
**(<u>"DAMAGES ARISING IN THE FUTURE – DISCOUNT TO**
**PRESENT CASH VALUE"</u>)**

5
6
7
8
9
10
11
12

Defendant maintains its objection to the second sentence's reference to "noneconomic damages such as pain and suffering," because such damages are not available under Title II of the ADA. See Defendant's Proposed Instructions, p.2 n. l, filed August 22, 2022 (Dckt. 441). Such damages are not available as a remedy for a private right of action under the Rehabilitation Act, *see Cummings v. Premier Rehab Keller*, 142 S. Ct. 1562, 1576 (2022), and Title II of the ADA explicitly provides that the remedies it authorizes are the same as those under the Rehabilitation Act. See 42 3 U.S.C. § 12133.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Response in Support of their Proposed Jury Instruction No. 16 ("DAMAGES ARISING IN THE FUTURE – DISCOUNT TO PRESENT CASH VALUE")**

As a threshold matter, Defendant forfeited its argument that noneconomic damages for pain and suffering are not available under Title II of the ADA, pursuant to the Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022), which concerned damages under Section 504 of the Rehabilitation Act.

The Ninth Circuit recently held that a defendant had forfeited its argument that emotional distress damages were unavailable under Title IX in light of *Cummings* by not raising the argument at the appropriate time in the district court. *See Asfall v. Los Angeles Unified Sch. Dist.*, No. 20-55599, 2022 WL 2764747, at *4 (9th Cir. July 15, 2022). The Ninth Circuit rejected the Los Angeles Unified School District's argument that *Cummings* was an intervening change in the law excusing its earlier failure to argue that emotional distress damages were unavailable. *Id.* The court noted that the defendant could have raised this argument earlier—before *Cummings*—given that the Supreme Court had already announced in *Barnes v. Gorman*, 536 U.S. 181, 185 (2002), that a Spending Clause funding recipient is only subject to "those remedies traditionally available in suits for breach of contract." *Id.* (quoting *Barnes*). In *Barnes*, the Supreme Court "signaled the viability of arguments against noneconomic damages under Spending Clause legislation." *Id.* Accordingly, the defendant "should have known that the argument against noneconomic damages under Title IX was viable" and "[b]y not raising the argument sooner even though it could have, [the defendant] forfeited it." *Id.*

The same reasoning applies with equal force here. Defendant never challenged Plaintiffs' entitlement to emotional distress damages at any point in the prior

1  proceedings in this Court or as part of its appeal to the Ninth Circuit in this case, even

2  though all of these proceedings occurred after the Supreme Court decided *Barnes*.

3  Indeed, before the last trial, Defendant joined with Plaintiffs in jointly proposing this

4  instruction with the inclusion of the text "[n]oneconomic damages such as pain and

5  suffering." Revised [Proposed] Joint Jury Instructions at 21, ECF No. 191 (Joint

6  Proposed Jury Instruction No. 16 ("Damages Arising in the Future—Discount to

7  Present Cash Value")). Like the Los Angeles Unified School District, Defendant has

8  forfeited this argument.

9       Even if the Court were to reach the merits of Defendant's argument, it should

10  conclude that the *Cummings* holding does not apply to Title II of the ADA. The

11  Supreme Court's reasoning in *Cummings* hinged on that case involving Spending

12  Clause legislation, which is constrained by principles of contract law. *See Cummings*,

13  142 S. Ct. at 1568. The ADA, by contrast, is not Spending Clause legislation, and is

14  therefore not similarly constrained. Instead, Congress enacted the ADA pursuant to

15  its Fourteenth Amendment power and the power to regulate commerce, which has a

16  much broader sweep than Spending Clause legislation. *See* 42 U.S.C. § 12101(b)(4)

17  ("invok[ing] the sweep of congressional authority, including the power to enforce the

18  fourteenth amendment and to regulate commerce"). Because principles of contract do

19  not apply to "nonspending statutes" like the ADA, the *Cummings* holding does not

20  apply to limit the remedies available under Title II. *See Cummings*, 142 S. Ct. at

21  1573. Further, because Section 504 of the Rehabilitation Act applies to recipients of

22  federal funding, the *Cummings* Court "construe[d] [the statute] . . . with an eye

23  toward ensuring that the receiving entity of federal funds [had] notice that it will be

24  liable." *Cummings*, 142 S. Ct. at 1570 (internal quotation marks omitted). This is not

25  the case with the ADA. Instead, the ADA is widely applicable "remedial legislation,"

26  that "should be construed broadly to effectuate its purposes." *See Tcherepnin v.*

27

28

*Knight*, 389 U.S. 332, 336 (1967). Because liability under the ADA does not depend on federal funding, there is no concern that "an award of damages in a particular case might well exceed a recipient's level of federal funding." *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

Both the Title II regulations and legislative history make clear that that the remedies available under Title II are to be construed broadly. The Department of Justice's Title II regulations state that the "full range of remedies (including compensatory damages)" are available under Title II. 28 C.F.R. Pt. 35, App. A (analysis of 28 C.F.R. § 35.172(c)(2)). Similarly, the House Report explained that the "full panoply of remedies" should be available for violations of Title II. H.R. Rep. No. 101-485 (III), at 52 (1990). Although Congress declared that the remedies in Title II were the same as those available under Section 504, because *Barnes* and *Cummings* were decided long after the passage of the ADA, Congress had no notice that the Supreme Court would limit Section 504 remedies to exclude emotional distress damages. In other words, Congress was not "legislating with full cognizance of" the *Barnes* or *Cummings* decisions. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 72 (1992) ("In the years *after* the announcement of *Cannon*, on the other hand, a more traditional method of statutory analysis is possible, because Congress was legislating with full cognizance of that decision."). Accordingly, there is no reason to extend the limitations the Supreme Court has placed on Spending Clause legislation to remedial legislation enacted pursuant to the Fourteenth Amendment and Commerce Clause.

