Mark H. Meyerhoff, Bar No. 180414
mmeyerhoff@lcwlegal.com
David A. Urban, Bar No. 159633
durban@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045
Telephone:   310.981.2000
Facsimile:    310.337.0837

Bruce Cleeland, Bar No. 100524
bcleeland@hbblaw.com
Yvette Davis, Bar No. 165777
ydavis@hbblaw.com
HAIGHT BROWN & BONESTEEL LLP
2030 Main Street, Suite 1525
Irvine, California 92614
Telephone:  714.426.4600
Facsimile:  714.754.0826

Attorneys for Defendant LOS ANGELES
COMMUNITY COLLEGE DISTRICT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY PAYAN, et al., | Case No.:  2:17-cv-01697 SVW(SKx) |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DECLARATIONS FILED JULY 6, 2023 PURSUANT TO COURT ORDER** |
| v. | |
| LOS ANGELES COMMUNITY COLLEGE DISTRICT, | Hearing Date: July 24, 2023 |
| Defendant. | Time:  1:30 p.m. |

Memo. of P's & A's In Support of Declarations Filed 7/6/23 Pursuant to Court Order
Case No. 2:17-cv-01697SVW(SKx)

12112413.2 LO130-075

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

**TO THE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Defendant the Los Angeles Community College District ("the District") submits this Memorandum of Points and Authorities in response to the briefing submitted by Plaintiffs on July 17, 2023, and in preparation for the hearing on July 24, 2023. This short brief highlights important considerations for the hearing. The District reserves the right to provide more detailed briefing at the appropriate time, as necessary, and has no intent to waive arguments not made herein by providing this short brief at this time.

The following are points for this Court's consideration, in the event this Court decides to expedite this matter and issue a Permanent Injunction immediately following the July 24, 2023 hearing.

1.     This Court's order setting the July 24, 2023 hearing asks for evidence detailing ***any and all changes*** that the District and the Los Angeles City College ("LACC") have made with respect to the ADA violations found by the jury. (Order dated June 26, 2023 [Docket No. 580].) This lawsuit and consequently the jury's findings involved allegations from years ago, specifically the time period between 2015-2018, a time pre-dating the COVID-19 pandemic. The Declarations of Carmen Lidz, Vice Chancellor and Chief Information Officer and Dr. Nicole Albo-Lopez, Vice Chancellor of Educational Programs and Institutional Effectiveness confirm that many of the jury's findings of liability rest on educational resources that have been replaced. (*See* Declaration of Carmen Lidz filed July 6, 2023 [Docket No. 583] ("Lidz Decl."); Declaration of Nicole Albo-Lopez filed July 6, 2023 [Docket No. 584] ("Albo-Lopez Decl.").) These include but are not limited to the District and LACC websites, including upgrades to the PeopleSoft embedded program (Lidz Decl., ¶¶ 4-7 (Verdict Form No. 1)), discontinuation and replacement of Etudes (Lidz Decl. ¶¶ 8-11) (Verdict Form No. 2)), change from

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

2

paper copies of accommodation letters to accessible electronic copies and a different system for providing accommodation information (Albo-Lopez Decl. ¶¶ 6-10) (Verdict Form Nos. 11 and 12), discontinuation of MyMathLab (Albo-Lopez Decl. ¶¶ 11-12) (Verdict Form Nos. 3 and 4), access to Job Access With Speech ("JAWS") on library computers without the program timing out, among other things (Albo-Lopez Decl. ¶ 13) (Verdict Form No. 2), and as of fall 2020, utilization of the policies of Equally Effective Alternative Access Plans ("EEAAP") for procurement of educational software and other electronic resources.  (Albo-Lopez Decl. ¶¶ 20-22) (Verdict Form No. 8).

