Mark H. Meyerhoff, Bar No. 180414
mmeyerhoff@lcwlegal.com
David A. Urban, Bar No. 159633
durban@lcwlegal.com
Liebert Cassidy Whitmore
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045
Telephone: 310.981.2000
Facsimile: 310.337.0837

Bruce Cleeland, Bar No. 100524
bcleeland@hbblaw.com
Yvette Davis, Bar No. 165777
ydavis@hbblaw.com
Haight Brown & Bonesteel LLP
2030 Main Street, Suite 1525
Irvine, California 92614
Telephone: 714.426.4600
Facsimile: 714.754.0826

Attorneys for Defendant LOS ANGELES COMMUNITY
COLLEGE DISTRICT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROY PAYAN, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>LOS ANGELES COMMUNITY COLLEGE DISTRICT,<br><br>　　　　　Defendant. | Case No.: 2:17-cv-01697 SVW(SKx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES RE: INJUNCTIVE RELIEF IN PREPARATION FOR AUGUST 10, 2023 HEARING**<br><br>Hearing:　August 10, 2023<br>Time:　　1:30 p.m. |

1

**Memo of Points and Authorities re Injunctive Relief**

12120084.2 LO130-075

# TABLE OF CONTENTS

**Page**

I. PLAINTIFFS' COUNSEL'S ONGOING AWARENESS OF THE CHANGES IN STUDENT RESOURCES AND PROCESSES FURTHER CONFIRMS INJUNCTIVE RELIEF IS UNWARRANTED. ........................................................................................ 8

II. VPAT FORMS FROM THIRD PARTY VENDORS CONFIRM THE ACCESSIBILITY OF SOFTWARE PROGRAMS AND ELECTRONIC RESOURCES THAT THE DISTRICT PURCHASES ............................................................................................... 11

III. LEGAL PRINCIPLES GOVERNING INJUNCTIVE RELIEF COMBINE TO CONFIRM THAT THIS COURT SHOULD NOT ISSUE AN INJUNCTION, OR SHOULD ISSUE ONLY A VERY A LIMITED ONE .................................................................... 13

IV. IMMUNITY UNDER 47 U.S.C. SECTION 230 BARS INJUNCTIVE RELIEF THAT PLAINTIFF DEMANDS ........................... 15

V. CONCLUSION ................................................................................ 17

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexander v. Choate*,
  469 U.S. 287 (1985) .................................................................................... 14

*Hodgers-Durgin v. De La Vina*,
  199 F.3d 1037 (9th Cir. 1999) ...................................................................... 8

*Jane Doe No. 1. v. Backpage.com*, LLC,
  817 F.3d 12 (1st Cir. 2016) ......................................................................... 15

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*,
  725 F.3d 1088 (9th Cir. 2013) .................................................................... 14

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009) ............................................................... 7, 10

*Mhany Mgmt., Inc. v. City of Nassau*,
  819 F.3d 581 (2d Cir. 2016) ........................................................................ 14

*Midgett v. Tri-County Metro. Transp. Dist.*,
  254 F.3d 846 (9th 2001) ............................................................................... 8

*Nat'l Ass'n of the Deaf v. Harvard Univ.*,
  377 F. Supp. 3d 49 (D. Mass. 2019) ..................................................... 15, 16

*Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*,
  No. 3:15-CV-30024-KAR, 2019 WL 1409301 (D. Mass. 2019) ............... 16

*Oliver v. Ralphs Grocery Co.*,
  654 F.3d 903 (9th Cir. 2011) ........................................................................ 7

*Outdoor Media Group, Inc. v. City of Beaumont*,
  506 F.3d 895 (9th Cir. 2007) ........................................................................ 8

*Payan v. Los Angeles Community College Dist.*,
  2021 WL 3743307 (9th Cir. 2021) ............................................................... 6

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
  697 Fed. Appx. 526 (9th Cir. 2017) ........................................................... 16

