UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-01697-SVW-SK | Date | February 29, 2024 |
| Title | *Roy Payan, et al. v. Los Angeles Community College District, et al.* | | |

| | |
|---|---|
| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |

| | |
|---|---|
| Paul M. Cruz | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** ORDER REGARDING FINAL INJUNCTION

On July 24, 2023, and August 10, 2023, the Court held hearings on injunctive relief in this case, where it heard testimony from several witnesses regarding LACCD's efforts to improve accessibility at LACC. ECF Nos. 590, 602.

"In determining the scope of an injunction, a district court has broad latitude, and it must balance the equities between the parties and give due regard to the public interest." *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1020 (9th Cir. 2009); *see also High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641 (9th Cir. 2004) (recognizing the district court's broad latitude in crafting equitable relief).

In the present case, four important principles guide the Court's fashioning of the injunction. First, injunctive relief must be limited to the facts of the case at hand and the legal violations established. *See United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir.1987) ("The essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."); *Salazar v. Buono*, 559 U.S. 700, 718 (2010) ("A court must find prospective relief that fits the remedy to the wrong or injury that has been established."); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[T]he scope of injunctive relief is dictated by the extent of the violation established.").

:

Initials of Preparer PMC

Second, "[d]ue to concerns of comity and federalism, the scope of federal injunctive relief against an agency of the state government must always be narrowly tailored to enforce federal constitutional and statutory law only." *Clark v. Coye*, 60 F.3d 600, 603–04 (9th Cir. 1995).

Third, Plaintiffs bear the burden of establishing that they are entitled to equitable relief, including establishing the scope of equitable relief. *See Anatol Zukerman & Charles Krause Reporting, LLC v. United States Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) ("A plaintiff seeking a permanent injunction 'must satisfy a four-factor test before a court may grant such relief.'") (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Finally, where there has been a jury determination of liability, "the trial judge must follow the jury's implicit or explicit factual determinations in deciding the equitable claims." *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016) (cleaned up and citations omitted). However, "[w]hen […] the basis for the jury's verdict is open to multiple interpretations, the Seventh Amendment permits the district court to reach any interpretation that is supported by the evidence." *Id.*; *see also Miles v. Indiana*, 387 F.3d 591, 600 (7th Cir. 2004). A "district court must then, of course, avoid contradicting the findings implicit in its interpretation of the verdict when it acts in equity, but it need not avoid conflicting with other interpretations of the verdict." *Id.* Furthermore, a court may make additional factual findings in determining the proper remedies, so long as they are not inconsistent with the jury's explicit or implicit findings. *See Burton v. Armontrout*, 975 F.2d 543, 544–45 (8th Cir. 1992).

With these principles in mind, the Court issues the instant order addressing the party's arguments regarding the scope of the injunction.[1]

*LACC vs. LACCD*

[1] The Court finds that, pursuant to prior evidence and rulings in this case, the National Federation of the Blind, Inc. and the National Federation of the Blind of California, Inc. have standing to pursue claims against LACCD on behalf of their members, including Portia Mason. *See Payan v. LACCD*, No. 19-56111, 2021 WL 3743307, at *2 (9th Cir. Aug. 24, 2021).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-01697-SVW-SK | Date | February 29, 2024 |
| Title | *Roy Payan, et al. v. Los Angeles Community College District, et al.* | | |

Plaintiffs' proposed injunction includes several provisions that bind LACCD as a whole. These references are overbroad, and the Court had modified the terms accordingly. Although LACCD was the defendant in this case, the evidence presented at trial primarily focused on ADA violations occurring on LACC's campus and website and the LACCD website. Plaintiffs provided no evidence at trial that the same ADA violations identified at trial occur on other LACCD campuses or websites. Accordingly, the provisions of this injunction shall be limited to ADA violations established at trial.

*The LACC and LACCD Website*

Defendant contends that WCAG 2.0 AA should be required as opposed to WCAG 2.1 AA. However, at the August 10, 2023, hearing, the Court heard testimony that Defendant specifically requested the new LACC and LACCD websites to be compliant with WCAG 2.1 AA, that WCAG 2.1 AA is the industry standard, and that there is a substantial difference between WCAG 2.0 AA and WCAG 2.1 AA. Given this evidence, the Court finds that requiring compliance with WCAG 2.1 AA is both appropriate and would not be overly burdensome, since Defendant itself has sought programs that are compliant with WCAG 2.1 AA.

*LACC Library*

With respect to the library, the Court finds that several of the provisions proposed by Plaintiffs are appropriate, including installing JAWS onto all publicly accessible computer terminal in the library, training librarians in creating accessible documents, and creating a scheduling system to allow librarians to assist blind students. Issues regarding the availability of JAWS on the LACCD library and delays in the ability to receive inaccessible documents were presented to the jury and this relief is supported by the jury's verdict.

*Educational Technology*

Plaintiffs proposed a provision requiring Defendant to develop a process to provide equally

: 

Initials of Preparer PMC

effective accomodations when purchasing new software which has been found to be inaccessible. The Court finds that this provision is inappropriate for two reasons.

First, the jury neither explicitly nor implicitly determined that Defendant's process in acquiring inaccessible educational software such as MyMathLab or Etudes constituted a violation of the ADA. Rather, the jury verdict reflected that the use of these programs constituted violations of the ADA. Accordingly, there is insufficient support in the record for such a provision.