1   Richard E. Morton, Bar No. 54188
      rmorton@hbblaw.com
2   Yvette Davis, Bar No. 165777
      ydavis@hbblaw.com
3   HAIGHT BROWN & BONESTEEL, LLP
    2030 Main Street, Suite 1525
4   Irvine, California 92614
    Telephone:  714.426.4600
5   Facsimile:   714.754.0826

6   Attorneys for Defendant
    LOS ANGELES COMMUNITY COLLEGE DISTRICT

7

8                   **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  ROY PAYAN; PORTIA MASON;           Case No.:  2:17-cv-01697 SVW(Skx)
    THE NATIONAL FEDERATION; OF
13  THE BLIND, INC.; and THE           **DEFENDANT'S PROPOSED JURY**
    NATIONAL FEDERATION OF THE         **INSTRUCTIONS**
14  BLIND OF CALIFORNIA, INC.,

15             Plaintiffs,

16         v.
                                       Pretrial Conference Date: May 15, 2023
17  LOS ANGELES COMMUNITY              Time: 1:30 p.m.
    COLLEGE DISTRICT,                  Location: 350 W. 1st Street
18                                     Los Angeles, CA 90012
               Defendant.             Courtroom 10A
19

20                                     **Trial Date: May 23, 2023**

21

22

23         The proposed instructions are set forth below, with the Parties' respective

24  arguments regarding each appearing thereafter.

25

26

27

28
    _____
    *Payan, et al. v. LACCD*, Case No.:  2:17-cv-01697- SVW(SKx)
    PROPOSED JURY INSTRUCTIONS AND VERDICT SHEETS

                            66

1
2

**Defendant's Proposed Jury Instruction No. 17**

**DISPARATE IMPACT**

3       A Plaintiff may prove discrimination in violation of Title II by showing a
4   disparate impact.  In order to establish a disparate impact, a Plaintiff must show all of
5   the following:

6       1.   A policy or conduct that is neutral on its face;

7       2.   The facially neutral policy or conduct had the effect of denying
8           meaningful access to public services for individuals with disabilities; and

9       3.   The public entity could make reasonable modifications to its policy or
10          conduct that are necessary to avoid or remedy the discrimination.

11      Whether a modification is reasonable under Title II will depend upon a public
12  entity's limited resources and the needs of other students with disabilities.

13      If a Plaintiff establishes all three elements, the Defendant bears the burden to
14  show that Plaintiff's proposed modifications would cause a fundamental alteration.
15  Defendant may show a fundamental alteration by showing a change in the nature of
16  the service.

17      If the proposed modifications are a fundamental alteration, then they are not
18  reasonable and Plaintiff has not established a disparate impact.

19
20      **Authority:** 28 C.F.R. §§ 35.130(b)(7)(i), 35.150(a)(3), and 35.164; *Alexander
21  v. Choate*, 469 U.S. 287, 301–02 (1985); *Crowder v. Kitigawa*, 81 F.3d 1480, 1484–
22  85 (9th Cir. 1996); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088,
23  1102 (9th Cir. 2013); *Townsend v. Quasim*, 328 F.3d 511, 518–20 (9th Cir. 2003);
24  *Olmstead v. Zimring*, 527 U.S. 581 (1999) (plurality opinion); *Toledo v. Sanchez*, 454
25  F.3d 24, 32, 39–40 (1st Cir. 2006), *cert. denied* 549 U.S. 1301 (recognizing undue
26  burden as an available defense under Title II).

27
28

1
2

**Plaintiffs' Position Against Giving Defendant's**

**Proposed Jury Instruction No. 17 ("DISPARATE IMPACT")**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

Defendant's proposed instruction incorrectly identifies the denial of "meaningful access" as the touchstone for determining whether discrimination has occurred even though the regulations interpreting Title II do not contain any such qualifier. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013); 28 C.F.R. § 35.130(a) ("No qualified individual with a disability shall, on the basis of disability, be excluded from participating in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."). As the Ninth Circuit has held, "the 'meaningful access' standard incorporates rather than supersedes applicable interpretive regulations and so does not preclude [plaintiffs] from litigating their claims under those regulations." *K.M.*, 725 F.3d at 1102. Defendant is required to provide Plaintiffs with an equal opportunity to access its programs and services (not merely access that is "meaningful" but does not ensure equal opportunity). *See* 28 C.F.R. § 35.130(b)(1)(ii) ("A public entity . . . may not . . . on the basis of disability . . . [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not *equal* to that afforded others.") (emphasis added).

20
21
22
23
24
25

Plaintiffs also object to this instruction because it states "[w]hether a modification is reasonable under Title II will depend upon a public entity's limited resources and the needs of other students with disabilities." To the contrary, a "modification's reasonableness depends on how it impacts the goals of a[] [public entity's] program." *Where Do We Go Berkeley v. California Dep't of Transportation*, 32 F.4th 852, 862 (9th Cir. 2022). By referring to the entity's "limited resources," this

26
27
28

instruction improperly attempts to resurrect the undue burden defense this Court already struck. *See* Order at 6–9 (Mar. 1, 2023), ECF No. 492.

Furthermore, this proposed instruction inappropriately includes the fundamental alteration affirmative defense, which Defendant abandoned in its two recent pre-trial filings. *Compare* Am. Answer ¶ 122 (pleading Defendant's Second Affirmative Defense that "the remedies sought by plaintiffs would result in a fundamental alteration"), *with* Def.'s Mem. of Contentions of Fact and Law at 23–26, ECF No. 519 (omitting Defendant's Second Affirmative Defense from list of affirmative defenses being pursued), *and* Proposed Final Pretrial Conference Order at 11–13, ECF No. 522-1 (omitting Defendant's Second Affirmative Defense from list of affirmative defenses being pursued). Defendant cannot abandon its fundamental alteration affirmative defense, but then leave reference to it in its proposed jury instructions.

To the extent Defendant maintains its fundamental alteration defense is an elements defense, rather than an affirmative defense, it is mistaken. "[F]undamental alteration" is an "affirmative defense for which the asserting public entity bears the burden of proof." *Martinez v. Cnty. of Alameda*, 512 F. Supp. 3d 978, 985 (N.D. Cal. 2021); *see also K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1096–97 (9th Cir. 2013) ("The public entity has the burden to prove that a proposed action would result in . . . fundamental alteration . . . .").

For the foregoing reasons, Plaintiffs instead offer their Proposed Jury Instruction No. 7 ("Disparate Impact"), which contains the correct legal standard and omits Defendant's withdrawn fundamental alteration defense.