The fact that the resources serving as the basis for liability have either undergone significant and important alterations or, as in most cases, no longer even exist means that this Court should not award injunctive relief as to them.  To do so would violate principles of due process, among other things, because there is no finding that those resources are inaccessible in violation of disability laws.  *See Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 901 (9th Cir. 2007) (holding that claims for declaratory and injunctive relief were mooted by repeal of the challenged ordinance); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) ("[A] defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim."); *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) ("A plaintiff who cannot reasonably be expected to benefit from prospective relief ordered against the defendant has no claim for an injunction."); *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) ( "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome"; collecting cases).[1]

---

[1] Plaintiffs' counsel may point out that the District website, designed to meet the WCAG 2.1 AA standard, went live shortly after the verdict in this case.  This was not timed in any way to relate to the jury verdict, and instead this timing was set forth in a schedule that has been in effect for several years.  The District can

12112413.2 LO130-075

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

2.      Plaintiffs submitted a Proposed Permanent Injunction ("Proposed Injunction") to this Court as part of their briefing and submission of evidence.  A major flaw of Plaintiffs' Proposed Injunction is that a number of its provisions apply to the *entire District* (designated as LACCD), and presumably all of its nine Colleges, whereas the findings of liability in this case related only to *Los Angeles City College* (designated LACC).  Indeed, the prior injunction that this Court issued in July 2019 applied only to City College (with the exception of applying to the District website and PeopleSoft, which were District-wide).  The Court of Appeals viewed even this injunction, applicable only to City College (LACC), as overly broad.  "Our Supreme Court has cautioned that 'injunctive relief should be no more burdensome than necessary to provide complete relief to the **plaintiffs before the court**.  This rule applies with special force where there is no class certification." *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) (emphasis added) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

3.      The Proposed Injunction requires *website compliance* with WCAG 2.1 AA.  The current industry standard in education is WCAG 2.0 AA, an older and more lenient standard and one targeted not just to websites but to software applications, as Carmen Lidz will explain at the July 24 hearing if necessary.  Despite the fact that the current legal standard, and industry standard, only require WCAG 2.0, for several years, the District has been bringing its websites into compliance with WCAG 2.1 Level AA,  going above and beyond industry standards in doing so.  As to education software from commercial vendors, it is undisputed, that it is generally only available in WCAG 2.0 formats.  An injunction that requires that the District only procure educational software in WCAG 2.1, Level AA, as Plaintiffs' propose, would mean the District would be significantly

---

produce documentation at the hearing to confirm this.

12112413.2 LO130-075

1    restricted to procuring very limited educational software, and most importantly

2    forced to comply with a standard higher than is legally required.

3        The Proposed Injunction, as it applies to websites, should mandate only that

4    they be accessible under Title II of the Americans with Disabilities Act.  It should

5    not mandate that the websites conform to higher than industry standard, i.e., much

6    higher than the law requires such as WCAG 2.1 AA.  Indeed, the California

7    Government Code requires California state agencies and entities to have websites

8    that comply *only with WCAG 2.0 AA*, not WCAG 2.1.  *See Cal. Gov. Code §*

9    *11546.7(a).*  Accordingly, if the injunction has to specify a standard for websites

10   and software, that standard should only be WCAG 2.0 AA.  Also, WCAG 2.1

11   should not apply to software applications.

12       4.    The District believes injunctive relief in this matter is unwarranted,

13   since the jury findings from 2015-2018 are now moot.  The District respectfully

14   calls the Court's attention to certain provisions of the Proposed Injunction that are

15   particularly onerous and unworkable, and most legally problematic, or do not relate

16   to the jury's findings of liability.  These include requiring accessibility for resources

17   "prior to or at the same time as sighted students are provided access," which is not

18   required by Title II of the ADA and in fact was not part of the jury instructions or

19   special verdict form in this matter as a basis for establishing liability.  (*See*

20   [Proposed] Permanent Injunction and Final Judgment filed July 17, 2023 [Docket

21   No. 585-5] ("Proposed Injunction"), ¶¶ 2, 3, 5.)  Next, the Proposed Injunction

22   imposes requirements for training of District staff, with no definition of staff, for

23   the largest community college district in the country.  At most, if necessary, the

24   training should  be limited to staff  who in fact interact with students and who may

25   need to help blind students with accessibility.  Mandating training of  custodial

26   staff, clerical workers, and contractors is not legally required and would be

27   extremely burdensome  Although valuable, training is not only expensive, but the

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

District is currently bound by numerous Collective Bargaining Agreements.  Any new mandates must be bargained with it the District's respective unions.  Ignoring or disregarding the mandated Labor Code provisions may likely result in legal disputes for the District.  Accordingly, imposition of training should be narrowly tailored, if required at all.  (*E.g., id.*, ¶¶ 2, 10, 12-16.)