*Tsombanidis v. W. Haven Fire Dep't*,
  352 F.3d 565 (2d Cir. 2003) ....................................................................... 14

*Wong v. Regents of University of California*,
  192 F.3d 807 (9th Cir. 1999) ...................................................................... 14

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ...................................................................... 15

**Federal Regulations**

28 C.F.R. § 35.130(b)(7) ............................................................................... 14, 15

28 C.F.R. § 36.164 .......................................................................................... 14, 15

**Federal Codes**

29 U.S.C. § 794(D) ................................................................................................ 11

47 U.S.C. § 230 (c)(1) ..................................................................................... 15, 16

**State Codes**

Gov. Code § 11546.7(a) .......................................................................................... 14

**TO THE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Defendant the Los Angeles Community College District ("the District") submits this Memorandum of Points and Authorities in preparation for the August 10, 2023 hearing on injunctive relief in this matter. This short Memorandum first introduces some of the evidence specifically requested by this Court at the last hearing, on July 24, 2023, and then sets forth further points for this Court's consideration in formulating injunctive relief.

The District has continued before and after this lawsuit began in 2017 to strive to improve how sight-impaired students access educational resources at the District colleges, including the college Plaintiffs attended, Los Angeles City College ("LACC"). This has included not only spending millions of dollars to obtain resources with state-of-the-art accessibility, but also devoting enormous amounts of administrative time, including participation of individuals hired specifically to address accessibility issues for disabled students including the sight-impaired. Changes made after the time period at issue in this case, 2015-2018, include among other things creating a new website platform for the District and its nine colleges with specific requirements for accessibility, upgrading for sight-impaired students the accessibility of the top-of-the-market PeopleSoft system in partnership with its manufacturer Oracle, introducing and implementing the program of applying Equally Effective Alternative Access Plans ("EEAAPs") for purchase of electronic educational resources, and entirely changing the system of how accommodation information (previously accommodation letters) are communicated to students and faculty.

For this case, the District's ongoing efforts and the passage of time have made injunctive relief unavailable. In fact, injunctive relief would be counter-productive, and would be wholly improper if it required the District to tear down and overhaul new systems that no jury has found fail to comply with the Title II of

the Americans with Disabilities Act ("ADA"). Indeed, the District has shown the new resources are accessible to blind students and comply with Title II standards. Moreover, the District's diligence in improving the accessibility of its educational resources for the sight-impaired should count in its favor in determining injunctive relief; the District should not be penalized for refusing to sit idle while this lawsuit is pending and instead making significant efforts to improve accessibility.

One could reflect that the passage of time is no one's fault, so that it is no one's fault that Plaintiffs now in 2023 lack an injunctive relief remedy. But it is, in fact, Plaintiffs' counsel's overly aggressive litigation tactics and over-the-top demands that delayed the case's resolution so many years. For example, in the summer of 2019, after the jury returned its verdict, Plaintiffs requested an extraordinarily overbroad 20-page injunction that applied to every one of the District's nine colleges among other things, even though the liability findings applied only to LACC. (See, [Proposed] Permanent Injunction and Final Judgment filed July 1, 2019 [Docket No. 325-4], at 4-19.) This Court rejected Plaintiffs' counsel's request, and instead on July 22, 2019 issued a narrower injunction of some 4 pages that applied for the most part only to LACC, which the Plaintiffs had attended. (See, Permanent Injunction and Final Judgment filed July 22, 2019 [Docket No. 330] at 2-4.) The Ninth Circuit found this injunction "overly board" and ultimately vacated it. *Payan v. Los Angeles Community College Dist.*, 2021 WL 3743307 *3 (9th Cir. 2021) (un-published portion of decision). Yet almost two years after that decision, Plaintiffs' counsel has now requested an injunction that is in many respects ***broader*** than the one issued in 2019 that the Ninth Circuit ***disapproved***. For example, Plaintiffs' Proposed Injunction again applies to all nine colleges in most places (see, [Proposed] Permanent Injunction and Final Judgment, filed July 17, 2023 [Docket No. 585-5], ¶¶ , 8, 9, 10, 13, 16.) If adopted, it would result in yet another costly appeal, and passage of even more time. Plaintiffs' counsel has no one else to blame for their injunctive relief demands being moot.