Second, Defendant has submitted evidence that they have developed an Equally Effective Alternative Access Plan ("EEAAP"). ECF No. 584 at ¶¶ 20-22. Under this policy, alternate plans for accessibility must be created anytime they are needed. *Id.* at ¶ 20. This requirement went into effect in the fall of 2020. *Id.* As part of this process, software that is being ordered must go through accessibility assessment. *Id.* at ¶ 21. This occurs through the submission of the following: 1) a form that identifies the software, any research conducted on similar software, and other information regarding the software; and 2) a Voluntary Product Accessibility Template ("VPAT") or accessibility conformance report ("ACR") prepared by the software developer. *Id.* These two forms are then sent to one of LACCD's third-party accessibility consultants. *Id.* The third-party consultants then conduct an accessibility assessment and prepare an EEAAP based on the information available in the VPAT/ACR. *Id.*

If the software is not fully accessible, the EEAAP will identify accessibility problems and will propose alternatives to accommodate the students' needs. *Id.* at ¶ 22. Once the EEAAP is generated, it is signed by the requestor, the District's ADA Compliance Administrator, the Vice Chancellor of Educational Programs and Institutional Effectiveness, and the Vice Chancellor and Chief Information Officer. *Id.* Once all signatures have been gathered, it is emailed back to the requestor, who will implement the EEAAP as necessary. *Id.*

The process described appears to be a satisfactory safeguard. However, in response, Bossley has testified that in his experience VPATs tend to be unreliable and that the reliability of third-party consultants varies significantly depending on the consultant. Given this testimony, the Court will include

an additional provision to ensure that the accessibility evaluations performed by LACCD are reliable. Specifically, the Court will require LACCD to periodically perform an independent review of the reliability of their third-party vendor's accessibility assessments. This will include independently testing whether some of the accessibility assessments provided by the third-party vendors are accurate in order to verify the accuracy of the third-party vendor's assessment.

*Accommodation Letters*

At trial, Plaintiffs presented evidence that blind students were not given an accessible version of their accomodation letters, which were generated after an initial meeting with staff from the Office of Special Services, unless those were requested. In the interim, Defendant has upgraded their accomodation letters from paper to digital formats. However, accessible versions of these letters are still provided upon request. Accordingly, Defendants are ordered to provide accessible accomodation letters to blind students once the accommodation letters are prepared.

*Training, Consulting, and Reporting*

With respect to the requirement of widespread training, expert consultation and reporting, the Court finds that such relief is inappropriate.

First, the jury did not explicitly or implicitly find that the lack of widespread accessibility training of LACC or LACCD staff amounted to violations of the ADA.

Second, requiring wholesale training, expert monitoring, and periodic reporting would enmesh Plaintiffs and the Court too deeply into the affairs of LACC and LACCD. The Court is mindful of federalism and comity principles, which counsel in favor of deferring to state officials and against imposing injunctive that is too broad. *See Clark*, 60 F.3d at 603–04.

The jury's finding of deliberate indifference does not counsel in favor of imposing these additional

requirements. The jury's determination was limited to the period of 2015 to 2018. Furthermore, the jury's finding of deliberate indifference was generally limited to specific instances relating to Payan or Mason.[2] And as detailed above, the Court is providing injunctive relief to address ADA violations that resulted in a disparate impact: the LACC and LACCD websites and the LACC library. Finally, in the five years since then, Defendant has made good faith efforts to make LACC and LACCD more accessible through the redevelopment of the LACC and LACCD website and imposition of the EEAAP and continues to do so.[3] The jury was never presented with this post-trial evidence. And in the Court's view, the Court does not find that Defendant has exhibited deliberate indifference as of 2023.

*Single Incidents*

Several provisions of Plaintiff's injunction are overbroad because they relate to single incidents of ADA violations. These include steering Payan away from certain classes, the failure to allow Payan to record during class, and the failure to provide testing accomodations at a timely manner. At trial, Plaintiffs did not submit any evidence demonstrating that such occurrences were endemic. Rather, the evidence demonstrates that these unfortunate occurrences were one-off incidents. Accordingly, the Court will not provide injunctive relief with respect to those provisions.

*Undue Hardship*

Finally, consistent with the principles of the ADA, the Court will include a provision limiting Defendants' actions to those that will not incur an undue financial or administrative burden. *K.M. ex rel.*

[2] The Court further notes that the school has had many blind students over the years; in the relevant time period, there were only a handful of complaints from Payan, Mason, and a third student who is not a party in this action. None of these complaints demonstrated endemic or campus-wide problems.

[3] The Court recognizes that the mere fact that subsequent remedial action has been made or that a defendant has stopped behavior that results in liability is not sufficient to demonstrate that injunctive relief should not issue. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000); *see also Hubbard v. SoLa Real Est. Fund I, LLC*, No. 22-55562, 2023 WL 4759243, at *1 (9th Cir. July 26, 2023). However, the Court is satisfied that the injunctive relief that it is issuing will resolve the problems identified by Plaintiffs and that the Defendant is vigilant to its ADA responsibilities.

:

Initials of Preparer PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-01697-SVW-SK | Date | February 29, 2024 |
| Title | *Roy Payan, et al. v. Los Angeles Community College District, et al.* | | |

*Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1097 (9th Cir. 2013) ("Title II and its implementing regulations, taken together, require public entities to take steps towards making existing services not just accessible, but equally accessible to people with communication disabilities, but only insofar as doing so does not pose an undue burden or require a fundamental alteration of their programs."). Plaintiffs do not object to this provision.

**IT IS SO ORDERED.**

: 

Initials of Preparer PMC