Finally, even if Defendant could still pursue the fundamental alteration defense, its proposed instruction omits the elements required to establish it. The Ninth Circuit has recognized that a public entity asserting a fundamental alteration defense

---

must show that the decision that a proposed action would result in a fundamental alteration was "made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion." *K.M.*, 725 F.3d at 1096–97 (9th Cir. 2013) (quoting 28 C.F.R. § 35.164). The public entity must then establish that it took "any other action that would not result in such an alteration . . . but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity." *Id.* (quoting 28 C.F.R. § 35.164). Accordingly, if this Court permits Defendant to pursue a fundamental alteration defense despite stating twice in the past month that it was abandoning this defense, a jury instruction should explain the elements necessary under 28 C.F.R. § 35.164 for Defendant to prevail on this defense.

**Defendant's Proposed Jury Instruction No. 18**

**REASONABLE ACCOMMODATION**

Alternatively, a Plaintiff may show discrimination in violation of Title II by showing a failure to provide a reasonable accommodation.  In order to establish a failure to accommodate, a Plaintiff must show all of the following:

1.  Plaintiff was denied meaningful access to a public service because he or she lacked an accommodation for his or her disability;

2.  A reasonable accommodation was available; and

3.  The public entity was on notice of the need for a reasonable accommodation but did not provide one.

Whether an accommodation is reasonable will depend on the disabled individual's circumstances and the accommodations that might allow him or her to meet the program's standards.  The duty to provide a reasonable accommodation includes a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary to enable the individual to meet the standards in question.

A public entity need not provide the accommodation requested if another, equally effective accommodation is available.

If a Plaintiff establishes all three elements, the Defendant must show that Plaintiff's proposed accommodations would cause a fundamental alteration. Defendant may show a fundamental alteration by showing a change in the nature of the service.

If the proposed accommodations are a fundamental alteration, then they are not reasonable and Plaintiff has not established a failure to accommodate.

1       **Authority:** 28 C.F.R. §§ 35.130(b)(7)(i), 35.150(a)(3), and 35.164; *Wong v.*

2 *Regents of University of California*, 192 F.3d 807, 817–19 (9th Cir. 1999)

3 (recognizing that approving an alternative modification to the one requested meets an

4 educational institution's obligations under the ADA); *Crowder v. Kitigawa*, 81 F.3d

5 1480, 1485 (9th Cir. 1996); *Townsend v. Quasim*, 328 F.3d 511, 518–20 (9th Cir.

6 2003); *Olmstead v. Zimring*, 527 U.S. 581 (1999) (plurality opinion); *Toledo v.*

7 *Sanchez*, 454 F.3d 24, 32 (1st Cir. 2006), *cert. denied* 549 U.S. 1301 (recognizing

8 undue burden as an available defense under Title II).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiffs' Position Against Giving Defendant's**

**Proposed Jury Instruction No. 18 ("REASONABLE ACCOMMODATION")**

Defendant's proposed instruction incorrectly identifies the denial of "meaningful access" as the touchstone for determining whether discrimination has occurred even though the regulations interpreting Title II do not contain any such qualifier. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013); 28 C.F.R. § 35.130(a) ("No qualified individual with a disability shall, on the basis of disability, be excluded from participating in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."). As the Ninth Circuit has held, "the 'meaningful access' standard incorporates rather than supersedes applicable interpretive regulations and so does not preclude [plaintiffs] from litigating their claims under those regulations." *K.M.*, 725 F.3d at 1102. Defendant is required to provide Plaintiffs with an equal opportunity to access its programs and services (not merely access that is "meaningful" but does not ensure equal opportunity). *See* 28 C.F.R. § 35.130(b)(1)(ii) ("A public entity . . . may not . . . on the basis of disability . . . [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not *equal* to that afforded others.") (emphasis added).

Plaintiffs also object to this instruction because it states "[w]hether an accommodation is reasonable will depend on the disabled individual's circumstances and the accommodations that might allow him or her to meet the program's standards." To the contrary, a "modification's reasonableness depends on how it impacts the goals of a[] [public entity's] program." *Where Do We Go Berkeley v. California Dep't of Transportation*, 32 F.4th 852, 862 (9th Cir. 2022).

In addition to incorrectly defining what makes an accommodation "reasonable," Defendant's proposed instruction inappropriately suggests that Defendant did not provide Plaintiffs with necessary accommodations because they would not have allowed Plaintiffs to meet Defendant's "standards." The record in this case does not support such a defense. There is no evidence that Defendant failed to provide reasonable accommodations because Defendant believed accommodations would be ineffective or would result in a fundamental alteration of its programs and services. Neither Defendant's Memorandum of Contentions of Fact and Law, ECF No. 519, nor its portions of the parties' Proposed Final Pretrial Conference Order, ECF No. 522-1, refer to any evidence that would support these positions.

Defendant's proposed instruction also incorrectly suggests that Defendant is not required to provide *any* accommodation if an accommodation that is equally effective as the one Plaintiffs have requested is available. The case Defendant cites, *Wong v. Regents of University of California*, 192 F.3d 807, 818 (9th Cir. 1999), does not support that proposition. Indeed, *Wong* has no bearing on this case at all. There, the Ninth Circuit held that "[i]n a case involving assessment of the standards of an academic institution" the institution's decision not to provide a requested accommodation is entitled to deference only if the institution demonstrates that it made an inquiry into the "suggested accommodations . . . and concluded that the accommodations were not feasible or would not be effective." *Wong*, 192 F.3d at 818. This case, however, does not involve LACCD's standards (academic, or otherwise) and there is no evidence that Defendant made such an inquiry—either when offering accommodations to Plaintiffs or when considering the specific accommodations Plaintiffs requested—and then refused to provide them after concluding that they were not feasible or would not be effective. As a result, giving this instruction would only serve to confuse the jury.

1   Furthermore, this proposed instruction inappropriately includes the

2   fundamental alteration affirmative defense, which Defendant abandoned in its two

3   recent pre-trial filings. *Compare* Am. Answer ¶ 122 (pleading Defendant's Second

4   Affirmative Defense that "the remedies sought by plaintiffs would result in a

5   fundamental alteration"), *with* Def.'s Mem. of Contentions of Fact and Law at 23–26,

6   ECF No. 519 (omitting Defendant's Second Affirmative Defense from list of

7   affirmative defenses being pursued), *and* Proposed Final Pretrial Conference Order at

8   11–13, ECF No. 522-1 (omitting Defendant's Second Affirmative Defense from list

9   of affirmative defenses being pursued). Defendant cannot abandon its fundamental

10  alteration affirmative defense, but then leave reference to it in its proposed jury

11  instructions.