For library resources, injunctive relief should apply, if at all, to require JAWS installation only for library computers available to students, and the requirements for conversion by Office of Special Services ("OSS") should not be imposed because OSS already provides timely conversion services.  (Proposed Injunction, ¶ 2.)

Next, the jury did not determine there was a "practice of steering, directing or requiring" students to attend particular campuses or particular classes at LACC, and instead found only isolated incidents as to Roy Payan.  The issue with Mr. Payan is now moot.  There is therefore no need for injunctive relief as to Mr. Payan.  And most importantly, there is no legal basis to do so.  Nonetheless, if language is required, it should be limited.  (E.g, Proposed Injunction, ¶ 10.)

The District should not be required to hire an Expert Consultant, as this would be overly cumbersome, given the process by which the District must engage contractors, and the District should have the ability to engage the type of consultant it needs, to engage in the tasks it wants, to ensure compliance with Title II of the ADA and other accessibility requirements.  (*Id.*, ¶ 11.)  Pursuant to its Collective Bargaining Agreements, in certain instances, the District is legally prohibited from contracting out bargaining unit work.  A broad injunction that requires retaining a consultant may run afoul of such a prohibition.

No periodic reports should be required; indeed, Plaintiffs requested that the prior injunction from July 2019 include such a provision and this Court denied the request.  (Proposed Injunction, ¶ 20; Order dated September 4, 2019 [Docket No.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

12112413.2 LO130-075

335].)  Next, WCAG 2.0 AA should apply as the standard for websites and software applications, not WCAG 2.1 AA, for the reasons described above.  (*Id.*, ¶ 4.)

The foregoing are only examples, and the District will be prepared further to address the Proposed Injunction at the July 24, 2023 hearing.  In the interest of expediting proceedings, the District has attached a ***redline of Plaintiffs' Proposed Injunction*** that deletes or rewrites those provisions that are least workable for the District and/or obviated by the District's existing programs.  The District does not waive any rights to challenge either the imposition of an injunction at all or any aspects of the Proposed Injunction but submits this document to help the Court in consideration of what relief is appropriate.

5.     The Proposed Injunction should include a provision on requirements that turn out to be a ***fundamental alteration or undue burden***.  The Proposed Injunction already references this standard as a procedural matter in paragraph 19, but the injunction from July 2019 included this important and standard safeguard by stating: "In all cases, for each of the requirements imposed above, LACCD shall not be required to take any particular action if doing so amounts to an undue financial or administrative burden or would result in the fundamental alteration in a program, service, or activity at LACC consistent with 28 C.F.R. §§ 35.130(b)(7) and 36.164."  (Permanent Injunction and Final Judgment entered July 22, 2019 (Docket No. 330), at 5, ¶ 6.)

6.     Plaintiffs' briefing and expert materials submitted July 17, 2023 suffer from several major flaws.  First, they miss a main point of the Declarations of Carmen Lidz and Nicole Albo-Lopez, which is to provide the Court with evidence of how processes and resources ***have changed*** since 2015-2018.  Once the District has shown that resources, for example the websites, have completely changed, this Court's consideration of the matter should end, because no injunctive relief is

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

12112413.2 LO130-075

warranted.  *Outdoor Media*, 506 F.3d at 901.  Testing by Peter Bossley and Jon Gunderson of existing District websites and identification of supposed flaws completely lacks relevance for injunctive relief, because they are testing websites the jury never considered and that Plaintiffs themselves never used, i.e., ones for which no liability determination has been made.  An order to overhaul or change the websites would be improper, especially given how narrowly federal courts must tailor injunctive relief as applied to state agencies.