*See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) ("[A] defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim.").

Moreover, this Court questioned at the last hearing, on July 24, 2023, whether Plaintiffs' counsel knew of the costly changes the District was making to its systems in the years between the 2019 judgment and the 2023 trial, and Plaintiffs' counsel in fact ***did*** know. For example, as explained below, the District even provided them in the winter of 2019-2020, information that the District was replacing its websites entirely and that Sensis was the vendor creating the new websites. As detailed below, that has not stopped Plaintiffs' counsel from suggesting only now that the District should simply tear down/overhaul those systems on the word of Plaintiffs' experts and their minimal testing done the first time in summer of 2023.[1] Plaintiffs' counsel's wait-and-pounce tactics serve as yet another reason this Court, sitting in equity, should deny injunctive relief. *Klein v. City of San Clemente*, 584 F.3d 1196, 1207 (9th Cir. 2009) (to obtain a permanent injunction, a plaintiff must demonstrate they are "likely to suffer irreparable injury in the absence of a [permanent] injunction, and that the *balance of equities* and the public interest tip in [their] favor.") (emphasis added).

The District reserves the right to provide more detailed briefing at the appropriate time, as necessary, and has no intent to waive arguments not made

---

[1] At the July 24, 2023 hearing on injunctive relief, when the issue of changes in resources was discussed, Plaintiffs' counsel outrageously claimed that "generally, there has been no disclosure of these changes until we received the Declarations" on July 6, 2023, and "[t]his is the first time we're hearing the details of these changes." (Reporter's Transcript of Proceedings on July 24, 2023 (Docket No. 597), page 67, lines 13-20.) As described below, Plaintiffs' counsel had in fact received over three years ago in March 2020 the declarations of Vice Chancellor and Chief Information Officer Carmen Lidz and then-Vice Chancellor of Educational Programs and Institutional Effectiveness Ryan Cornner detailing changes including the specifics of the website re-design project. In addition, in the winter of 2019-2020, as part of discussions on whether to stipulate to stay the injunction pending the appeal, the District's counsel notified Plaintiffs' counsel of the Sensis project to build new websites compliant with WCAG standards, even e-mailing to Plaintiffs' counsel a Request for Proposal and Statement of Work for the project.

herein by providing this short brief at this time.

## I. PLAINTIFFS' COUNSEL'S ONGOING AWARENESS OF THE CHANGES IN STUDENT RESOURCES AND PROCESSES FURTHER CONFIRMS INJUNCTIVE RELIEF IS UNWARRANTED.

The District's prior briefing and evidence confirmed that this Court should not issue the injunctive relief requested by Plaintiffs, among other reasons because resources at issue have changed since the 2015-2018 time period of the lawsuit, so that prospective relief clams based on prior violations are moot. *See Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 901 (9th Cir. 2007) (claims for declaratory and injunctive relief were mooted by repeal of the challenged ordinance). The District's prior briefing and evidence confirmed that injunctive relief is also unwarranted, because findings of liability rested on one-time occurrences not likely to recur. *See Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999) (to obtain injunctive relief, plaintiff must show that they face a real or immediate threat of substantial or irreparable injury); *Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d 846, 850 (9th 2001) (federal courts should not "interfere[e] with non-federal government operations in the absence of facts showing an immediate threat of substantial injury.").

Discussion at the July 24, 2023 hearing confirmed that yet another reason exists why this Court should issue no injunctive relief – for years, Plaintiffs and their counsel had ***full awareness*** of monumental changes the District was making to its websites, processes, and other resources at issue, including implementing safeguards to make the resources accessible to blind students. Plaintiffs' counsel had this awareness because the District and its counsel ***told them*** in early 2020, even before the pandemic.