12  To the extent Defendant maintains its fundamental alteration defense is an

13  elements defense, rather than an affirmative defense, it is mistaken. "[F]undamental

14  alteration" is an "affirmative defense for which the asserting public entity bears the

15  burden of proof." *Martinez v. Cnty. of Alameda*, 512 F. Supp. 3d 978, 985 (N.D. Cal.

16  2021); *see also K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1096–

17  97 (9th Cir. 2013) ("The public entity has the burden to prove that a proposed action

18  would result in . . . fundamental alteration . . . .").

19  For the foregoing reasons, Plaintiffs instead offer their Proposed Jury

20  Instruction No. 8 ("Failure to Accommodate"), which contains the correct legal

21  standard and omits Defendant's withdrawn fundamental alteration defense.

22  Finally, even if Defendant could still pursue the fundamental alteration

23  defense, its proposed instruction omits the elements required to establish it. The Ninth

24  Circuit has recognized that a public entity asserting a fundamental alteration defense

25  must show that the decision that a proposed action would result in a fundamental

26  alteration was "made by the head of the public entity or his or her designee after

27

28

considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion." *K.M.*, 725 F.3d at 1096–97 (9th Cir. 2013) (quoting 28 C.F.R. § 35.164). The public entity must then establish that it took "any other action that would not result in such an alteration . . . but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity." *Id.* (quoting 28 C.F.R. § 35.164). Accordingly, if this Court permits Defendant to pursue a fundamental alteration defense despite twice stating in the past month that it was abandoning this defense, a jury instruction should explain the elements necessary under 28 C.F.R. § 35. 164 for Defendant to prevail on this defense.

**Defendant's Proposed Jury Instruction No. 19**

**PROOF OF INTENT**

To prove intentional discrimination, the individual Plaintiff must show by a preponderance of the evidence that Defendant demonstrated an intentional or willful violation of the law, or else a deliberate indifference toward the Plaintiff's rights under the law.  An intentional violation occurs where a public entity fails to provide equal access to its services, is on notice of its failure to provide equal access, and then chooses to provide a lesser service or no service.

Alternatively, a Plaintiff may prevail by proving, by a preponderance of the evidence, that Defendant was deliberately indifferent to its obligation to provide equal access to its services.  Deliberate indifference requires a showing that:

    1.  Defendant had knowledge that harm to a federally protected right was substantially likely to occur; and

    2.  Defendant failed to act upon that likelihood.

Deliberate indifference does not occur where a duty to act resulted from bureaucratic slippage or mere negligence, or where it may simply have been overlooked.  The standard requires an element of deliberateness.

**Authority:** 42 U.S.C. §§ 12131–12134; 29 U.S.C. § 794; *Ferguson v. City of Phoenix*, 157 F.3d 668, 673–74 (9th Cir. 1998); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).

**Plaintiffs' Position Against Giving Defendant's**

**Proposed Jury Instruction No. 19 ("PROOF OF INTENT")**

Plaintiff objects to this instruction on the ground that, without more context, it suggests Plaintiffs must prove intentional discrimination to establish a violation of the ADA, even though proof of intentional discrimination is only necessary for the jury to award damages. The distinction is important in this case where Plaintiffs have requested injunctive relief and their right to that relief depends on a finding that Defendant *violated* the ADA, not that Plaintiffs were awarded damages. Accordingly, Plaintiffs instead offer their Proposed Jury Instruction No. 14 ("Damages Available for Violations of Title II of the ADA"), which more clearly sets forth that a finding of intentional discrimination is only necessary to award damages. Plaintiffs further offer their Proposed Jury Instruction No. 4 ("Intent Not Required for Finding of Violation of Title II") to ensure this important nuance is clear to the jury.

**Defendant's Proposed Jury Instruction No. 20**

**DAMAGES – PROOF**

If you find that Defendant intentionally discriminated against an individual Plaintiff as explained by the Court, you must determine the amount of damages to award that Plaintiff.  Plaintiffs have the burden of proving damages by a preponderance of the evidence.  "Damages" means the amount of money that will reasonably and fairly compensate a Plaintiff for any injury you find was caused by Defendant.

In determining the measure of damages, you should consider:

1.  The nature and extent of the injuries;

2.  The reasonable value of earnings and earning capacity lost up to the present time; and

3.  The reasonable value of earnings and earning capacity that, with reasonable probability, will be lost in the future.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon the evidence presented and must not be based upon speculation, guesswork, or conjecture.


**Authority:** Model Civil Jury Instruction for the District Courts of the Ninth Circuit, Civil Instruction Nos. 5.1 & 5.2.

**Plaintiffs' Position Against Giving Defendant's**

**Proposed Jury Instruction No. 20 ("DAMAGES – PROOF")**

Plaintiff objects to this instruction because Defendant has omitted the following consideration listed in Model Civil Jury Instruction No. 5.2: the mental and emotional pain and suffering experienced. As all parties agreed during the last jury trial, emotional distress damages are available under Title II of the ADA. *See* Revised [Proposed] Joint Jury Instructions, ECF No. 191, at 20 (Joint Proposed Jury Instruction No. 15 ("Damages—Proof")) (advising jury to consider "[t]he mental and emotional pain and suffering experienced" in determining the measure of damages). This is consistent with the broad relief described in both the Title II regulations and legislative history. The Department of Justice's Title II regulations state that the "full range of remedies (including compensatory damages)" are available under Title II. 28 C.F.R. Pt. 35, App. A (analysis of 28 C.F.R. § 35.172(c)(2)). Similarly, the House Report explained that the "full panoply of remedies" should be available for violations of Title II.  H.R. Rep. No. 101-485 (III), at 52 (1990). Accordingly, Plaintiffs instead offer their Proposed Jury Instruction No. 15 ("Damages—Proof"), which includes consideration of emotional pain and suffering, consistent with the parties' jointly proposed instruction from the last trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendant's Proposed Jury Instruction No. 21**

**DAMAGES ARISING IN THE FUTURE – DISCOUNT TO PRESENT CASH VALUE**

Any award for future economic damages must be for the present cash value of those damages.

"Present cash value" means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages will be incurred.