In fact, when a federal court enjoins the actions of a state agency, the Ninth Circuit must "scrutinize the injunction closely to make sure that the remedy protects the plaintiffs' federal constitutional and statutory rights but does not require more of state officials than is necessary to assure their compliance with federal law." *Clark v. Coye*, 60 F.3d 600, 604 (9th Cir. 1995).  "Due to concerns of comity and federalism, the scope of federal injunctive relief against an agency of the state government must always be narrowly tailored to enforce federal constitutional and statutory law only." *Id.* at 603-604.  An injunction that "requires any more of state officers than demanded by federal constitutional or statutory law" is an abuse of discretion. *Id.* at 604 (district court abused its discretion by issuing an injunction without making a judicial determination that the prohibited conduct actually violated federal law); *see also Toussaint v. Yockey*, 722 F.2d 1490, 1493 (9th Cir. 1984).

7.     Plaintiffs' briefing and expert materials suffer from the second major flaw that Plaintiffs' Response from July 17, 2023 does not refute that many items of liability the jury found rested on one-time occurrences not likely to recur.  In order to be entitled to an injunction as to these items, Plaintiffs must show that they face a real or immediate threat of substantial or irreparable injury.  *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999).  Moreover, because Plaintiffs seek to enjoin a government agency, their case "must contend with the well-established

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

8

12112413.2 LO130-075

rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d 846, 850 (9th 2001) (quoting *Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976)). This rule "bars federal courts from interfering with non-federal government operations in the absence of facts showing an immediate threat of substantial injury." *Id.*

The fact that items of liability constituted isolated acts not likely to recur means Plaintiffs cannot establish they face a real and immediate threat of continued, future violations of the ADA to warrant a permanent injunction on these items. Indeed, both Plaintiffs successfully completed their coursework at Los Angeles City College, with Portia Mason taking additional courses at another LACCD campus in 2021, and Roy Payan attending and graduating from Cal State Los Angeles. LACCD's process for providing accommodation information has changed since the commencement of this action. Plaintiffs' experts Peter Bossley and Jon Gunderson do not even address these issues, such as availability of note takers and lack of testing accommodations. Even if Plaintiffs establish violations of the ADA, those violations were one-time occurrences from the period of this lawsuit, in 2015-2018, and were not in conformity with District policy. (Albo-Lopez Decl., ¶¶ 5, 19, 25, 27, 29-31; Lidz Decl., ¶ 3.) Occasional past violations, without more, "do[] not support an inference" that Plaintiffs are entitled to prospective injunctive relief. *Midgett*, 254 F.3d at 850. In addition, the broad injunctive relief sought ignores the mandate that the District is legally required to engage in the interactive process to determine the individualized need of each student.

8.     The District has worked to improve its systems, in particular those at LACC, and this includes making several strategic hires to address specifically access of disabled students at the District's nine colleges.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

12112413.2 LO130-075

9.   In light of the foregoing, the District respectfully requests that this Court award no injunctive relief, but that if it must, this Court order only specifically tailored injunctive relief consistent with the facts, principles, and standards set forth above.  Most importantly, the injunctive relief should take into consideration the legal standards in the Government Code, what is currently available by commercial vendors, and the implications to the District's existing Collective Bargaining Agreements.

Dated:  July 21, 2023                          LIEBERT CASSIDY WHITMORE

By:   */s/ David A. Urban*
                Mark H. Meyerhoff
                David A. Urban
                Richard Daniel Seitz
                Attorneys for Defendant LOS ANGELES
                COMMUNITY COLLEGE DISTRICT

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

10

12112413.2 LO130-075

# EXHIBIT A

**[PROPOSED] PERMANENT INJUNCTION AND FINAL JUDGMENT** Upon consideration of the jury's verdict, dated May 26, 2023, finding that Defendant Los Angeles Community College District ("LACCD") has violated Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, et seq. (the "ADA" or "Title II"), Dkt. No. 567, LACCD's declarations submitted on July 6, 2023, Dkt Nos. 583-584, Plaintiffs' Response thereto, submitted on July 17, 2023, and the evidence and arguments the Court heard on July 24, 2023, the Court ENTERS, DECREES, AND ORDERS the following:

1.      Within one year of the date of this Order, LACCD shall ensure compliance with the Alternate Media Production Policy, Dkt. No. 48-21 (the "Alternate Media Policy" (Pls.' trial exhibit 4)), in effect at Los Angeles Community College ("LACC"), for all courses offered at LACC and for all other educational resources made available to students at LACC;