The District disclosed its ***website redesign*** project to Plaintiffs in early 2020 in connection with a motion to stay the injunction pending appeal. Vice Chancellor and Chief Information Officer Carmen Lidz in a supporting declaration explained at

that time: "The District is the process of a comprehensive website redesign project that will unify the LACCD, Los Angeles City College, East Los Angeles College, West Los Angeles College, Los Angeles Southwest College, Los Angeles Harbor College, Los Angeles Valley College, Los Angeles Mission College, Pierce College, and Los Angeles Trade-Tech College websites onto a single platform that supports WCAG 2.1 AA Level standards." (Declaration of Carmen Lidz filed March 6, 2020 [Docket No. 388-6] ("Lidz Decl."), ¶ 7.)  She also referenced the Monsido tool the District planned to implement for quality assurance to confirm accessibility: "As part of the website redesign project, the District is introducing a quality assurance tool to ensure monitoring of websites on a regular basis and take corrective action as needed.  The quality assurance tool will identify errors based on guidelines that address visual, hearing, and physical abilities based on WCAG 2.1 standards.  This will produce weekly, monthly, and on-demand reports that highlight errors and show compliance progress." (*Id.*)  Then-Vice Chancellor of Educational Programs and Institutional Effectiveness Ryan Cornner also filed a declaration in support of the motion to stay that described the website re-design project further: the website re-design project "will consolidate the District website with the websites of each college so they are all on the same information platform. In doing so, each website will be completely re-built from the ground up." (Declaration of Ryan Cornner filed March 6, 2020 [Docket No. 388-5] ("Cornner Decl."), ¶ 3.)  He described that the District had engaged Sensis to conduct the work.  (*Id.*, ¶ 4.)

      In addition, before this, as part of discussions on whether to stipulate to stay the injunction pending the appeal, the District's counsel in December 2019 notified Plaintiffs' counsel of the project to build new websites compliant with WCAG standards.  (Declaration of David A. Urban filed herewith, ¶ 3.)  The District's counsel even e-mailed a proposed Request for Proposal and Scope of Work document for the project.  (*Id.*)  Also, years later in March 23, 2023, during

proceedings in this Court prior to re-trial, the District's counsel Bruce Cleeland confirmed to Plaintiffs' counsel that the software at issue in the 2019 trial was no longer being utilized by LACC. (Declaration of Bruce Cleeland, filed herewith, ¶¶ 3-4.)

Vice President's Lidz's declaration filed in March 2020 also explained accessibility upgrades being done to *PeopleSoft*. She explained: "In the past several months, the District has taken steps to improve the accessibility of its PeopleSoft program. We have implemented certain vendor-recommended configurations to enable accessibility layout features. Our testing confirms that blind students using text-to-speech software like JAWS are able to navigate LACCD's PeopleSoft Student Information System." (Lidz Decl., ¶ 4.) She attached the VPAT provided by PeopleSoft at that time, which confirmed compliance to WCAG 2.0, which she explained was the market standard for accessibility. (*Id.*, ¶¶ 3, 6.) Ryan Cornner, in his declaration, describes the background of PeopleSoft – it took 8 years to install and implement, 3 years to test, and select the software, and 5 years to build and implement the customized interface. (Cornner, Decl., ¶ 6.) The customized interface developed with Oracle cost approximately $15 million. (*Id.*) As of March 2020, the District had spent an additional approximately $1 million to update PeopleSoft from version 9.0 to 9.2 to improve accessibility as well as usability for all users. (*Id.*)

As to the *Etudes* learning management system, Vice President Lidz's declaration at that time signaled it was discontinued by explaining that the Canvas system was being used comprehensively. She described: "The District uses Canvas, a learning management system ("LMS"), for all of its online courses." (Lidz Decl., ¶ 11.) This ongoing awareness of the changes to District systems, over many years, without any significant effort by Plaintiffs to intervene, demonstrates that the equities do not favor injunctive relief. *See Klein*, 584 F.3d at 1207 (a permanent injunction requires a demonstration that plaintiff is "likely to suffer

10

irreparable injury in the absence of a [permanent] injunction, and that the *balance of equities* and the public interest tip in [their] favor.") (emphasis added).