The rate of return to be applied in determining present cash value should be the interest that can reasonably be expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill.  You should also consider decreases in the value of money that may be caused by future inflation.

**Authority:** Model Civil Jury Instruction for the District Courts of the Ninth Circuit, Civil Instruction No. 5.4.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Position Against Giving Defendant's**

**Proposed Jury Instruction No. 21 ("DAMAGES ARISING IN THE FUTURE – DISCOUNT TO PRESENT CASH VALUE")**

Plaintiff objects to this instruction because Defendant has omitted the following language from Model Civil Jury Instruction No. 5.4: "Noneconomic damages such as pain and suffering . . . are not reduced to present cash value." The parties previously agreed to include this language when jointly proposing jury instructions before the last jury trial. *See* Revised [Proposed] Joint Jury Instructions, ECF No. 191, at 21 (Joint Proposed Jury Instruction No. 16 ("Damages Arising in the Future—Discount to Present Cash Value")). Furthermore, all parties agreed during the last jury trial that emotional distress damages are available under Title II of the ADA. *See* Revised [Proposed] Joint Jury Instructions, ECF No. 191, at 20 (Joint Proposed Jury Instruction No. 15 ("Damages—Proof")) (advising jury to consider "[t]he mental and emotional pain and suffering experienced" in determining the measure of damages). This is consistent with the broad relief described in both the Title II regulations and legislative history. The Department of Justice's Title II regulations state that the "full range of remedies (including compensatory damages)" are available under Title II.  28 C.F.R. Pt. 35, App. A (analysis of 28 C.F.R. § 35.172(c)(2)). Similarly, the House Report explained that the "full panoply of remedies" should be available for violations of Title II.  H.R. Rep. No. 101-485 (III), at 52 (1990). Accordingly, Plaintiffs instead offer their Proposed Jury Instruction No. __ ("Damages Arising in the Future—Discount to Present Cash Value"), which includes the omitted line regarding noneconomic damages to which the parties previously agreed.

**Defendant's Proposed Jury Instruction No. 22**

**AFFIRMATIVE DEFENSE – DUTY TO MITIGATE DAMAGES**

The Plaintiffs have a duty to use reasonable efforts to mitigate their damages. To mitigate means to avoid or reduce damages.

The Defendant has the burden of proving both of the following by a preponderance of the evidence:

1. That the Plaintiffs failed to use reasonable efforts to mitigate damages; and

2. The amount by which damages would have been mitigated.

**Authority:** Model Civil Jury Instruction for the District Courts of the Ninth Circuit, Civil Instruction No. 5.3; 42 U.S.C. § 12117; 42 U.S.C.A. § 12133; 29 U.S.C. § 794a; *Picinich v. United Parcel Service*, 583 F. Supp. 2d 336 (N.D.N.Y. 2008); *Brown v. Smith*, 827 F.3d 609 (7th Cir. 2015); *E.E.O.C. v. Western Trading Co., Inc.*, 291 F.R.D. 615 (D. Colo. 2013); *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F.Supp.3d 1269 (D. Kan. 2016).

1
2
3

### Plaintiffs' Position Against Giving Defendant's
### Proposed Jury Instruction No. 22
### ("AFFIRMATIVE DEFENSE – DUTY TO MITIGATE DAMAGES")

4
5
6
7
8
9
10

Plaintiffs object to this instruction because it is inconsistent with the ADA's broad remedial purpose. *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014). Only employment cases arising under Title I of the ADA impose a duty to mitigate damages, a fact Defendant concedes below. There are no cases discussing mitigation in the Title II context because a public entity's programs or services are unique and often there is no alternative to them; unlike employment opportunities, public programs and services are not fungible.

11
12
13
14
15
16
17
18

Contrary to Defendant's assertions below, Plaintiffs could not have mitigated their damages by "obtain[ing] alternative employment at an equal or lesser salary," because they were still in school. If they were held to the standard of obtaining employment while still in school and "without the degrees they sought" when Defendant's discrimination prevented them from timely obtaining them, it would effectively eliminate Defendant's liability for damages (if not all of its obligations under Title II)—a key incentive for ensuring that Defendant provides equal access to its programs and services.

19
20
21
22
23
24
25
26
27
28

## __Defendant's Rationale for Giving this Instruction:__

Under Title II of the Americans with Disabilities Act, § 12133 provides:

> The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title.

29 U.S.C. § 794a provides:

> (a)(1) The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e-5(ff) through (k)) (and the application of section 706(e)(3) (42 U.S.C. 2000e-5(e)(3)) to claims of discrimination in compensation), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.

> (2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

> (b) In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Notably, Title I of the Americans with Disabilities Act contains a similar incorporation of statutory remedies at 42 U.S.C. § 12117.

In this case, it is anticipated that Plaintiffs' retained vocational expert will attempt to opine that as a result of the alleged discrimination, the individual plaintiffs suffered lost two years of income for the jobs they would have had if they had graduated their programs and obtained jobs in the relevant fields. To the extent such testimony is admitted, Defendant maintains that the individual plaintiffs have a duty

to mitigate those lost income damages (i.e. because they could have obtained alternative employment at an equal or lesser salary).

First, the duty to mitigate has been held to exist in *Title I*, Americans with Disabilities Act claims. See *Picinich v. United Parcel Service*, 583 F.Supp.2d 336 (N.D.N.Y. 2008); *Brown v. Smith*, 827 F.3d 609 (7th Cir. 2015); *E.E.O.C. v. Western Trading Co., Inc.*, 291 F.R.D. 615 (D. Colo. 2013); *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269 (D. Kan. 2016).

Second, counsel for Defendant has not located any statute or case law which stands for the proposition that a plaintiff pursuing Title II claim does not have a duty to mitigate.

Third, if the Plaintiffs' expert is permitted to testify about what the individual Plaintiffs could have earned in yearly salary with the degree they were seeking, the Defendant should have the opportunity to seek to elicit testimony about the salaries Plaintiffs could have attained without the degrees they sought, during that same two year period for which income was allegedly lost. This instruction will provide the jury the information it needs to consider such evidence.