2.      Within one year of the date of this Order, LACCD shall evaluate LACC's integrated library system website ~~and all library databases~~ available to students enrolled at LACC to determine whether the library resources are fully accessible to blind students. Accessible means that a blind user can acquire the same information, ~~engage in the same interactions, and enjoy the same services as a sighted person in an equally effective and equally integrated manner,~~ with substantially equivalent ease of use. LACCD shall establish alternative means of providing access to the equivalent benefits of any inaccessible library resources to blind students in a timely manner~~, i.e., prior to or at the same time sighted students are provided access to those library resources~~, including outside of the classroom, by: (a) installing Job Access with Speech ("JAWS") screen access software on all publicly accessible computer terminals in the library; (b) training ~~all of its~~ LACC's library staff~~, whether paid employees, contractors, or volunteers,~~ in the

12

use of JAWS, and in the processes for creating accessible documents, including but not limited to Word documents, PowerPoints, and PDFs, so that a staff member who has this training is available any time the library is open; (c) creating and implementing a system and corresponding policies and procedures that will allow blind students to schedule times to work with a research librarian to assist in their navigation and review of any inaccessible library resources, and describing that process conspicuously on the LACC library website; (d) establishing a system that allows blind students to submit inaccessible resources for timely conversion to accessible formats to either LACCD library staff or the Office of Special Services, or another qualified office, electronically; and (de) requiring that any library reserve materials identified by instructors for use by their students are available in an accessible format in a timely manner if a blind student is registered in the class at issue, and has completed the reasonable accommodation form.

3.     Within three monthsone year of the date of this Order, LACCD shall appoint or designate an individual as the Dean of Educational Technology for LACC, with responsibilities as established in the Alternate Media Policy and in other official policies or regulations established by LACCD in effect at LACC. The Dean of Educational Technology at LACC must be proficient in accessibility under the ADA. Instructors at LACC, and OSS staff, shall consult with the Dean of Educational Technology as necessary to ensure (a) the preparation and furnishing of classroom materials to blind students in an accessible format in a timely manner, i.e., prior to or at the same time that sighted students receive the equivalent materials, including outside of the classroom, (b) the timely conversion of any inaccessible instructional materials into a format accessible to blind students, or providing alternative means of access to the equivalent benefits of inaccessible instructional materials in a timely manner; (c) the timely accommodation of blind

students pursuant to the terms of their accommodation letters, (d) timely responses to requests for reasonable accommodations sought by blind students, and (e) compliance with the Alternate Media Policy;

4.      Within one year of the date of this Order, LACCD shall ensure that the LACCD website, the LACC website, and all other educational or instructional websites available to students enrolled at LACC, including all educational resources or embedded programs on those websites (such as PeopleSoft) made available to LACC students, are accessible to blind students in accordance with WCAG 2.01 Level AA standards;

5.      LACCD shall assess all educational resources or other technological programs considered for acquisition and use at LACC, including resources that are purchased or licensed from third party vendors, for accessibility to blind students prior to their acquisition. If any resources considered for acquisition are determined to be inaccessible to blind students enrolled at LACC, LACCD shall either (a) decline to acquire the resources or (b) acquire the inaccessible technology but establish alternative means of providing access to the equivalent benefits of the inaccessible resources to blind students in a timely manner, by for example, approving an Equally Effective Alternative Access Plan ("EEAAP")., i.e., prior to or at the same time sighted students are provided access to those resources, including outside of the classroom;

6.      Within three months of the date of this Order, an accessible, fillable copy of a blank Academic Accommodations Authorization form will be posted on the LACCD and LACC websites. Immediately following the process to determine a student's accommodations at LACC, and no later than when LACCD provides a student's course instructor with a copy of the completed Academic Accommodations Authorization form, LACCD will provide blind students with a

14

copy of their completed Academic Accommodations Authorization form in an~~their~~ ~~requested~~ accessible format ~~(e.g., an accessible electronic format, Braille, or large~~ ~~print)~~.