## II. VPAT FORMS FROM THIRD PARTY VENDORS CONFIRM THE ACCESSIBILITY OF SOFTWARE PROGRAMS AND ELECTRONIC RESOURCES THAT THE DISTRICT PURCHASES

At the July 24, 2023 hearing, this Court asked for additional information regarding Voluntary Product Accessibility Templates (or "VPATs"). These are documents utilized by vendors or product developers to report accessibility conformance to Section 508 of the Rehabilitation Act (29 U.S.C. §794d). The Information Technology Industry Council (ITI), a global advocacy and policy organization that promotes public policies and industry standards for technology, prepared a report in July of 2019 which was later updated in May of 2022 that discusses the importance and use of VPATs. In light of the growing demand for accessible technology, end users have reportedly encountered difficulty in finding a reliable and standard source of information from vendors or product developers for purposes of evaluating accessibility. As explained in "Reporting Conformance to ICT Accessibility Standards," several factors and considerations must be made before an end user can accurately assess conformance with Section 508. (https://www.itic.org/documents/accessibility/ReportingConformancetoICTAccessibilityStandards-July2019-updatedMay2022.pdf (last checked August 9, 2023.) The VPAT, however, has been widely known to address all of the concerns and issues identified by the ITI when evaluating accessibility.

The VPAT was developed jointly by the ITI and the U.S. General Services Administration (GSA) which provides technical assistance to federal agencies who seek to comply with Section 508 requirements. While it is a "template," it contains fields/tables that allow a vendor/product developer to accurately explain how their particular product conforms to Section 508 standards for IT accessibility at three different levels of conformance. (*See* Supplemental Declaration of Nicole Albo-

11

**Memo of Points and Authorities re Injunctive Relief**

12120084.2 LO130-075

1 Lopez filed concurrently herewith, Exhibit A-E (containing VPAT and similar
2 forms for particular mathematics software programs).) The instructions for
3 completing a VPAT discuss essential requirements and best practices for any
4 vendor/product developer who prepares a VPAT, including essential requirements
5 for authors.

6 By requiring its vendors/product developers to provide a VPAT, the District
7 is ensuring at the outset that the vendor/product developer has performed the
8 rigorous process of evaluating their product at an in-depth level and pursuant to the
9 accessibility requirements of Section 508. Of course, while there is no particular
10 requirement as to who may prepare a VPAT, the District does not in a blanket
11 manner accept all products that are accompanied by a VPAT. The VPATs merely
12 constitute the first line of defense for purposes of evaluating accessibility because
13 they allow the District to understand a product's level of accessibility compliance,
14 compare compliance across similar products by using the standardized template,
15 and choose a product that best meets the goals/standards of the District, as well as
16 plan for areas where a product may be lacking in terms of accessibility. As
17 explained by the testimony of Ms. Albo-Lopez, when a VPAT has a deficiency, an
18 Equally Effective Alternative Access Plan or "EEAAP" is created to ensure
19 accessibility requirements are met, in accordance with the requirements of Title II
20 of the ADA, in the event non-compliant areas are identified in a VPAT.
21 (Reporter's Transcript of Proceedings on July 24, 2023 (Docket No. 597), page 20,
22 lines 10-20.) Additionally, when a VPAT is prepared by a recognized third party
23 consultant as opposed to the vendor/product developer itself, the District can more
24 confidently rely upon the vendor/product developer's contractual representations
25 that the particular product has been evaluated by an accessibility expert and meets
26 Government Code sections 7405 and 11135. Accessibility Conformance Reports
27 ("ACR's") are also used by vendors and are the functional equivalent of a VPAT's.
28 Included with this filing is the Declaration of Nicole Albo-Lopez, which includes

12

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, 5th Floor
Los Angeles, California 90045

VPAT and ACR forms for math programs referenced in her declaration. Also included is the current ACR to the LACC website.