1   Patricia Barbosa (SBN 125685)
    pbarbosa@barbosagrp.com
    **BARBOSA GROUP**
2   606 Lake Street, #9
    Huntington Beach, California 92648
3   Phone: (714) 465-9486

4
    Sharon Krevor-Weisbaum
5   skw@browngold.com
    Jessica P. Weber
6   jweber@browngold.com
    Kevin D. Docherty
7   kdocherty@browngold.com
    Monica R. Basche
8   mbasche@browngold.com
    **BROWN, GOLDSTEIN & LEVY LLP**
9   120 East Baltimore Street, Suite 2500
    Baltimore, Maryland  21202
10  Phone: (410) 962-1030

11  *Attorneys for Plaintiffs*

12

13                  **IN THE UNITED STATES DISTRICT COURT**

14              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15

16  ROY PAYAN, PORTIA MASON, THE      )   Case No.: 2:17-cv-01697-SVW(SKx)
    NATIONAL FEDERATION OF THE        )
17  BLIND, INC., and THE NATIONAL     )   **Civil Rights**
    FEDERATION OF THE BLIND OF        )
18  CALIFORNIA, INC.,                 )   **PLAINTIFFS' PROPOSED**
                                      )   **VERDICT SHEET**
19                  Plaintiffs,       )
                                      )
20  v.                                )
                                      )   Final Pretrial Conf: May 15, 2023
21  LOS ANGELES COMMUNITY             )   Time: 1:30 p.m.
    COLLEGE DISTRICT,                 )   Location: 350 W. 1st Street, Los
22                                    )   Angeles, CA 90012
                                      )   Courtroom 10A
23                  Defendant.        )
                                      )   Action filed:  March 2, 2017
24                                    )   Trial date:  May 23, 2023
                                      )
25                                    )
                                      )
26  _____

27

28  _____
                                *Payan, et al. v. LACCD*, Case No.:  2:17-cv-01697- SVW(SKx)
                                PROPOSED JURY INSTRUCTIONS AND VERDICT SHEETS

# PLAINTIFFS' PROPOSED VERDICT SHEET

**Plaintiff Roy Payan**

1.     Do you find that Defendant Los Angeles Community College District (a) excluded Plaintiff Roy Payan from participation in, or (b) denied him the benefits of its services, programs, or activities, or (c) otherwise discriminated against him (for example, through denial of an equal educational opportunity or equally effective communication) because of his disability?

       Yes _____                                    No _____

**If you answered "Yes" to Question No. 1, proceed to Question No. 2. If you answered "No" to Question No. 1, stop here and proceed to Question No. 4.**

2.     Do you find that Defendant Los Angeles Community College District's acted with deliberate indifference as to Mr. Payan's rights?

       Yes _____                                    No _____

**If you answered "Yes" to Question No. 2, proceed to Question No. 3.  If you answered "No" to Question No. 2 stop here and proceed to Question No. 4.**

3.     In what amount, if any, do you assess damages for Plaintiff Roy Payan?

       Economic damages: $ _____

       Emotional distress:  $ _____

**Plaintiff Portia Mason**

4.      Do you find that Defendant Los Angeles Community College District (a) excluded Plaintiff Portia Mason from participation in, or (b) denied her the benefits of its services, programs, or activities, or (c) otherwise discriminated against her (for example, through denial of an equal educational opportunity or equally effective communication) because of her disability?

Yes _____                                    No _____

**If you answered "Yes" to Question No. 4, proceed to Question No. 5. If you answered "No" to Question No. 4, stop here and proceed to Question No. 7.**

5.      Do you find that Defendant Los Angeles Community College District's acted with deliberate indifference as to Ms. Mason's rights?

Yes _____                                    No _____

**If you answered "Yes" to Question No. 5, proceed to Question No. 6.  If you answered "No" to Question No. 5 stop here and proceed to Question No. 7.**

6.      In what amount, if any, do you assess damages for Plaintiff Portia Mason?

Economic damages: $ _____

Emotional distress:  $ _____

**Plaintiff National Federation of the Blind, Inc. ("NFB")**

7.     Do you find that Defendant Los Angeles Community College District (a) excluded individual members of Plaintiff NFB from participation in, or (b) denied them the benefits of its services, programs, or activities, or (c) otherwise discriminated against them (for example, through denial of an equal educational opportunity or equally effective communication) because of their disabilities?

Yes _____                    No _____

**Plaintiff National Federation of the Blind of California, Inc. ("NFB of California")**

<u>**First Claim**</u>

8.     Do you find that Plaintiff NFB of California had to divert its resources to combat the discrimination of Defendant Los Angeles Community College District against students with disabilities?

Yes _____                    No _____

<u>**Second Claim**</u>

9.     Do you find that Defendant Los Angeles Community College District (a) excluded individual members of Plaintiff NFB of California, or (b) denied them the benefits of its services, programs, or activities, or (c) otherwise discriminated against them (for example, through denial of an equal educational opportunity or equally effective communication) because of their disabilities?

Yes _____                    No _____

1

2

_____

3  Foreperson

4  _____

5  Date

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Mark H. Meyerhoff, Bar No. 180414
    mmeyerhoff@lcwlegal.com
2   David A. Urban, Bar No. 159633
    durban@lcwlegal.com
3   Richard Daniel Seitz, Bar No. 334028
    dseitz@lcwlegal.com
4   LIEBERT CASSIDY WHITMORE
    A Professional Law Corporation
5   6033 West Century Boulevard, 5th Floor
    Los Angeles, California 90045
6   Telephone: 310.981.2000
    Facsimile: 310.337.0837

7   Bruce Cleeland (Bar No. 100524)
    bcleeland@hbblaw.com
8   Yvette Davis (Bar No. 165777)
    ydavis@hbblaw.com
9   Garrett Smee (Bar No. 228055)
    HAIGHT BROWN & BONESTEEL LLP
10  2030 Main Street, Suite 1525
    Irvine, California 92614
11  Telephone: 714.426.4600
    Facsimile: 714.754.0826

12  *Attorneys for Defendant*

13

14          **IN THE UNITED STATES DISTRICT COURT**

15      **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

16

| | |
|---|---|
| 17  ROY PAYAN, PORTIA MASON, THE NATIONAL FEDERATION OF THE BLIND, INC., and THE NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, INC., | ) Case No.: 2:17-cv-01697-SVW(SKx) ) ) **Civil Rights** ) ) **DEFENDANT'S PROPOSED** |
| 18 | |
| 19 | ) **VERDICT SHEET** |
| 20          Plaintiffs, | ) |
| 21  v. | ) ) Final Pretrial Conf: May 15, 2023 ) Time: 1:30 p.m. |
| 22  LOS ANGELES COMMUNITY COLLEGE DISTRICT, | ) Location: 350 W. 1st Street, Los ) Angeles, CA 90012 ) Courtroom 10A |
| 23          Defendant. | ) ) Action filed:  March 2, 2017 |
| 24 | ) Trial date:  May 23, 2023 |
| 25 | ) |
| 26 | ) |

27

28  _____

*Payan, et al. v. LACCD*, Case No.:  2:17-cv-01697- SVW(SKx)
PROPOSED JURY INSTRUCTIONS AND VERDICT SHEETS

92

# **DEFENDANT'S PROPOSED VERDICT SHEET**

**Plaintiff, Roy Payan**

<u>First Claim</u>

1a.   By a preponderance of the evidence, do you find that textbooks, class handouts, and the Etudes platform at Los Angeles City College were inaccessible to Roy Payan in his math courses?