7.    When a blind student is authorized to audio record their classes as a disability-related accommodation, LACC~~D~~ shall include the following language on the completed Academic Accommodations Authorization form when it is sent to the student and the instructor: "California law expressly authorizes the use of electronic listening and recording devices in the classroom as an auxiliary aid and academic adjustment for students with disabilities." The language shall be placed on the form in close proximity to the section authorizing audio recording as an accommodation. LACC~~D~~ shall comply with the terms of this paragraph within three months of the date of this Order.

8.    Within ~~six months~~one year of the date of this Order, LACC~~D~~ shall ~~develop and implement a policy to~~ ensure that it provides qualified notetakers to all students for whom this accommodation is approved in their accommodation letter, including by offering sufficient payment to adequately recruit, train, and retain qualified notetakers.

9.    LACC~~D~~ shall ensure that all approved accommodations are provided to blind students in accordance with the students' Academic Accommodations Authorization forms, including during exams, class quizzes, or other testing. LACC~~D~~ shall ensure that blind students who require accommodations for testing, pursuant to their accommodations letter, receive those accommodations in a timely manner and without unreasonable delay (i.e., that students are permitted to take their exams at the agreed-upon date and time). LACC~~D~~ shall further ensure that where a blind student's testing accommodations letter specifically require~~s~~ the use of a human reader or scribe, that the individual assigned as a reader or scribe is

15

trained and qualified to serve in this role (for example, by ensuring that readers assigned to math examinations are trained on how to properly read math problems).

10.     LACC~~D~~ shall <u>not</u>~~immediately end the practice of~~ steer~~ing~~, direct~~ing~~, or requir~~e~~<u>ing</u> students to attend or not attend particular campuses, courses, or course sections because they are blind. LACC~~D~~ shall <u>not</u> ~~immediately end the practice of~~ avoid~~ing~~ the assignment of blind students to ~~certain~~ professors<u>, if any,</u> who have in the past stated they are unable or unwilling to comply with the terms of Academic Accommodations Authorization forms. ~~Instead, as detailed below, all instructors shall be trained in preparing accessible classroom materials, shall be trained on the relevant alternate media policy, and shall be required to comply with approved Academic Accommodation Authorization forms.~~

~~11.     Within 120 days of the date of this Order, LACCD shall hire one or more third-party consultants ("Expert Consultant") to assist it with fulfilling its obligations hereunder. The third-party consultant(s) shall:~~

~~a.     Be knowledgeable concerning:~~

~~i.     The general requirements of the ADA and its applicable regulations;~~

~~ii.     Accessibility and usability of web content;~~

~~iii.     Accessible document development and remediation;~~

~~iv.     Accessibility and usability of equipment;~~

~~v.     Testing and evaluating the accessibility of web and other technologies;~~

~~vi.     This Order;~~

16

vii.    WCAG 2.1 Level AA, ATAG 2.0, UAAG 1.0, WAI-ARIA, Math ML, WCAG2ICT, and ePub3;

viii.    The appropriate provision of auxiliary aids and services for students with disabilities in non-electronic or non-digital formats, such as Braille hard copy, tactile graphics, large print hardcopy, or sign language interpretation; and

ix.    Reasonable modifications to policies, practices, and procedures in higher education to achieve equal access for students with disabilities;

b.    Assist LACCD in the development of policies and initiatives required by this Order;

c.    Report and document quarterly to LACCD's vice president with supervisory authority over the Offices of Disability Support Services whether:

i.    LACCD's websites conform to WCAG 2.1 Level AA and this Order;

ii.    Third-party websites on which LACCD places content or which it uses for web services conform to WCAG 2.1 Level AA and this Order, or how equally effective alternate access is provided, if appropriate, under this Order;

iii.    Learning Management Software and other technologies used by LACCD conform to WCAG 2.1 Level AA and this Order, or how equally effective alternate access is provided, if appropriate, under this Order;

iv.    LACCD has received any complaints or grievances concerning the use of inaccessible technologies; and

v.    The requirements of this Order have been met, and, if not, what requirements have not been met and why.