## III. LEGAL PRINCIPLES GOVERNING INJUNCTIVE RELIEF COMBINE TO CONFIRM THAT THIS COURT SHOULD NOT ISSUE AN INJUNCTION, OR SHOULD ISSUE ONLY A VERY A LIMITED ONE

In its Memorandum of Points and Authorities filed before the July 24, 2023 hearing in this matter, the District described numerous separate and distinct reasons this Court should deny any injunctive relief or order only very limited relief. (See, Memorandum of Points Authorities in Support of Declarations filed July 6, 2023 Pursuant to Court Order, filed July 21, 2023 [Docket No. 589], at 2-9.) The following are *additional* points for this Court's consideration, some of which arise from testimony and argument at the July 24, 2023 hearing.

First, the injunctive relief that Plaintiffs demand would *frustrate the reasonable accommodation process* required by Title II of the ADA. For example, numerous parts of Plaintiffs' Proposed Inunction submitted to this Court require accessibility for resources "prior to or at the same time as sighted students are provided access," which is not required by Title II of the ADA, nor part of the jury instructions or special verdict form in this matter as a basis for establishing liability. (*See* [Proposed] Permanent Injunction and Final Judgment filed July 17, 2023 [Docket No. 585-5] ("Proposed Injunction"), ¶¶ 2, 3, 5.) Such a requirement would operate contrary to Title II's required reasonable accommodation process, because this definition of timeliness is incompatible with the ADA's requirement that public colleges first obtain information from students to determine reasonable accommodations. *See* 28 C.F.R. § 35.160(b)(2). This requires disabled individuals to communicate their preferences and specific needs, and there may be delays not attributable to the government agency. Under the "prior to or same time" standard requested by Plaintiffs in the Proposed Injunction, the District/College will often

face the impossible choice of violating the ADA by providing accommodations without knowing the student's needs or preferences, and violating the injunction's "prior to or same time" requirement by providing accommodations after the interactive process, and after sighted students already have access to resources. *See Wong v. Regents of University of California*, 192 F.3d 807, 818 (9th Cir. 1999) (colleges and universities "have a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary."); *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 579 (2d Cir. 2003) ("A governmental entity must know what a plaintiff seeks prior to incurring liability for failing to affirmatively grant a reasonable accommodation."), *superseded by statute on other grounds, as described in Mhany Mgmt., Inc. v. City of Nassau*, 819 F.3d 581 (2d Cir. 2016).

Second, it is clear any provision requiring yet another overhaul of College and District websites, PeopleSoft, or other educational programs would constitute an ***undue burden or fundamental alteration*** not required by Title II of the ADA. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1097 (9th Cir. 2013); 28 C.F.R. §§ 35.130(b)(7) and 36.164; *see also Alexander v. Choate*, 469 U.S. 287, 300-01 (1985) ("Reasonable accommodation does not require an organization to make fundamental or substantial alterations to its programs."). PeopleSoft took 8 years to install and implement, 3 years to test, and select the software, and 5 years to build and implement the customized interface. (Cornner, Decl., ¶ 6.) The customized interface developed with Oracle cost approximately $15 million, and as of March 2020, the District had spent an additional approximately $1 million to update PeopleSoft to improve accessibility as well as usability for all users. (*Id.*) The website re-design project has been many years in the making and had as its goal compliance with the high WGAC 2.1 AA standard (Lidz Decl., ¶¶ 7-10; Cornner Decl., ¶¶ 3-5), when the industry-wide and Government Code standard is only WCAG 2.0. *See* Cal. Gov. Code § 11546.7(a).