Yes _____                    No _____

**If you answered "Yes" to Question No. 1a, proceed to Question No. 1b.  If you answered "No" to Question No. 1a, proceed to Question No. 2a.**


1b.   Was LACCD on notice that textbooks, class handouts, and the Etudes platform at Los Angeles City College were inaccessible to Roy Payan in his math course and that he required a reasonable accommodation?

Yes _____                    No _____

**If you answered "Yes" to Question No. 1b, proceed to Question No. 1c.  If you answered "No" to Question No. 1b, proceed to Question No. 2a.**


1c.   Did LACCD fail to reasonably accommodate Roy Payan's disability for this claim?

Yes _____                    No _____

<u>Second Claim</u>

2a.    By a preponderance of the evidence, did Los Angeles City College
redirect Roy Payan from taking Math 125 to taking Math 124A and Math 124B due
to his disability?

Yes _____                          No _____

**If you answered "Yes" to Question No. 2a, proceed to Question No. 2b.  If you
answered "No" to Question No. 2a, proceed to Question No. 3a.**

2b.    Was LACCD on notice that Roy Payan needed an accommodation
different from the redirection?

Yes _____                          No _____

**If you answered "Yes" to Question No. 2b, proceed to Question No. 2c.  If you
answered "No" to Question No. 2b, proceed to Question No. 3a.**

2c.    Did LACCD fail to reasonably accommodate Roy Payan's disability by
not providing an accommodation different than the redirection?

Yes _____                          No _____

<u>Third Claim</u>

3a.    By a preponderance of the evidence, was MyMathLab inaccessible to
Roy Payan?

Yes _____                          No _____

**If you answered "Yes" to Question No. 3a, proceed to Question No. 3b.  If you
answered "No" to Question No. 3a, proceed to Question No. 4a.**

1

2

3b.     Was LACCD on notice that MyMathLab was inaccessible to Roy Payan in his math course and that he required a reasonable accommodation?

3

Yes _____                              No _____

4

5

**If you answered "Yes" to Question No. 3b, proceed to Question No. 3c.  If you answered "No" to Question No. 3b, proceed to Question No. 4a.**

6

7

3c.     Did LACCD fail to reasonably accommodate Roy Payan's disability for this claim?

8

Yes _____                              No _____

9

10

**Plaintiff, Portia Mason**

11

12

Fourth Claim

13

14

15

4a.     By a preponderance of the evidence, do you find that professors failed to explain what they were writing on the board to Portia Mason during  her psychology classes at Los Angeles City College?

16

Yes _____                              No _____

17

18

**If you answered "Yes" to Question No. 4a, proceed to Question No. 4b.  If you answered "No" to Question No. 4a, proceed to Question No. 5a.**

19

20

21

4b.     Was LACCD on notice that professors failed to explain what they were writing on the board to Portia Mason during her psychology classes at Los Angeles City College and that she required a reasonable accommodation?

22

23

Yes _____                              No _____

24

If the answer is yes, proceed to question 1c.  If the answer is no, proceed to question 2a.

25

26

27

28

4c.    Did LACCD fail to reasonably accommodate Portia Mason's disability regarding this claim?

Yes _____                              No _____

## Fifth Claim

5a.    By a preponderance of the evidence, did Los Angeles City College fail to provide accessible accommodations letters to Plaintiffs?

Yes _____                              No _____

**If you answered "Yes" to Question No. 5a, proceed to Question No. 5b.  If you answered "No" to Question No. 5a, proceed to Question No. 6a.**

5b.    Was LACCD on notice that plaintiffs did not receive accessible accommodation letters at Los Angeles City College?

Yes _____                              No _____

**If you answered "Yes" to Question No. 5b, proceed to Question No. 5c.  If you answered "No" to Question No. 5b, proceed to Question No. 6a.**

5c.    Did LACCD fail to reasonably accommodate plaintiffs' disability with regard to accommodations letters?

Yes _____                              No _____

## Sixth Claim

6a.    By a preponderance of the evidence, did Los Angeles City College fail to follow the accommodations stated in the accommodations letters to Plaintiffs from the Office of Special Services?

Yes _____                              No _____

**If you answered "Yes" to Question No. 6a, proceed to Question No. 6b.  If you answered "No" to Question No. 6a, proceed to Question No. 7a.**

6b.     Was LACCD on notice that plaintiffs did not receive the accommodations stated in the accommodation letters to Plaintiffs from the Office of Special Services?

Yes _____                              No _____

**If you answered "Yes" to Question No. 1b, proceed to Question No. 1c.  If you answered "No" to Question No. 1b, proceed to Question No. 2a.**

6c.     Did LACCD fail to reasonably accommodate plaintiffs' disability by failing to provide accommodations stated in the accommodation letters to Plaintiffs from the Office of Special Services?

Yes _____                              No _____

<u>Seventh Claim</u>

7a.     By a preponderance of the evidence, did the Los Angeles City College redirect sight-impaired students away from certain professors due to their disability?
**If you answered "Yes" to Question No. 7a, proceed to Question No. 7b.  If you answered "No" to Question No. 7b, proceed to Question No. 8a.**

7b.     Was LACCD on notice that Los Angeles City College redirected sight-impaired students away from those professors due to Plaintiffs' disability?

Yes _____                              No _____

**If you answered "Yes" to Question No. 7b, proceed to Question No. 7c.  If you answered "No" to Question No. 7b, proceed to Question No. 8a.**

7c.     Did the redirection deprive Plaintiffs of meaningful access to LACCD's programs and services?