17

11~~2~~.   LACC~~D in coordination with its Expert Consultant~~ shall develop a training program that shall begin with a live training session in the fall of 2024 for all ~~of its staff who interact with students and~~ instructors that addresses the requirements of the ADA, this Order, available resources, and grievance procedures ("ADA Training"). ~~Beginning with the fall 2024 semester and thereafter on a regular basis for the term of this Order, on a frequency determined by LACCD with advice and guidance from the Expert Consultant, LACCD shall provide ADA Training to all staff who interact with students and instructors and all LACCD executives, administrators, and support staff.~~ This training may be provided in live or online sessions. ~~LACCD shall solicit comments from Plaintiff the National Federation of the Blind ("NFB") with respect to the development of its ADA Training program, but, as between the Parties, LACCD will make the final decision with regard to implementation subject only to further Order of this Court.~~

12~~3~~.   The scope of the ADA Training shall vary according to a staff member or instructor's responsibilities as follows:

a.    In all instances, the ADA Training must address the requirements of Title II of the ADA; the existence of this Order and how staff members and instructors may access a copy; LACCD's resources for students and instructors on disability-related matters (including, but not limited to, the ~~identity and~~ functions of LACCD's Offices of Disability Support Services and the ~~identity and~~ functions of LACC~~D~~'s designee for coordinating LACC~~D~~'s response to disability-related grievances); LACCD's student accommodation process and procedures, including instructors' obligations to provide all accommodations authorized by LACCD via Academic Accommodations Authorization forms given to students

18

registered with LACCD's Offices of Disability Support Services; and Title II "best practices" to ensure LACCD's compliance with the ADA.

b.      Other classes of employees~~staff members, including both employees and contractors~~, as solely determined by LACCD ~~in consultation with its Expert Consultant~~, shall be trained concerning:

i.      Common assistive technologies and other auxiliary aids and services used by individuals with disabilities in interacting with computers, websites, equipment, and learning in and outside of the classroom, including non-electronic formats;

ii.      Common technological accessibility barriers encountered by individuals with disabilities, including those found on websites, in various document formats, and equipment and devices used in laboratories and classrooms;

iii.      Common methods, resources, personnel, and time frames used in ensuring that word-processing, spreadsheet and presentation documents, converted and digital textbooks, informational images, multimedia, and course equipment and devices are accessible;

iv.      The means by which one creates and provides accessible instructional materials in the classroom setting or by delivery electronically through course websites or email;

v.      An overview of accepted digital accessibility standards;

vi.      Consideration of selecting course texts that have accessible electronic formats, such as ePub3; and

vii.      Reporting obligations under Paragraph 20 of this Order.

19

13~~3~~4.   For persons who must receive ADA Training pursuant to this Order, but who did not receive training on a designated training date required under this Order (for instance, because they were on leave from LACC~~D~~, because they began their affiliation with LACC~~D~~ subsequent to the training date, or because they assumed a position within LACC~~D~~ subjecting them to coverage under this paragraph subsequent to the training date), LACC~~D~~ shall provide them with ADA Training within sixty (60) days after the individual's commencement of service to LACC~~D~~ in a position covered by this paragraph or within sixty (60) days of their return to or start at LACC~~D~~ (for instance, from leave).

14~~5~~.   LACCD shall continue to develop and produce an acceptable curriculum for the ADA Training, which shall be conducted live for the fall 2024 semester and shall be made final, subject to revisions and modifications that may be required under the law, for use beginning with the spring 2025 semester. The NFB will share lists of resources relating to the training curriculum, which LACCD may~~shall~~ consider before making its final decision as to the contents of the training curriculum. ~~LACCD shall make available on LACCD's websites the name(s), qualifications, and contact information of the individual(s) who will conduct the training, no later than 180 days after the effective date of this Order. LACCD shall adopt training protocols that include maintenance of documentation establishing the identity of staff members attending each session of ADA Training conducted.~~

15~~6~~.   During all orientation sessions offered during the term of this Order to incoming students (including first-year and transfer students), LACC~~D~~ shall include a ~~mandatory~~ presentation ~~by a member of LACCD's Offices of Disability Support Services~~, either as a stand-alone module or as part of orientation on other resources available to students ("ADA Student Training").