At a minimum, as the District's prior briefing pointed out, the injunctive relief should include a provision on requirements that turn out to be a fundamental alteration or undue burden.[2]

## IV. IMMUNITY UNDER 47 U.S.C. SECTION 230 BARS INJUNCTIVE RELIEF THAT PLAINTIFF DEMANDS

Plaintiffs' demand for injunctive relief as to the District and LACC websites and other educational software also infringes the District's protections under Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1). Section 230 immunizes providers of interactive computer services against liability arising from the content created by third parties: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA defines an interactive computer service ("ICS") as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including . . . such ***systems operated or services offered by libraries or educational institutions***." 47 U.S.C. § 230(f)(2) (emphasis added). "Lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content – are barred." *See Jane Doe No. 1. v. Backpage.com*, LLC, 817 F.3d 12, 18 (1st Cir. 2016) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).

Section 230 affords immunity to providers of interactive computer services in discrimination causes of action, including claims under the ADA. *Nat'l Ass'n of the*

---

[2] The Proposed Injunction already references this standard as a procedural matter in paragraph 19, but the injunction from July 2019 included this important and standard safeguard by stating: "In all cases, for each of the requirements imposed above, LACCD shall not be required to take any particular action if doing so amounts to an undue financial or administrative burden or would result in the fundamental alteration in a program, service, or activity at LACC consistent with 28 C.F.R. §§ 35.130(b)(7) and 36.164." (Permanent Injunction and Final Judgment entered July 22, 2019 (Docket No. 330), at 5, ¶ 6.)

15
**Memo of Points and Authorities re Injunctive Relief**

12120084.2 LO130-075

*Deaf v. Harvard Univ.*, 377 F. Supp. 3d 49, 66-69 (D. Mass. 2019) (immunity from the ADA); *Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, No. 3:15-CV-30024-KAR, 2019 WL 1409301 at *1 (D. Mass. 2019) (applying same ruling); *see also Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 Fed. Appx. 526, 526 (9th Cir. 2017) (immunity from Title II of the Civil Rights Act). Indeed, whether Section 230 protection applies "does not depend on the form of the asserted cause of action; rather, it depends on whether the cause of action necessarily requires that the defendant be treated as the publisher or speaker of content provided by another." *Harvard Univ.*, 377 F. Supp. at 67 (quoting *Backpage*, 817 F.3d at 19).

Here, Plaintiffs, in arguing for injunctive relief, claim that third parties post material on District and LACC website-resources that is inaccessible. (Plaintiffs' Response to Defendant's Declarations [Dck. No. 585], p. 8; Bossley Decl. [Dkt. No. 585-1], ¶ 21; Gunderson Decl. [Dkt No. 585-4], ¶ 9.) They have also suggested that the Canvas learning management program is inaccessible to the extent that faculty and others may post content that is inaccessible, even if Canvas meets WCAG 2.1 AA standards. (Plaintiffs' Response to Defendant's Declarations [Dck. No. 585], p. 8; Bossley Decl. [Dkt. No. 585-1], ¶ 21.) Plaintiffs' counsel confirmed that they were asserting this argument by relying on it in their line of questioning at the July 24, 2023 hearing. (July 24, 2023 Hearing Transcript (Docket No. 597), pp 31:15-33:21.) In other words, Plaintiffs are treating the District and LACC as the "publisher[s] or speaker[s] of content provided by another." *Harvard Univ.*, 377 F. Supp. at 67. However, these claims are explicitly barred under Section 230. The *Harvard* and *MIT* cases provide that Section 230 immunity applies to ADA claims against educational institutions and their learning management systems. It is undisputed that District and LACC are providers of learning platforms, like Canvas, in which third parties post content. Accordingly, Section 230 bars Plaintiffs' claims to the extent they seek relief for inaccessible content posted by third parties. *See id.*

## V. **CONCLUSION**

The District respectfully requests that this Court award no injunctive relief, but that if it must, this Court order only specifically tailored injunctive relief consistent with the facts, principles, and standards set forth above and in the District's prior submissions to this Court.

Dated: August 9, 2023

LIEBERT CASSIDY WHITMORE

By: */s/ David A. Urban*
Mark H. Meyerhoff
David A. Urban
Attorneys for Defendant LOS ANGELES COMMUNITY COLLEGE DISTRICT