---

*Payan, et al. v. LACCD*, Case No.:  2:17-cv-01697- SVW(SKx)
PROPOSED JURY INSTRUCTIONS AND VERDICT SHEETS

Yes _____                    No _____

## Eighth Claim

8a.    By a preponderance of the evidence, was Los Angeles City College's website inaccessible to Plaintiffs?

Yes _____                    No _____

**If you answered "Yes" to Question No. 8a, proceed to Question No. 8b.  If you answered "No" to Question No. 8a, proceed to Question No. 9a.**

8b.    Was LACCD on notice that Los Angeles City College's website was inaccessible to Plaintiffs?

Yes _____                    No _____

**If you answered "Yes" to Question No. 8b, proceed to Question No. 8c.  If you answered "No" to Question No. 8b, proceed to Question No. 9a.**

8c.    Did LACCD deny Plaintiffs meaningful access to the websites because of their disabilities and that a reasonable modification then existed that would have allowed them meaningful access?

Yes _____                    No _____

**If you answered "Yes" to Question No. 8b, proceed to Question No. 8c.  If you answered "No" to Question No. 8b, proceed to Question No. 9d.**

8d.    By a preponderance of the evidence, has LACCD shown that the modification would fundamentally alter its educational services?

Yes _____                    No _____

**If you answered "Yes" to Question No. 8b, proceed to Question No. 8c.  If you answered "No" to Question No. 8b, proceed to Question No. 9a.**

<u>Ninth Claim</u>

9a.    By a preponderance of the evidence, were course required materials in the library at the Los Angeles City College inaccessible to Plaintiffs?

Yes _____                              No _____

**If you answered "Yes" to Question No. 9a, proceed to Question No. 9b.  If you answered "No" to Question No. 9a, proceed to Question No. 10a**

9b.    Was LACCD on notice that course required materials in the Los Angeles City College library were inaccessible to Plaintiffs?

Yes _____                              No _____

**If you answered "Yes" to Question No. 9bd, proceed to Question No. 9c.  If you answered "No" to Question No. 9b, proceed to Question No. 10a.**

9c.    Have Plaintiffs proven by a preponderance of the evidence that Defendant Los Angeles Community College District has violated their rights because the library is inaccessible in a way that has a disparate impact on sight impaired students?

Yes _____                              No _____

**If you answered "Yes" to Question No. 9b, proceed to Question No. 9c.  If you answered "No" to Question No. 9b, proceed to Question No. 9d.**

9d.    By a preponderance of the evidence, has LACCD shown that modifications to the library would fundamentally alter its educational services?

Yes _____                              No _____

10.  Has Defendant Los Angeles Community College District (the "District") proven by a preponderance of the evidence that Plaintiffs did not bring their concerns of disability discrimination to a person at the District who had the authority to address

---

*Payan, et al. v. LACCD*, Case No.:  2:17-cv-01697- SVW(SKx)
PROPOSED JURY INSTRUCTIONS AND VERDICT SHEETS

99

the alleged discrimination and to institute corrective measures?

Yes _____                              No      _____

**Answer Question No. 11.**

11.  Has Defendant Los Angeles Community College District proven by a preponderance of the evidence that it acted in good faith with respect to Plaintiffs?

Yes _____                              No ____

Answer Question No. 12.

12.  Has Defendant Los Angeles Community College District proven by a preponderance of the evidence that Plaintiffs failed to mitigate their damages?

Yes _____                              No _____

**If you answered "Yes" to Question No. 12, answer Question No. 13.  Otherwise, proceed to Question No. 14.**

13.  What damages could have Plaintiffs avoided if they took reasonable efforts to mitigate their damages?

Plaintiff Mason $_____

Plaintiff Payan $ _____

Answer Question No. 14.

14.  Has Defendant Los Angeles Community College District proven by a preponderance of the evidence that Plaintiffs' remaining damages were unforeseeable?

Yes _____                          No _____

Answer Question No. 15.

**Plaintiffs National Federation of the Blind, Inc. ("NFB") and National Federation of the Blind of California, Inc. ("NFB of California")**

<u>First Claim</u>

15.  Do you find by a preponderance of the evidence that Plaintiffs NFB or NFB of California had to divert their resources to combat discrimination of Defendant Los Angeles Community College District?

Yes _____                          No   _____

Answer Question No. 16.

<u>Second Claim</u>

16.  Do you find by a preponderance of the evidence that individual members of Plaintiffs NFB and the NFB of California will be the subject of discrimination by Defendant Los Angeles Community College District in the future?

Yes _____                          No _____

_____

Foreperson

_____

Date

_____

*Payan, et al. v. LACCD*, Case No.:  2:17-cv-01697- SVW(SKx)
PROPOSED JURY INSTRUCTIONS AND VERDICT SHEETS

101

1

2

3   Dated:  May 11, 2023

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BARBOSA GROUP**

Patricia Barbosa


**BROWN GOLDSTEIN & LEVY, LLP**

Sharon Krevor-Weisbaum
Jessica P. Weber
Kevin D. Docherty
Monica R. Basche

*Attorneys for Plaintiffs*


**HAIGHT BROWN & BONESTEEL LLP**

          /s/ Yvette Davis
Richard E. Morton
Yvette Davis
Bruce Cleeland

*Attorneys for Defendant Los Angeles
Community College District*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2023, a copy of the foregoing Parties' Joint Proposed Jury Instructions and Verdict Sheets was sent, by the Court's e-filing system, to:

> Richard E. Morton, Esquire
> Yvette Davis, Esquire
> HAIGHT BROWN & BONESTEEL LLP
> 2050 Main Street, Suite 600
> Irvine, California 92614
> rmorton@hbblaw.com
> ydavis@hbblaw.com

> *and*

> David A. Urban, Esquire
> Mark H. Meyerhoff, Esquire
> Richard Daniel Seitz, Esquire
> LIEBERT CASSIDY WHITMORE
> A Professional Law Corporation
> 6033 West Century Boulevard, 5th Floor
> Los Angeles, California 90045
> durban@lcwlegal.com
> mmeyerhoff@lcwlegal.com
> dseitz@lcwlegal.com

> *Attorneys for Defendant Los Angeles Community College District*

Jessica P. Weber