16~~7~~.    The ADA Student Training at LACC shall include, but not be limited to, the functions of LACC~~D~~'s ADA Coordinator and LACCD's Offices of Disability Support Services, the process for obtaining an LACC~~D~~-issued Academic Accommodations Authorization form, and the grievance policy and process pertaining to disability-related issues. During the ADA Student Training, LACC~~D~~ shall distribute written information (in an accessible format where appropriate) on the functions of LACC~~D~~'s ADA Coordinator and LACCD's Offices of Disability Support Services (including the process for obtaining an initial or renewed LACCD-issued Academic Accommodations Authorization form). ~~LACCD, with the assistance of its Expert Consultant, shall determine what other matters will be included in the ADA Student Training. LACCD shall produce to the NFB a curriculum for the ADA Student Training required under this Order. LACCD shall accept recommendations from the NFB in producing curriculum for the ADA Student Training, but LACCD shall make the final decision with regard to such curriculum subject only to further Order of this Court.~~

17.    In all cases, for each of the requirements imposed above, LACCD shall not be required to take any particular action if doing so amounts to an undue financial or administrative burden or would result in the fundamental alteration in a program, service, or activity at LACCD consistent with 28 C.F.R. §§ 35.130(b)(7) and 36.164.

18~~8~~.    Within 30 days of the date of this Order, LACCD shall disseminate this Order to all employees, ~~contractors,~~ and students at LACC~~D~~;

19~~9~~.    The Court shall retain jurisdiction over the enforcement of this Order. If Plaintiffs believe that LACCD has violated any portion of this Order, Plaintiffs shall give notice of such alleged violation to LACCD, and LACCD must respond in writing to such notice no later than 4~~1~~5 days after receipt. The parties shall meet

21

and confer consistent with the Federal Rules of Civil Procedure, and if the parties are unable to resolve a dispute over LACCD's alleged violation of this Order, then (1) Plaintiffs may move this Court to seek enforcement of the Order, or alternatively, (2) LACCD may file a motion for relief to seek a finding that Plaintiffs' requested course of action constitutes an undue burden or fundamental alteration under 28 C.F.R. §§ 35.130(b)(7) and 35.164; Each Party shall be responsible for its own attorney's fees.

20. LACCD shall provide to the Court, the NFB, and counsel for the Plaintiffs a report setting out the progress being made with regard to obligations set forth in this Order on the following schedule: four (4) months after entry of the Order; eight (8) months after entry of the Order; twelve (12) months after entry of the Order; and annually thereafter for the duration of the Order;

2021. All notices and reports that LACCD is required to send to counsel for the Plaintiffs under this Order shall be sent by e-mail to Jessica P. Weber at jweber@browngold.com, Kevin D. Docherty at kdocherty@browngold.com, and Patricia Barbosa at PBarbosa@Barbosagrp.com;

2112. This Order shall become effective as of the date the Order is signed and entered in the above-captioned case, and the Order shall remain in effect for a period of three years from the effective date;

2223. Pursuant to the jury verdict entered in this case on May 26, 2023, Dkt. No. 567, judgment is entered in favor of Plaintiff Roy Payan against LACCD in the amount of $3,000218,500, and judgment is entered in favor of Plaintiff Portia Mason against LACCD in the amount of $124,000, with interest thereon at the legal rate as provided by law;

2~~3~~4.   Pursuant to prior evidence and rulings in this case that the National Federation of the Blind, Inc. and the National Federation of the Blind of California, Inc. have standing to pursue claims against LACCD on behalf of their members, including Portia Mason, see Payan v. LACCD, No. 19-56111, 2021 WL 3743307, at *2 (9th Cir. Aug. 24, 2021), judgment is further entered in favor of the National Federation of the Blind, Inc. and the National Federation of the Blind of California, Inc. against LACCD;

2~~45~~.   Plaintiffs are deemed the prevailing party pursuant to 42 U.S.C. § 12205 and shall be entitled to recover their reasonable attorneys' fees and costs incurred in this action. Plaintiffs are ordered to file a motion for attorneys' fees within 45 days of this Order; and

2~~56~~.   This Order shall be deemed a final judgment pursuant to Federal Rule of Civil Procedure 58.

SO ORDERED this ___ day of 2023.

 

 

_____
Honorable Stephen V. Wilson
United States District Judge for the
 Central District of California

23